**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MR. JASON MOOREHEAD, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 5:22-cv-03959-JMG |
| | : | |
| SCHOOL DISTRICT OF THE CITY OF | : | |
| ALLENTOWN, *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

GALLAGHER, J.                                                                April 17, 2023

## I.  OVERVIEW

Plaintiff, former middle school teacher for Defendant School District of the City of Allentown, brings numerous §1983 claims against Defendants alleging he was suspended, defamed, constructively terminated, and officially terminated by Defendants, the school district, board members, and administrators, through an unconstitutionally biased process based on Plaintiff's support of former President Donald Trump and attendance at the "January 6, 2021 rally at the Washington Monument." Compl. at ¶ 3. Plaintiff's Complaint avers Plaintiff "was at all times more than 1 mile away from the Capitol Building and the infamous riot that took place there." *Id.* at ¶ 4.

For the reasons explained fully herein, the Court grants in part and denies in part Defendants' Motion to Dismiss/Strike Plaintiff's Complaint [ECF No. 10].

## II.  BACKGROUND

Plaintiff's Complaint contains 514 paragraphs and 117 pages of allegations, and attaches roughly 500 pages of exhibits. *See generally* Compl. [ECF No. 1-1]. The Complaint's fact pleading

is constantly interrupted with extensive legal argument, social commentary, and allegations against non-defendants. Despite the foregoing challenges, the Court does its best to summarize the relevant allegations contained therein as follows.

Plaintiff's Complaint brings six (6) counts: Count I - First Amendment Retaliation for Expression, Assemble, and Petition for Redress of Grievances; Count II – First Amendment Retaliation for Political Affiliation; Count III – Pennsylvania School Code Section 1122 Violates the US and Pennsylvania Constitutions' Guarantee to Freedom of Expression, Association, Assembly, Petition for Redress of Grievances, and Due Process; Count IV – Procedural Due Process; Count V – Violations of Fourth, Fifth, and Fourteenth Amendments to the United States Constitution for Coerced Statements and Unreasonable Search and Seizure on Behalf of the FBI; Count VI – Declaratory and Equitable Relief – Name – Clearing Hearing. All counts are brought against each of the nineteen (19) defendants. *See* Compl. at ¶¶ 336-514 [ECF No. 1-1]

Plaintiff brings claims against the School District of the City of Allentown ("ASD") and the Board of School Directors of the City of Allentown ("School Board" or "Board"), along with two categories of "Individual Defendants": the "District Officer Defendants" and the "Board Member Defendants." *Id.* at ¶¶ 302-322. Plaintiff's claims against all Individual Defendants are brought against them in their individual and official capacities. *Id.*

The Individual "District Officer Defendants" consist of: Thomas Parker, who was Superintendent of ASD at all relevant times up until May 1, 2021; Marilyn Martinez, who served as ASD Interim Superintendent from May 1, 2021 to July 22, 2021; John D. Stanford, who is the current ASD Superintendent since on or around November 15, 2021; Jennifer Ramos, ASD Assistant Superintendent; and Anthony Pidgeon, who was the Executive Director of Human Resources for ASD at all relevant times up until November 2021. *Id.* at ¶¶ 304-08.

The "Board Member Defendants" include: Nancy Wilt, President of the School Board; Nicholas Miller, member and former Vice President of the School Board; Lisa A. Conover, member and current Vice President of the School Board; Phoebe D. Harris, member; Audrey Mathison, member; Charles F. Thiel, member; Patrick Palmer, member since January 16, 2022; LaTarsha Brown, member since December 16, 2021; Jennifer Lynn Ortiz, member since December 16, 2021; Cheryl L. Johnson-Watts, former member who was a member of the School Board at all relevant times until October 21, 2021; Sara J. Brace, former member who was a member of the School Board at all times relevant until 2021; and Linda Vega, former member who was a member of the School Board at all times relevant until December 16, 2021. *Id.* at ¶¶ 309-320.

Broadly, this Complaint arises out of Plaintiff's allegations that all Individual Defendants, described as "left wing politically," engaged in and approved of a series of investigations of Plaintiff, made and facilitated false public statements regarding Plaintiff, and suspended and ultimately terminated Plaintiff, all in violation of his Constitutional rights, and due to his conservative political beliefs and support of former President Donald Trump. *Id.* at ¶¶ 324-331.

Plaintiff, Jason Moorehead, is a self-described conservative Republican who supported Donald Trump in the 2020 Presidential Election. *Id.* at ¶ 2. Plaintiff was employed by ASD as a social studies teacher at Raub Middle School when he attended the January 6, 2021 rally at the Washington Monument to hear then-President Donald Trump speak. *Id.* at ¶ 3. Plaintiff avers he "listened to the speeches, got a hot dog and then boarded a bus back to Allentown, PA. He was at all times more than 1 mile away from the Capitol Building and the infamous riot that took place." *Id.* at ¶ 4. Plaintiff made several social media posts that day: (1) "[e]arly in the morning he posted a picture of himself stating 'doing my civic duty'"; (2) "[a]t 1:45 pm…he posted a picture of

himself getting a hot dog near the Washington Monument. The post said 'Waiting for a hot dog during (what hopefully CNN will call) a 'mostly peaceful protest' while at the Capital!'"; (3) "On a post by another user he commented 'This!' to a meme which stated: don't worry everyone the Capitol is insured"; and (4) "He also commented" stating "Wrong on so many levels, but hilarious none the less" to "a meme posted by another user. The meme was a picture of the absurd Viking man who sat on the dias in the Capitol Building, and captioned 'Protestor Challenges Pelosi for speaker of house via trial by combat circa 2021.'" *Id.* at ¶¶ 341-42, 346, 348.

The next day, on January 7, 2021, without prior notice, Defendants suspended Plaintiff from work indefinitely. *Id.* at ¶ 31. Plaintiff alleges Defendant Pidgeon e-mailed him that morning advising he was suspended with pay pending an investigation into Plaintiff's conduct on January 6, 2021, as social media postings had raised concerns regarding Plaintiff's involvement in the civil unrest that occurred on January 6, 2021. *Id.* at ¶ 31; Ex. 2. Also on January 7, Defendant Parker published an allegedly "false press release" ("January 7, 2021 Press Release") on social media that does not identify Plaintiff by name, but states "On January 7, 2021, the Allentown School District (ASD) was made aware of a staff member who was involved in the electoral college protest that took place at the United States Capitol Building on January 6, 2021." *Id.* at ¶ 32. The January 7, 2021 Press Release states "[b]ecause of the emotion and controversy stirred by the events of [] January 6, 2021, the teacher has been temporarily relieved of his teaching duties until the School District can complete a formal investigation of his involvement." *Id.* Plaintiff claims the "false facts" in the Press Release were that "(1) Moorehead was at the US Capitol Building on January 6, 2021, and (2) he was involved in and participated in the protest at the Capitol Building." *Id.*

Plaintiff was sent a *Garrity* notice before a 1:00 p.m. January 8, 2021 meeting with ASD. *Id.* at ¶ 45. Plaintiff met via Zoom with the ASD Solicitor and Defendant Pidgeon, who questioned

4

Plaintiff. *Id.* at ¶¶ 51-53. Plaintiff explained to Defendant Pidgeon and the ASD Solicitor that "he was not at the Capitol Building riot and was at all points over 1 mile away from the Capitol Building on January 6, 2021." *Id.* at ¶ 52. Plaintiff alleges the questions asked at the meeting were not narrow, nor were they related to his official duties, and that, although Plaintiff "was never informed that he was already under criminal investigation," the ASD officials were asking him questions "on behalf of the FBI during a secret criminal investigation." *Id.* at ¶ 50.

Also on January 8, 2021, Plaintiff alleges the ASD Solicitor told a local press publication, "the Morning Call," that "Plaintiff had been suspended because he had participated in un-American and subversive doctrines," which was a "reference to Section 1122 of the School Code" which "lists one ground for termination [of a teacher] as 'advocation of or participating in un-American or subversive doctrines.'" *Id.* at ¶ 450a.ii.

In late January 2021, Defendants "demanded that Plaintiff turn over" his ASD-issued/owned electronic devices as part of ASD's investigation. *Id.* at ¶ 121; Ex. 11. Defendants allegedly advised Plaintiff that "if he turned over the devices, and there was no proof he was at the Capitol Building," the January 7, 2021 Press Release "would be corrected" and Plaintiff would be reinstated. *Id.* at ¶ 122. Plaintiff also alleges he was "falsely assured by Defendants' solicitor there was no criminal aspect to this request" but that "the FBI was behind this request and was the entity searching his devices." *Id.* at ¶ 124. Plaintiff alleges the "search of his devices found nothing." *Id.* at ¶ 125.

In advance of a February 11, 2021 Board Meeting, Plaintiff alleges Defendant Board Members, "especially" Defendants Harris and Conover, colluded "to attack and retaliate against" Plaintiff "because of their hatred for Plaintiff's political opinions and affiliations." *Id.* at ¶ 77. Plaintiff alleges Defendant Board Member Conover and "Promise Neighborhoods," an

organization of which Conover was a board member, started a "Change.Org" petition directed to the School Board, which Plaintiff alleges was about him, and stated "We the parents and neighbors are signing to oppose anyone that attended the storming of the capital in Washington. The actions of the rioters have left our students and families feeling unprotected in their classroom and we wonder how we can disrupt the school to prison pipeline when those that are paid to protect, educate and heal us support white supremacy." *Id.* at ¶ 79.

Plaintiff alleges another community organization, "POWER Lehigh Valley," a community organization "closely connected to" Defendants Conover and Harris, shared the petition on Facebook and stated "Jason Moorehead, the ASD teacher who participated in the riot at the Capitol should not be reinstated." *Id.* at ¶ 85; Ex. 16 (internal quotations omitted). On February 5, 2021, Plaintiff alleges Promise Neighborhoods created a Facebook event page for the February 11, 2021 School Board Meeting stating "Join us as we fight to provide a safe learning environment for our children. Sign the petition. Have your voice heard." *Id.* at ¶ 86. Plaintiff alleges Defendant Board Member Harris shared this Promise Neighborhoods Facebook event page on social media, which demonstrates "that all Defendants were aware of this campaign to have left-wing community activists attack Plaintiff at the board hearing using the defamatory lie that Moorehead had rioted at the Capitol Building." *Id.* at ¶ 87.

At the February 11, 2021 Board Meeting Plaintiff alleges that "left-wing activists—at the instigation of Defendants, and in coordination with them—used lies Defendants had published about Moorehead to outrageously and falsely attack[] Jason Moorehead." *Id.* at ¶ 89. Despite all Defendants knowing Plaintiff "had been nowhere near the Capitol Building and was not part of any violence," Plaintiff alleges that Defendants "never corrected their previous defamation or

cautioned the community" regarding their "attacks" on Plaintiff during the February 11, 2021 Board Meeting. *Id.* at ¶ 96.

On April 9, 2021, Defendants served Plaintiff with his First *Loudermill* Notice, which stated a hearing would be held concerning his social media posting on January 6, 2021. *Id.* at ¶ 127; Ex. 19. Plaintiff contends this "3-month delay between the initial unnoticed suspension and first *Loudermill* notice in April 2021 is…a due process violation." *Id.* at ¶ 129.

Plaintiff's First *Loudermill* Hearing was held on May 5, 2021. *Id.* at ¶ 142. Plaintiff alleges this hearing focused on "pretextual reasons" for his discipline. *Id.*

On July 16, 2021, ASD sent Plaintiff a "Reinstatement Letter" advising that "[a]fter fully investigating your involvement in the events of January 6, 2021, in Washington D.C., the district has concluded that your presence in the January 6th gathering did not violate School Board policy 419 relating to teacher non-school activities." *Id.* at ¶ 144. The Reinstatement Letter stated Plaintiff would be removed from his position at Raub Middle School to a "new position and location" to be determined later. *Id.* at ¶ 152.

The Reinstatement Letter provided Plaintiff would be reinstated on the condition he take "'cultural competence' classes on African American and Hispanic history." *Id.* at ¶ 150. This condition, Plaintiff alleges, "demonstrates the ideological and political motives" for Plaintiff's "discipline, the public attacks on him, and the refusal to correct the defamation and disinformation Defendants spread about him." *Id.* Defendants, according to Plaintiff, deemed Plaintiff "a racist conservative who must be reeducated." *Id.* at 152. Plaintiff alleges the Reinstatement Letter did not state Defendants would correct the allegedly defamatory January 8, 2021 Press Release and statements provided to the Morning Call newspaper. *Id.* at ¶ 145.

Plaintiff alleges the conditions of his reinstatement, namely his removal from his teaching position at Raub Middle School to an undefined role, and the requirement he attend cultural competence classes, demonstrated "this purported reinstatement was not actually reinstating him as a teacher, but instead was an attempt by Defendants to pretend to reinstate him so they could claim they had not retaliated against him or failed to provide him due process." *Id.* at ¶ 152.

Plaintiff rejected ASD's proposal in the Reinstatement Letter, refusing to take "diversity training classes if he did something wrong" and stating ASD "has made it impossible for Mr. Moorehead to return to the school district" because Plaintiff "would be returning to the most hostile working environment imaginable in the current political climate." *Id.* at ¶ 153; Ex. 23.

Defendant Pidgeon allegedly ignored Plaintiff's objections, and on August 9, 2021 wrote a letter to Plaintiff advising he must notify Defendants by August 13, 2021 if he intended to return to work as outlined in the Reinstatement Letter, otherwise Defendants would proceed with termination. *Id.* at ¶ 155; Ex. 24. Plaintiff responded by stating he could not return to ASD because Defendants' conduct in issuing false public statements via the January 7, 2021 Press Release and to the Morning Call on January 8, 2021 suggesting he was involved in the Capitol Building riots was never corrected and created a hostile work environment for Plaintiff. *Id.* at ¶ 156. Plaintiff stated he would not "take sensitivity training as if I did something wrong" and that "The District and Board need to publicly post an apology on the website and social media unequivocally correcting the record and clearing my name." *Id.* Plaintiff contends Defendants proceeded with his termination for failure to report to work without ever addressing these concerns raised. *Id.* at ¶ 176.

On September 1, 2021, Plaintiff's pay was stopped. *Id.* at ¶ 179. On September 9, 2021, Plaintiff filed a writ of summons in the Lehigh County Court of Common Pleas, initiating this action. *Id.* at ¶ 171: Ex. 26. On September 14, 2021, Plaintiff was sent his Second *Loudermill*

Notice by Defendant Pidgeon, this for Plaintiff's termination for failure to report to work. *Id.* at ¶ 172. On September 16, 2021, the District Solicitor e-mailed Plaintiff's counsel advising that "Should Mr. Moorehead wish to submit his resignation, the termination process and required reporting to the Department of Education could be avoided." *Id.* at ¶ 174; Ex. 28. This statement, Plaintiff alleges, made it "quite clear that Defendants were trying to force Plaintiff to resign, so they could claim he voluntarily quit." *Id.* at ¶ 175.

Plaintiff's Second *Loudermill* hearing occurred on September 22, 2021. *Id.* at ¶ 180.  At the hearing, Plaintiff reiterated his objections that "Defendants had defamed Plaintiff, refused to publicly correct and retract the false statements, and that it was impossible for Moorehead to return to an unsafe and hostile environment." *Id.* at ¶ 181.

On October 12, 2021, Defendant Pidgeon sent Plaintiff a "Statement of Charges" indicating Defendants were going to terminate him for "willful neglect of duties" for failing to report to his teaching assignment, and that a Board hearing would take place. *Id.* at ¶ 185. Prior to the Board hearing, Plaintiff submitted a memorandum identifying Plaintiff's contentions that (1) the "willful neglect of duties" reason for termination was pretextual "to cover up the unconstitutional and defamatory reasons he was suspended, subjected to a hostile work environment, and can no longer return" to ASD.; (2) ASD's refusal to correct the record and prior statements ASD made regarding Plaintiff contributed to the hostile work environment; (3) the hearing was predetermined; (4) the Board and hearing officers were biased; and (5) The aforementioned conduct by ASD and the Board violated Plaintiff's constitutional rights. *Id.* at ¶ 192; Ex. 35. Plaintiff also made numerous procedural objections to the process, including challenging that the District's Solicitor was serving as the hearing officer, "and that the board would not even attend the board hearing. Instead, he [the District Solicitor] would make a recommendation the board would vote on." *Id.* at ¶ 195.

On November 22, 2021, at Session One of the Board Termination Hearing, "Plaintiff submitted briefing on several issues, including the bias of the board and the hearing officer, as well as Plaintiff's hostile work environment defense." *Id.* at ¶ 208.

On December 14, 2021, at Session Two of the Board Termination Hearing, Assistant Superintendent and Acting Superintendent Jennifer Ramos allegedly revealed "that the administration never wanted Moorehead to return and that the 'reinstatement' was not sincere." *Id.* at ¶ 238.

On March 16, 2022, Session Three of the Board Termination Hearing, the final session, was held. *Id.* at Ex. 50. On July 7, 2022, the District Solicitor, Mr. Sultanik, presented his written report and recommendation that Plaintiff be terminated, based on the Termination Hearing, to the School Board. *Id.* at ¶ 243.

On July 28, 2022, the School Board voted to terminate Plaintiff by a 9-0 vote. *Id.* At this July 28, 2022 Board Hearing, Plaintiff addressed the Board, reiterating his arguments that ASD falsely told the community Plaintiff was involved in violence at the Capitol Building, that ASD secretly worked with the FBI in its investigation of Plaintiff, without his knowledge, that the Board "colluded with community groups to attack my character at Board meetings," and refused to inform the community that Plaintiff was not involved in the violent activity at the Capitol. *Id.* at ¶ 244.

Plaintiff alleges "All named Defendants were involved in this process, all named Defendants had final policymaking authority, all named Defendant participated in this disciplinary process, all named Defendants supervised the disciplinary process against Plaintiff, and all named Defendants ratified the conduct toward Plaintiff." *Id.* at ¶ 298.

Defendants filed a Motion to Dismiss/Strike Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f) on October 31, 2022. [ECF No. 10]. Plaintiff filed a Response in Opposition on November 28, 2022. [ECF No. 15]. Plaintiff filed a Notice of Constitutional Question to the Attorney General for the Commonwealth of Pennsylvania pursuant to Fed. R. Civ. P. 5.1 on December 8, 2022. [ECF No. 19]. This Court certified Plaintiff's Constitutional Question on December 16, 2022, and provided the Attorney General until February 6, 2023 to intervene. [ECF No. 21]. After no such intervention took place, Plaintiff filed a Supplemental Response in Opposition to Defendants' Motion to Dismiss on February 28, 2023. [ECF No. 24]. Defendants' Motion to Dismiss/Strike is fully briefed and ripe for adjudication.

## III.   <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). A court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Wheeler v. Wheeler*, 639 Fed. Appx. 147, 149 (3d. Cir. 2016) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, the exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605

F.3d 223, 230 (3d Cir. 2010). Courts must "accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Id.* at 229.

IV.   **ANALYSIS**

    a.   **Plaintiff's Claims are not Precluded for Failure to File an Appeal to the Secretary of Education for the Commonwealth of Pennsylvania**

Defendants seek dismissal of Plaintiff's "employment claims" on the basis that Plaintiff failed to appeal the Board's termination decision to the Secretary of Education for the Commonwealth of Pennsylvania ("Secretary"), as required by the Pennsylvania Public School Code of 1949, 24 P.S. §§11-1127, et seq (the "School Code"). *See* Defendants' Motion to Dismiss ("MTD") at pgs. 14-15 [ECF No. 10-1]. Indeed, Pennsylvania state courts have recognized that "appellate jurisdiction from school board decisions dismissing or demoting tenured teachers is vested in the Secretary, as are appeals." *Kielbowick v. Ambridge Area Sch. Bd.*, 627 A.2d 276, 278 (Pa. Commw. Ct. 1993); *Merritt v. West Mifflin Area School Dist.*, 424 A.2d 572, 574 (Pa. Commw. Ct. 1981) (affirming common pleas court dismissal of former school district employee's complaint for failure "to pursue her statutory remedy" to "file an appeal with the Secretary of Education").

However, this School Code requirement does not bar any of Plaintiff's claims, because all of Plaintiff's federal claims "are brought pursuant to and under 42 U.S.C. §1983." Compl. at ¶ 335. "The Supreme Court has consistently noted that exhaustion of state remedies, whether judicial or administrative, is not required prior to the commencement of an action under 42 U.S.C. § 1983 in federal court." *Donovan v. Pittston Area Sch. Dist.*, No. 3:14-1657, 2015 U.S. Dist. LEXIS 78097 at *18 (M.D. Pa. June 17, 2015) (quoting *Hochman v. Board of Ed. Of City of Newark*, 534 F.2d 1094, 1096 (3d Cir. 1976)). Indeed, the "aim" of 42 U.S.C. §1983 "is to offer a remedy in

federal court for plaintiffs whose civil rights are violated 'supplementary to any remedy any State might have.'" *Id.* (quoting *Schimes v. Barrett*, No. 3:07-cv-872, 2010 U.S. Dist. LEXIS 30745 at *15 (M.D. Pa. Mar. 30, 2010). "Part of the reason for this rule was Congress's recognition of the central role of federal courts in protecting federal constitutional rights." *Schimes*, 2010 U.S. Dist. LEXIS 30745 at *15.

Directly on point is the court's holding in *Donovan*. There, the plaintiff, a school administrator, brought a due process claim pursuant to §1983 against her school district employer and the school board members arising out of her alleged demotion. *Donovan*, 2015 U.S. Dist. LEXIS 78097 at *1-2. The defendants moved for dismissal, contending plaintiff failed to exhaust her remedies under the School Code by filing "an appeal to the Secretary of Education." *Id.* at *16. The court denied dismissal on these grounds, holding that "exhaustion of administrative or state judicial remedies cannot be required before a person may bring a §1983 claim." *Id.* (citing *Hochman*, 534 F.2d at 1097).

Because Plaintiff's federal claims are brought pursuant to §1983, and in adherence "to the repeated and unqualified expressions of the Supreme Court that 'we have not required exhaustion of state judicial or administrative remedies' in suits under §1983" this Court declines to dismiss Plaintiff's employment claims and/or claims "about the basis for his termination." *See Hochman*, 534 F.2d at 1097 (quoting *Steffel v. Thompson*, 415 U.S. 452, 472-73 (1974)) (cleaned up); then Defendants' MTD at pgs. 15 [ECF No. 10-1].

>   **b.  The Court Declines to Dismiss Defendants The School District of the City Allentown ("ASD") or Board of School Directors of the School District of the City of Allentown ('School Board') Pursuant to *Monell***

Defendants contend ASD and the School Board are the "same entity" and Plaintiff's Complaint fails to plead a sufficient basis to hold ASD or the Board liable pursuant to *Monell v.*

*Department of Soc. Sevcs.*, 436 U.S. 658 (1978). *See* Defendants' MTD at pg. 17 [ECF No. 10-1].

The purpose of § 1983 is to impose liability on a "***person***, who under color of any statute, ordinance, regulation, custom, or usage…subjects, or causes to be subjected, any citizen…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (emphasis added). Government entities, such as municipalities and school districts, are a "person" under § 1983. *Rogers v. E. Lycoming Sch. Dist.*, No. 4:17-0696, 2017 U.S. Dist. LEXIS 183618 at *24 (M.D. Pa. Nov. 6, 2017). Because a "person," is only liable under § 1983 for their own conduct, it follows that a municipality or school district may only be liable under § 1983 "for their ***own*** illegal acts.'" *Does v. Se. Delco Sch. Dist.*, 272 F. Supp. 3d 656, 667 (E.D. Pa. 2017) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)) (emphasis in original). Accordingly, just because a school district's employee commits an unconstitutional act does not mean the school district itself "was the moving force behind the injury alleged." *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 193 (3d Cir. 2009). Therefore, holding a school district liable under § 1983 requires more than allegations of *respondeat superior* liability. *Brown v. Pa Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 482 (3d Cir. 2003); *Dorley v. S. Fayette Twp. Sch. Dist.*, 129 F. Supp. 3d 220, 240 (W.D. Pa. 2015) ("it is well established that a School District, like a municipality, cannot be liable solely as an employer because there is no respondeat superior theory of municipal liability in § 1983 actions.") (quotations and citation omitted).

To allege a deprivation of rights was caused by the school district's ***own*** acts, and that the district itself "was the moving force behind the injury alleged," a plaintiff must allege it was the school district's ***own*** "official policy and/or custom" that "cause[d] an employee to violate another person's constitutional rights." *Chambers.*, 587 F.3d at 196, then *Estate of Massey v. City of Phila.*, 118 F. Supp. 3d 679, 696 (E.D. Pa. 2015). A school district's own "policy" is made "when a

decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996). The Third Circuit has held "an official with policymaking authority can create official policy, even by rendering a single decision." *McGreevy v. Stroup*, 413 F.3d 359, 367-68 (3d Cir. 2005). *See also Connick v. Thompson*, 563 U.S. 51, 61 (2011) (holding "[o]fficial municipal policy ***includes the decisions of a government's lawmakers, the acts of its policymaking officials***, and practices so persistent and widespread as to practically have the force of law.") (emphasis added).

This logic is consistent with the purpose of § 1983: to impose liability on the ***person***, in this case, the school district, for its ***own*** illegal acts. The actions of an individual with policymaking authority at the school district can much more fairly be said to constitute the actions of the school district itself, as opposed to the actions of a school district employee with no authority to make or issue school district policy.

Defendants' Motion to Dismiss claims there is no basis to hold ASD liable for the allegations in Plaintiff's Complaint under *Monell* because Plaintiff "fails to identify a specific policy or custom or adequately allege that any individual defendants were following this policy that caused or resulted in a violation." *See* MTD at pg. 17 [ECF No. 10-1]. However, Plaintiff argues ASD is liable for all conduct alleged in the Complaint under *Monell* because the conduct at issue was perpetrated by the "superintendent, assistant superintendent, Executive HR director, the district solicitor, and the school board" all of whom, Plaintiff argues, are "high-ranking officials and final policymakers who participated in the conduct at issue, supervised it, and ratified it." *See* Plaintiff's Response to MTD at pg. 9 [ECF No. 15].

Plaintiff's contention that his constitutional rights were violated by "final policymakers" for ASD is sufficient to state a claim for *Monell* liability if supported by sufficiently pled facts.

Indeed, "[a] single act may represent government 'policy' for *Monell* purposes when such act is made by someone possessing 'final authority to establish municipal policy with respect to the action ordered.'" *Flood v. Shark*, 400 F. Supp. 3d 295, 307 (W.D. Pa. 2019) (quoting *Pembauer v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986)). "In order to ascertain who is a policymaker a court must determine which official had final, unreviewable discretion to make a decision or take action." *McGreevy*, 413 F.3d at 369.

Plaintiff's Complaint pleads that all Defendants, including the School Board and Board Member Defendants, "were aware of, approved, and ratified the public statements by the District on January 7, 2021, and suspension of Plaintiff without <u>Loudermill</u> notice or hearing on January 7, 2021…the public statements on January 8, 2021, and also the public statements made about Mr. Moorehead in early February 2021, and at the February 11, 2021 board hearing." Compl. at ¶ 324 [ECF No. 1-1]. "[A]ll Defendants" the Complaint alleges, "supervised, participated in, and ratified the course of conduct against Moorehead from January 6, 2021, to present." *Id*. Plaintiff's Complaint further alleges "the actions by Defendants were not that of a rouge employee, but were entirely sanctioned by the District, Board, and chief executive at all points, from January 7, 2021 to present" and that "the District and Board ratified that conduct by continuing and participating in the persecution of Plaintiff." *Id*. at ¶¶ 329, 332. Moreover, Plaintiff's Complaint contains numerous specific allegations of conduct by the School Board, such as: allegations the School Board voted to terminate Plaintiff for a pretextual reason (*Id.* at ¶ 380), that the School Board intentionally spread the false claim Plaintiff "was at the Capitol Building" throughout the ASD community (*Id.* at ¶¶ 96, 110), that Board Member Defendant Conover started a petition targeting Plaintiff that was shared on social media by Board Member Defendant Harris (*Id.* at ¶¶ 83, 86-87), that the Board hearing process was pretextual and improper because "the allegedly neutral hearing

officer [was] the Board's own attorney," that "the Board did not even hear the matter," that the Board's attorney, who served as both fact finder and hearing officer in the Termination Hearing, "ruled that Plaintiff is not entitled to a fair, impartial and unbiased board hearing" (*Id.* at ¶ 203), that the "Board was involved with suspending and attacking Plaintiff, that the "Board is unambiguously politically biased against Mr. Moorehead," and that the "hearing result was predetermined as was the <u>Loudermill</u> hearing, evidenced in part by the cutting of [Plaintiff's] pay two weeks before the <u>Loudermill</u> notice" (*Id.* at ¶ 210).

Because Plaintiff alleges the decisions that deprived him of his Constitutional rights were either made or ratified by the School Board, Plaintiff has done enough, at this stage, to state a claim giving rise to *Monell* liability as to ASD. School boards and their members are policymaking officials for their school district.[1] *See LaVerdure v. County of Montgomery*, 324 F.3d 123, 126 (3d Cir. 2003) (acknowledging "School Board members" are "entrusted with a policymaking role for the School District.") (quoting *Zugarek v. S. Tioga Sch. Dist.*, 214 F. Supp. 2d 468, 479 (M.D. Pa. 2002)). Because "[a] municipality's properly-constituted legislative body is authorized to act for the municipality…a single decision by such a body may subject the municipality to § 1983 liability." *Smith v. Cent. Dauphin Sch. Dist.*, 2007 U.S. Dist. LEXIS 57112 at *6 (M.D. Pa. Aug. 6, 2007). A district's school board is considered "the legislative body for the School District." *Id.* at *6 (citing 24 Pa. Cons. Stat. Ann. §§ 2-211, 5-508). Therefore, proof the school board "has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the

---

[1] Even if additional evidence produced in later stages of litigation demonstrates the School Board and other Defendants did not possess final policymaking authority at the times relevant, at the motion to dismiss stage, the Court accepts as true Plaintiff's uncontroverted assertions that the School Board possessed policymaking authority regarding the investigation, suspension, and termination of Plaintiff, and either participated in or ratified the alleged illegal conduct. *See* Compl. at ¶¶ 328-333 [ECF No. 1-1].

municipality acted culpably." *Smith*, 2007 U.S. Dist. LEXIS 57112 at *6 (quoting *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)).

A school board may subject itself and/or the school district to *Monell* liability when it dismisses an employee, approves a suspension, or ratifies a subordinate's actions that violate the plaintiff's constitutional rights. *See Ditzler v. Hous. Auth.*, 171 F. Supp. 3d 363, 368 (M.D. Pa. 2016) (holding plaintiff provided sufficient evidence to support a finding school board's "deliberate decision to terminate the plaintiff qualifies as policy for the purpose of determining *Monell* liability."); *Starbuck v. Williamsburg James City Cty. Sch. Bd.*, 28 F.4th 529, 536 (4th Cir. 2022) ("The School Board's approval of a suspension allegedly imposed to punish assertedly protected speech is a decision of a body with final policymaking authority. *Monell* teaches that such a decision gives rise to the School Board's potential liability under 42 U.S.C. § 1983."); *Goodell v. Columbia Cnty. Pub. Transp.*, No. 2:20-cv-00226, 2021 U.S. Dist. LEXIS 263887 at *34-35 (E.D. Wash. Feb. 16, 2021) (holding plaintiff's theory of *Monell* liability based on public transportation board's alleged ratification of general manager's conduct survives motion to dismiss since "[a] municipality may be held liable for a constitutional violation if a final policymaker ratifies a subordinate's actions.") (citing *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004)); *Shields v. Penn Grove-Carneys Point Reg'l Sch. Dist.*, No. 14-2106, 2016 U.S. Dist. LEXIS 26675 at *10 (D. N.J. Mar. 1, 2016) ("Accordingly, even one decision by a school board, if it were a final policymaker, would render its decision district policy."); *Hart v. W. Mifflin Area Sch. Dist.*, No. 16-1066, 2016 U.S. Dist. LEXIS 169473 at *12 (W.D. Pa. Dec. 8, 2016) (denying motion to dismiss §1983 due process claim against school district pursuant to *Monell*, holding a "Board of School Director's decision to terminate Plaintiff without proper pre-termination hearing

constitutes an action by a policymaker with 'final authority' under *Monell, Pembaur*, and their progeny.").

Moreover, Defendants' reliance on *Dorley v. South Fayette Twp. Sch. Dist.* is misplaced. In *Dorley*, the court held a plaintiff's § 1983 claims against a school district based on the conduct of three members of the high school coaching staff did not support a claim for *Monell* liability. *Dorley v. South Fayette Twp. Sch. Dist.*, 129 F. Supp. 3d 220, 241-42 (W.D. Pa. Sept. 4, 2015). Instead, the court held, the claims sounded in *respondeat superior*, because the plaintiff failed to plead the coaches acted pursuant to a school district custom or "that either one or more of the football coach Defendants was factually and legally the final decision-maker possessing unreviewable authority in that regard, or that the final policy-makers within the School District directed, or specifically knew of and acquiesced to the challenged conduct." *Dorley v. South Fayette Twp. Sch. Dist.*, 129 F. Supp. 3d 220, 241 (W.D. Pa. Sept. 4, 2015). Here, unlike in *Dorley*, Plaintiff, Mr. Moorehead, brings claims based on the alleged conduct of the School Board and other school administrators, not football coaches, who Plaintiff plausibly alleges have final policymaking authority for ASD. Plaintiff's Complaint plausibly pleads that ASD's final policymakers participated in, acquiesced to, and ratified the alleged deprivation of his constitutional rights.

Because Plaintiff plausibly claims the alleged deprivations of his Constitutional rights were either directed, approved, or ratified by the Board of Directors, the Court declines to dismiss ASD as a defendant pursuant to *Monell*.

**c. The Court Grants Defendants' Motion to Dismiss Individual Capacity Claims Brought Against Defendants Johnson-Watts, Brace, and Vega Only. The Qualified Immunity Defense fails, at the Motion to Dismiss Stage, as to All Other Individual Defendants**

A qualified immunity defense will be upheld on a motion to dismiss "only when the immunity is established on the face of the complaint." *Ecurie Reve Avec Moi Inc. v. N.J. Racing Comm'n*, 767 Fed. Appx. 233, 237 (3d Cir. 2019). "If the facts of the complaint are insufficient to establish a qualified immunity defense, the motion must fail." *Id.* Accordingly, the appropriate inquiry at this stage is if "whether the Complaint, on its face, demonstrates" the Individual Defendants "did not violate a clearly established constitutional right." *Id.* However, in conducting this inquiry, the Court is not required "to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation." *Id.* at 806.

"In resolving claims of qualified immunity, a court must decide: 1) whether the facts alleged or shown by a plaintiff make out a violation of a constitutional right, and 2) whether that right was clearly established at the time of the defendant's misconduct." *Hammond v. Chester Upland Sch. Dist.*, No. 13-6209, 2014 U.S. Dist. LEXIS 128679 at *37 (E.D. Pa. Sept. 9, 2014).

"While 'qualified immunity issues may require the kind of factual context that is available only on summary judgment or at trial,' courts are 'obligated to address' qualified immunity defenses raised in a motion to dismiss." *Doe v. Small*, No. 1:21-cv-11189, 2023 U.S. Dist. LEXIS 18367 at *28 (D. N.J. Feb. 2, 2023) (quoting *Est. of King v. City of Jersey City*, No. 2:15-cv-6868, 2018 U.S. Dist. LEXIS 109031 at *7 (D.N.J. June 29, 2018)). *See also Black & Davison v. Chambersburg Area Sch. Dist.*, No. 1:17-cv-688, 2019 U.S. Dist. LEXIS 11154 at *12 (M.D. Pa. Jan. 25, 2019) ("Qualified immunity does not protect a state actor's knowing violation of the law…determination of the objective reasonableness of a defendant's judgment about an open legal question may require resolution of factual disputes.").

Defendants contend all Individual Defendants are entitled to Qualified Immunity and High Public Official Immunity. Defendants' MTD at pg. 36. As an initial matter, Individual Defendants' assertion of High Public Official Immunity is inapplicable to Plaintiff's claims because High Public Official Immunity applies only to Pennsylvania state law claims. *Kohn v. Sch. Dist.*, No. 1:11-cv-109, 2012 U.S. Dist. LEXIS 63751 at *29 (M.D. Pa. May 7, 2012) ("the state-law doctrine of high public official immunity shields officials only from state-law claims, not federal ones."). Here, Plaintiff brings federal law claims pursuant to § 1983.

As to Qualified Immunity, at this early stage, Plaintiff's Complaint sufficiently pleads all Individual Defendants had personal involvement in the knowing violation of Plaintiff's constitutional rights, which were clearly established at the time of Defendants' alleged misconduct.

Starting with the District Officer Defendants first, Plaintiff pleads the Superintendent Defendants Parker, Martinez, Stanford, and Ramos were personally involved in the knowing violation of Plaintiff's constitutional rights, in that the Superintendents had involvement in the suspension, allegedly sham reinstatement, and/or constructive termination of Plaintiff. Compl. at ¶¶ 5, 32, 35, 61, 237-41, 307, 308 Ex. 34, 43. Plaintiff also sufficiently pleads individual capacity claims against Defendant Pidgeon, who was the Executive Director of Human Resources for ASD, and who allegedly informed Plaintiff of his suspension on January 7, 2021, attended and questioned him at the Zoom meeting on January 8, 2021, and demonstrated "malice and animosity" toward Plaintiff, and demanded Plaintiff return to work on August 9, 2021. *Id.* at ¶¶ 31, 51, 155.

As to the Individual Board Member Defendants, Plaintiff sufficiently pleads individual capacity claims against Board Member Defendants who were voting members of the Board as of July 28, 2022. Plaintiff alleges these Board Member Defendants knowingly violated Plaintiff's constitutional rights by voting 9-0 to terminate him from employment. Compl. at ¶ 243. Plaintiff's

Complaint plausibly alleges that prior to the Board's 9-0 vote to terminate Plaintiff, Plaintiff shared countless legal and factual argument to the Board alleging the Board was politically and financially biased, and that his suspension, the ASD press releases, and pending termination were issued due to his political affiliation and/or expression and that any other reasons proffered for such actions were pretextual. *See generally id.*

Defendants contend Plaintiff fails to plead sufficient allegations that "most of the Defendants, such as Ortiz, Brown and Palmer…undertook any individual action." *See* Defendants' MTD at pg. 29 n.36 [ECF No. 10-1]. However, Plaintiff's Complaint plausibly alleges that Defendants Ortiz, Brown, and Palmer were aware of ASD's and the School Board's previous allegedly unconstitutional and retaliatory conduct and nevertheless voted to terminate Plaintiff on July 28, 2022. Compl. at ¶ 243. A school board's unanimous vote to terminate an employee sufficiently pleads that each voting board member "was personally involved in the termination decision." *Black & Davison v. Chambersburg Area Sch. Dist.*, No. 1:17-cv-688, 2019 U.S. Dist. LEXIS 11154 at *13 (M.D. Pa. Jan. 25, 2019).

However, Plaintiff fails to plead sufficient facts to allege the Individual Board Member Defendants who were ***not*** voting members of the Board as of July 28, 2022 knowingly violated Plaintiff's constitutional rights. "To state a claim for individual liability under Section 1983, Plaintiff must show that the individual defendants 'personally participated in violating his rights, or that they directed others to violate, or that they had knowledge of and acquiesced in their subordinates' violations." *Gayles v. Hillside Bd. of Educ.*, 2022 U.S. Dist. LEXIS 67293 at *12 (D. N.J. Apr. 11, 2022) (quoting *Ivan v. County of Middlesex*, 595 F. Supp. 2d 425, 479-80 (D.N.J. 2009)).

In *Deltondo v. Sch. Dist. of Pittsburgh*, the court dismissed a plaintiff's claims brought against school board members in their individual capacities, holding "individual School board members cannot terminate a teacher's employment and can only do so by voting as a group." 2:22-350, 2023 U.S. Dist. LEXIS 15133 at *35 (W.D. Pa. Jan. 30, 2023). Therefore, "[a] single member of a governing body cannot be held liable for decisions that are made by the body as a whole." *Id.*

A Plaintiff "must plead facts demonstrating the specific personal involvement of each Individual Defendant as to any Constitutional deprivations" alleged. *Caristo v. Blairsville-Saltsburg Sch. Dist.*, 370 F. Supp. 3d 554, 569 n.21 (W.D. Pa. 2019). "Group pleading as to such matters will not suffice." *Id.* "It is not the Court's job to laboriously search the Complaint for factual assertions that could, in theory, be used to support one legal claim or another. District judges are not archeologists. They need not excavate masses of papers in search of revealing tidbits." *K.J. v. Greater Egg Harbor Reg'l High Sch. Dist. Bd. of Educ.*, No. 14-145, 2015 U.S. Dist. LEXIS 112960 at *20 (D.N.J. Aug. 26, 2015).

The Court finds the recent holding in *Pierro v. Hudson City Sch. Dist.*, No. 1:22-cv-670, 2023 U.S. Dist. LEIXS 55973 (N.D.N.Y. Mar. 31, 2023) persuasive. In *Pierro*, the plaintiff brought, among other claims, § 1983 claims against her former employer, the Hudson City School District, the Hudson City School Board, and the members of the school board, in their individual capacities. *Id.* at *1-2. The plaintiff, Pierro, alleged she was sexually harassed by co-workers, reported the harassment to her superiors, and in retaliation was given additional job duties without a pay increase or promotion, and one of her alleged harassers was promoted to become her supervisor. *Id.* at *4-5. Pierro alleged that when the harassment continued she made a second, and then third complaint to her supervisors. *Id.* at *5. Thereafter, Pierro alleged the Hudson City School Board placed her on administrative leave and suspended her without pay. *Id.* Pierro alleged the

Hudson City School District advised that her allegations were "false and defamatory." *Id.* Then, Pierro tendered a letter of resignation, which she alleges the Hudson City School Board refused to accept in order to "pursue termination if she did not rescind her allegation[s]." *Id.* at *16.

The defendants moved to dismiss on numerous grounds. The court declined to dismiss Hudson City School District and the Hudson City School Board as defendants pursuant to *Monell*, based on the complaint's allegations that the Hudson City School Board's decisions to suspend the plaintiff without pay and appoint one of her alleged harassers as her supervisor "were done with knowledge of Pierro's reports of harassment" which "plausibly suggests that the Board of Education," the final policymakers of the Hudson City School District, were "not merely negligent, but made a conscious choice while aware of Pierro's reports." *Id.* at *21-22.

However, the court dismissed Pierro's § 1983 claims brought against the members of the Hudson City School Board in their individual capacities because Pierro failed to identify "the specific actions of individual members of the Board Education, but rather, refer[red] to the Board of education as a collective group." *Id.* at *17. This, the court held, constituted "impermissible group pleading" and the complaint therefore failed to "specifically indicate the extent of any individual Board Member's involvement in the complained-of unconstitutional conduct." *Id.* (quoting *Arnold v. Town of Camilus*, No. 5:20-cv-1364, 2023 U.S. Dist. LEXIS 39933 at *12 (N.D.N.Y. Mar. 9, 2023)). Moreover, the court held, the plaintiff "fail[ed] to articulate what information was relayed to each individual Board member ***and how each member voted***. Thus, Pierro's allegations of actions taken by the individual members of the Board are not sufficient to plausibly allege personal involvement and Pierro's Section 1983 claims against the individual members of the Board must be dismissed." *Id.* at *18 (emphasis added).

Here, because Plaintiff fails to allege Board Member Defendants who did not vote to terminate Plaintiff, Defendants Cheryl L. Johnson-Watts, Sara J. Brace, and Linda Vega, were personally involved in the alleged deprivation of Plaintiff's rights beyond impermissible "group pleading," the Court dismisses all individual capacity claims against these Defendants. *See Cupp v. Cty. Of Lycoming*, No. 3:20-cv-001784, 2021 U.S. Dist. LEXIS 188866 at *13 (M.D. Pa. Sept. 30, 2021) ("Group pleading, such as…lumping sixteen defendants together without setting forth what each defendant is alleged to have done, is impermissibly vague."); *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d. 363, 386-87 (D. N.J. 2019) ("Alleging that 'Defendants' undertook certain illegal acts—without more—injects an inherently speculative nature into the pleadings, forcing both the Defendants and the Court to guess who did what to whom when. Such speculation is anathema to contemporary pleading standards").

### d. All Official Capacity Claims Plead Against All Individual Defendants Are Dismissed

Defendants also contend Plaintiff's claims brought against Individual Defendants in their "official capacity" should be dismissed as they are "effectively identical to the claims brought against the District." Defendants' MTD at pg. 37 [ECF No. 10-1].

Plaintiff responds that the Individual Defendants are not sued in their official capacities for any legal claims for damages, but only for claims for equitable relief, which is permitted. *See* Plaintiff's Response in Opposition to MTD at pg. 26 [ECF No. 15]. Individual Defendants, Plaintiff avers, "are being sued in their official capacity for the relief requested in the counts for a name-clearing hearing and declaring section 1122 unconstitutional." Compl. at ¶ 321. Because, as explained *infra*, the Court dismisses Plaintiff's section 1122 claim as moot, the Court need only address whether Plaintiff's official capacity claims against Defendants insofar as Plaintiff seeks a name-clearing hearing are permissible.

School board members, "in their official capacities, are part of the district itself." *Donovan*,
2015 U.S. Dist. LEXIS 78097 at *12-13. Therefore, claims against school board members in their
official capacities are redundant of claims asserted against the school district itself. *Id.* at *13.
However, §1983 claims may be brought against a government employee in their official capacity
only where "***prospective*** injunctive relief" is sought. *Graham v. State of N.J., New Jersey Dep't of
Corr.*, No. 21-20773, 2022 U.S. Dist. LEXIS 158971 at *12 (D. N.J. Sept. 2, 2022) (emphasis in
original).

Here, the injunctive relief Plaintiff seeks, a name-clearing hearing for alleged due process
violations committed in the now-complete disciplinary process of Plaintiff, is retrospective, not
prospective. *Doe v. Bowling Green State Univ.*, 2022 U.S. Dist. LEXIS 179939 at *15 (N.D. Ohio
Sept. 30, 2022) (Plaintiff's request for name-clearing hearing due to procedural due process
violations occurring in disciplinary process did not seek prospective relief because "[w]hile the
effects of these past alleged violations may be ongoing in the form of [plaintiff's] disciplinary
penalty, the alleged violative act itself is done, and as applied to [plaintiff], will not recur.").
Accordingly, the Court grants Defendants' motion to dismiss all remaining official capacity claims
brought against the Individual Defendants.

    **e. Count I: 42 U.S.C.S. § 1983: Plaintiff States a Claim for First Amendment
       Retaliation for Free Speech Expression**

To state a First Amendment retaliation claim pursuant to §1983, a plaintiff must allege that
"(1) he engaged in 'constitutionally protected conduct,' (2) the defendant engaged in 'retaliatory
action sufficient to deter a person of ordinary firmness from exercising his constitutional rights,'
and (3) 'a causal link existed between the constitutionally protected conduct and the retaliatory
action'" *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (quoting *Palardy v.
Twp. of Millburn*, 906 F.3d 76, 80-81 (3d Cir. 2018)). Here, Defendants only challenge Plaintiff's

pleading of the third (3) element. *See* Defendants' MTD at pg. 18 [ECF No. 10-1]. The third (3) element is a "factual issue." *Baloga*, 927 F.3d at 761.

Defendants argue Plaintiff fails to state a claim for First Amendment Retaliation because there is "no causal connection between the protected activity and the retaliatory action" since "[o]ver a year and a half lapsed between Plaintiff's alleged protected activity and the Board's decision to terminate Plaintiff for abandoning his teaching position." *Id.* at pg. 18 [ECF No. 10-1][2]. Plaintiff's Response claims there is a temporal connection between the protected activity and retaliatory action because Defendant was first suspended on January 7, 2021, one day after attending the "January 6 Rally" and thereafter a series of retaliatory conduct took place, including Defendants' alleged collusion "with left-wing community groups to viciously defame Plaintiff at a school board meeting in February 2021" and the fact that Plaintiff "was kept suspended and never reinstated for that entire 1.5 years." Plaintiff's Response in Opposition to MTD at pg. 10 [ECF No. 15].

Plaintiff successfully states a claim for First Amendment Retaliation based on his attendance at the January 6, 2021 rally at the Washington Monument and expression of support for then-President Trump. Defendants do not contest Plaintiff (1) pleads he engaged in activity protected by the First Amendment, consisting of Plaintiff's "attendance and political support of the January 6, 2021 Rally, and social media posts and two social media comments made by Plaintiff on January 6, 2021." Compl. at ¶ 339. *See Lederman v. Benepe*, No. 12 Civ. 6028, 2014 U.S. Dist. LEXIS 44057 at *29 (S.D.N.Y. Mar. 28, 2014) (holding Plaintiff attending public lecture "was engaged in expressive political speech" and "The First Amendment protects political

---

[2] This language in Defendants' Brief appears to quote case law, but no citation follows the quoted text.

demonstrations and protests – activities at the heart of what the Bill of Rights was designed to safeguard.").

As to the second (2) element, Plaintiff pleads numerous alleged forms of retaliatory conduct. "Although the nature of the retaliatory acts committed by the public employer must 'be more than *de minimis*…the threshold is 'very low.'" *Baloga*, 927 F.3d at 758 (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006)). "Indeed,' the Third Circuit has recognized "an act of retaliation as trivial as failing to hold a birthday party for a public employee when intended to punish her for exercising her First Amendment right may suffice." *Id.* (quoting *Suppan v. Dadonna*, 203 F.3d 228, 234 (3d Cir. 2000)).

Here, Plaintiff alleges that one day after he engaged in the protected activity, Defendants suspended him and issued false statements on social media, the web, and to the press suggesting he was involved in violent and criminal activity. Compl. at ¶ 351. Plaintiff alleges Defendants considered "Plaintiff's support for President Trump a reason to discipline Plaintiff and publicly defame and stigmatize him as an 'insurrectionist,' 'terrorist,' 'white supremacist,' 'racist,' 'bigot,' 'biased educator,' and a host of other vile accusations" *Id.* at ¶ 356. Plaintiff alleges Defendants "essentially admitted to First Amendment violations" by stating Plaintiff "was being disciplined and investigated for participating in un-American and subversive doctrines" and that the adverse actions by Defendants against Plaintiff "were because of the content of his social media posts." *Id.* at ¶ 378. Indeed, Defendants' own briefing states that the "Administration's decision to suspend and investigate the extent of Plaintiff's activity was justified when what he posted was perceived by members of a largely black and brown community as an endorsement of white supremacist ideology." Defendants' MTD at pg. 21 [Doc. 10-1]. The Court finds these alleged acts of retaliation

alone are enough to sufficiently plead the second (2) element of Plaintiff's First Amendment Retaliation claim.

In addition, however, Plaintiff also alleges Defendants retaliated against him in the form of a constructive discharge. Plaintiff alleges Defendants' retaliatory conduct began on January 7, 2021 and continued through a series of causally related conduct until and beyond his termination. *Id.* at ¶ 380-81. Although Defendants allege Plaintiff's termination was "for abandoning his teaching position," Plaintiff alleges he was "constructively terminated" after Defendants "created intolerable working conditions which constitute a constructive termination[3], which started when they publicly attacked and defamed him" on January 7, 2021. *See* Defendants' MTD at pg. 10 [ECF No. 10-1]; then Compl. at ¶ 288 [ECF No. 1-1].

Although Defendants suggest otherwise, Plaintiff need not plead a separate "constructive discharge count." Rather, federal courts consistently recognize that an employee's constructive discharge may satisfy the requirements of pleading an adverse or retaliatory employment action in violation of the First Amendment. *See Genova v. City of Glen Cove*, No. 13-cv-4088, 2017 U.S. Dist. LEXIS 25730 at *51 (E.D.N.Y. Feb. 22, 2017) (Plaintiff's allegations "that he suffered a constructive discharge…due to his political affiliations…if true, would satisfy the requirements of an adverse employment action."); *Bailor v. Taylor*, 170 F. Supp. 466, 471 (D. Del. 2001) ("Constructive discharge occurs when an employer's unlawful retaliatory conduct is so intolerable that a reasonable person subject to such retaliation would feel compelled to resign."); *Rugamba v. CRST, Inc.*, No. 20-2934, 2022 U.S. App. LEXIS 2975 at *3 (3d Cir. Feb. 2, 2022) ("In order to

---

[3] Defendants' only challenge to this allegation of constructive termination is an incomplete footnote stating, "Plaintiff alludes to a constructive discharge claim though he did not plead a count alleging same. Moreover, an 'employees subjective perception'" – and the footnote cuts off. *See* Defendants' MTD at pg. 11 [ECF No. 10-1].

state a claim based on a constructive discharge" a plaintiff must "allege that his employer made working conditions so intolerable that he was forced to resign.") (internal quotations and citation omitted).

Here, Plaintiff alleges he was constructively terminated because Defendants created "intolerable working conditions" by: publishing a false press release allegedly suggesting Plaintiff was "involved in the…protest…that took place at the United States Capitol Building" when Plaintiff alleges he was at all times over one (1) mile away from the Capitol Building, and by making statements to the Morning Call on January 8, 2021 that suggested Plaintiff "participated in un-American and subversive doctrines," as well as through the alleged involvement of Board Members Harris and Conover in creating and circulating a Facebook petition directed to the School Board opposing "anyone that attended the storming the capital in Washington" for the purpose of "whip[ping] up community and local activists in advance of a February 11, 2021 board meeting, so that they would defame and attack Plaintiff at the board meeting using the defamatory lies Defendants had been spreading about Plaintiff. " *Compl.* at ¶¶ 287; 52; 66; 83; 288.

All of these actions, Plaintiff alleges, caused "intolerable," "hostile" and "unsafe" working conditions. *Id.* at ¶¶ 286-88. At this early motion to dismiss stage, the Court finds that Plaintiff has plead facts, which, if true, plausibly allege constructive discharge. Having been constructively discharged "as of January 7, 2021, and no later than February 11, 2021," Plaintiff alleges his formal termination "over a year later" was "for a pretextual reason."  *Id.* at ¶ 292.

As to the third (3) element, a plaintiff establishes causation by proving either "(1) an usually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. In the absence of that proof, the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier

of fact should infer causation." *Beyer v. Borough*, 428 Fed. Appx. 149, 154-55 (3d Cir. 201) (quoting *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). "The decision-makers must be aware of the protected conduct for it to be a substantial or motivating factor in a decision." *Id.* at 155.

Here, Plaintiff alleges that Defendants' retaliatory conduct began the day after his protected political speech on January 6, 2021. Compl. at ¶ 31 [ECF No. 1-1]. Plaintiff alleges that on January 7, 2021 Defendants suspended Plaintiff and published a false press release, which Defendants refused to correct, suggesting Plaintiff was at the U.S. Capitol Building. *Id.* at ¶¶ 31-32. On January 8, 2021, Plaintiff alleges Defendants told the Morning Call that Plaintiff "was being disciplined and investigated for participating in un-American and subversive doctrines." *Id.* at ¶ 379. Plaintiff further alleges that two Board members orchestrated "defamatory attacks at the February 11, 2021 board meeting on Plaintiff" regarding his conduct on January 6, 2021, and that Plaintiff was ultimately terminated "for the pretextual reason of failing to return to work." *Id.* at ¶ 380.

 In light of the foregoing allegations, the Court finds that Plaintiff's Complaint avers enough to state a claim for First Amendment Retaliation, as Plaintiff has satisfied his burden to "only produce some evidence, direct or circumstantial" of a causal link between the protected activity and alleged retaliation, "that is 'enough to raise the right to relief above the speculative level.'" *Nusser v. Twp. of Hanover*, No. 20-1587, 2022 U.S. Dist. LEXIS 38036 at *12 (W.D. Pa. Mar. 3, 2022) (quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 555 (2007)).

### f.  Count II: 42 U.S.C.S. § 1983:  Plaintiff States a Claim for First Amendment Retaliation Based on Political Affiliation

Count II of the Complaint brings another First Amendment Retaliation claim, this time based on Plaintiff's political affiliation. "Under the Supreme Court's political patronage trilogy, the First Amendment's freedom of association guarantee bars basing employment decisions, such

as discharge, hiring and promotions, on an employee's political affiliation, so long as such affiliation is not an appropriate requirement for the position at issue." *Ferraioli v. City of Hackensack*, No. 09-2663, 2010 U.S. Dist. LEXIS 8527 at *22 (D. N.J. Feb. 2, 2010). To state a First Amendment political affiliation retaliation claim, a Plaintiff must (1) "establish that 'she was employed at a public agency that does not require political affiliation'"; (2) "show that she engaged in conduct protected by the First Amendment"; and (3) "prove that the constitutionality-protected conduct was a substantial or motivating factor for the adverse employment action." *Montone v. City of Jersey City*, 709 F.3d 181, 189 (3d Cir. 2013). "The Third Circuit has elaborated that there is an implicit requirement in the third prong that the plaintiff 'produce sufficient evidence to show the defendant knew of plaintiff's political persuasion.'" *Gayles v. Hillside Bd. of Educ.*, 2022 U.S. Dist. LEXIS 67293 at *12 (D. N.J. Apr. 11, 2022) (quoting *Goodman v. Pa. Turnpike Comm'n*, 293 F.3d 655, 664 (3d Cir. 2002)).

Defendants contend there are no facts plead in the Complaint "that would prove" Defendants knew of Plaintiff's political affiliation. *See* Defendants' MTD at pg. 20 [ECF No. 10-1]. Defendants argue "[t]here was no pleading that Plaintiff was politically active or made his political inclinations known to [the] Administration publicly or privately, before they suspended him or to the Board before they terminated him." *Id.* Indeed, Plaintiff's Complaint avers Plaintiff did not advertise that he was "a conservative republican and supported Donald Trump" because ASD "is overwhelmingly comprised of liberal Democrats who have demonstrated hostility for Republicans, conservatives, and supporters of Donald Trump." Compl. at ¶ 26 [ECF No. 1-1].

However, Plaintiff's Complaint alleges Defendants learned of his political affiliation through "Plaintiff's private social media" which "contained and expressed statements of political affiliation and support for Republicans, conservatives, and President Donald J. Trump." *Id.* at ¶

408. Plaintiff alleges Defendants "took adverse action against Plaintiff both because he affiliated with President Trump, and also because of the perceived political affiliations his social media posts conveyed." *Id.* at ¶ 409. Plaintiff avers that Defendants' refusal to reinstate Plaintiff or "retract" public statements made about Plaintiff was based on Defendants' "left-wing politics and ideological hatred for Republicans and conservatives." *Id.* at ¶ 76. Even if, as Defendants allege, Defendants were unaware of Plaintiff's political affiliation when Plaintiff was initially suspended on January 7, 2021, Plaintiff's Complaint alleges enough facts from which a reasonable inference may be drawn that Defendants became aware, if they were not already, of Plaintiff's political affiliation shortly thereafter. Indeed, the Complaint alleges that Defendants learned Plaintiff attended a political rally in support of then-President Donald Trump shortly after January 6, 2021 as ASD issued a press release regarding Plaintiff the next day, and the topic was discussed at length in a February 11, 2021 Board Meeting. *See generally id.* Plaintiff plausibly alleges that Defendants' allegedly retaliatory conduct in the months – and years – following the initial January 7, 2021 suspension of Plaintiff was motivated by "Plaintiff's political affiliations." *Id.* at ¶ 414.

Accordingly, the Court allows Plaintiff's First Amendment retaliation claims based on Plaintiff's speech (Count I) and association (Count II) to proceed past the Motion to Dismiss stage of litigation. *See Ferraioli v. City of Hackensack*, No. 09-2663, 2010 U.S. Dist. LEXIS 8527 at *16-17 (D. N.J. Feb. 2, 2010) (permitting Plaintiff's "First Amendment claims based on retaliation for exercising both free speech and free association rights" to proceed past "Defendants' Rule 12(b)(6) challenge.").

### g.  Count III, Seeking Determination that Pennsylvania School Code Section 1122 Violates the US and Pennsylvania Constitutions is Denied as Moot

Count III of Plaintiff's Complaint asks this Court to declare section 1122 of the Pennsylvania School Code unconstitutional insofar as it permits termination of teachers for

"advocation of or participating in un-American or subversive doctrines" and enjoin enforcement of this provision of section 1122 against Plaintiff. Compl. at ¶¶ 435-36 [ECF No. 1-1]. However, on February 28, 2023, Plaintiff filed a Supplemental Response in Opposition to Defendants' Motion to Dismiss Based Upon Repeal of Section 1122. [ECF No. 24]. Plaintiff's Supplemental Response advises that "[a]dditional research shows that section 16 of the Pennsylvania Loyalty Act, Act of Dec. 22, 1951, No. 463 includes a section repealing the pertinent portion of section 1122." *Id.* at pg. 1. This Court agrees with Plaintiff that Section 1122's grounds for termination based on "advocation of or participating in un-American or subversive doctrines" was "expressly repealed [] by section 16 of the Pennsylvania Loyalty Act of December 22, 1951." *Bd. of Pub. Educ. v. Intille*, 401 Pa. 1, 4 n.3 (Pa. 1960).

Notwithstanding this, Plaintiff "continues to ask that section 1122 itself be declared unconstitutional as overbroad and vague to the extent if the Court determines for any reason the language at issue has not been repealed." Plaintiff's Supplemental Response at pg. 2 [ECF No. 24]. Because the Court finds the language at issue has been expressly repealed, the Court declines to rule on the constitutionality of the now-repealed statutory language and dismisses Count III of Plaintiff's Complaint as moot. *See Common Cause v. Pennsylvania*, 447 F. Supp. 2d 415, 423 (M.D. Pa. 2006) ("Courts have held that repeal of a challenged statute renders the challenge moot."); *Khodara Envtl., Inc. ex rel Eagle Envtl., L.P.*, 237 F.3d 186, 192-94 (3d Cir. 2001) (holding constitutional challenge to statute seeking injunctive relief enjoining statute's enforcement mooted by statute's subsequent amendment); *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1329 (11th Cir. 2004) ("Generally, a challenge to the constitutionality of a statute is mooted by repeal of the statute."); *Spencer v. Riley*, No. 2:09-cv-1089, 2012 U.S. Dist.

LEXIS 99217 at *23 (M.D. Ala. June 4, 2012) (plaintiff's requests for injunctive and declaratory relief as to allegedly unconstitutional statute rendered moot by statute's repeal).

### h. Count IV: Procedural Due Process
#### i. Property Interest in Continued Employment: Plaintiff Fails to State a Pre-Deprivation Due Process Claim Based on His Paid Suspension; But Plaintiff Successfully States a Pre-Deprivation Due Process Claim Based on His Unpaid Suspension, and a Post-Deprivation Due Process Claim Based on Defendants' Alleged Bias.

"In considering a procedural due process claim, courts look to (1) whether the interest deprived falls within the scope of the Fourteenth Amendment's protection of life, liberty, or property and (2) whether the procedures available provided the plaintiff with due process of law.'" *Kairo-Scibek v. Wyo. Valley West Sch. Dist.*, 880 F. Supp. 2d 549, 556 (M.D. Pa. 2012) (internal quotations omitted). Here, Plaintiff alleges (1) he has a property interest in his continued employment as a teacher with ASD and (2) Defendants' deprivation of this property interest violated Plaintiff's right to due process. *See* Compl. at ¶¶ 439; 443. Courts applying Pennsylvania law have found, and Defendants do not contest, that Plaintiff, as a public school teacher, was entitled to "procedural due process prior to removal." *Wagner v. Tuscarora Sch. Dist.*, No. 1:04-cv-1133, 2005 U.S. Dist. LEXIS 45663 at *10 (M.D. Pa. Sept. 21, 2005); *see also* Defendants' MTD at pg. 27 [ECF No. 10-1] ("Defendants do not deny that as a teacher Plaintiff had a property interest in his job."). Pursuant to the Supreme Court's decision in *Loudermill*, public employees with a constitutionally protected property interest in continued employment are entitled to "an informal, pre-termination hearing, to be followed by a more comprehensive post-termination hearing." *Cormier v. Crestwood Sch. Dist.*, No. 3:19-cv-1671, 2020 U.S. Dist. LEXIS 197283 at *14 (M.D. Pa. Oct. 23, 2020).

### 1.   Pre-deprivation Claims

Plaintiff argues he states two pre-deprivation claims (1) "for the pre-deprivation

violations that occurred from January 2021 to July 2021" relating to his suspension, and (2) "the

pretextual and deficient pre-deprivation process that occurred in September and October 2021"

relating to Plaintiff's termination. *See* Plaintiff's Response in Opposition to MTD at pg. 17 [ECF

No. 15].

### a.   Plaintiff Does Not State a Claim for Pre-Deprivation Due Process Violation Arising Out of His Suspension *With* Pay

Plaintiff's conclusory allegations that his initial suspension was with intent to terminate are

not supported with well-pleaded facts. Plaintiff does not aver any District Officer Defendants or

other Individual Defendants stated Plaintiff's suspension was with intent to dismiss or

recommended termination at the time the suspension was made. *See Moffitt v. Tunkhannock Area*

*Sch. Dist.*, No. 3:13-1519, 2013 U.S. Dist. LEXIS 181603 at *13 (M.D. Pa. Dec. 31, 2013) (finding

suspension is made with "intent to terminate" where suspension *includes* an "intent to dismiss" or

when letter notifying plaintiff of allegations supporting suspension includes notification that

school administration recommended termination.).

Plaintiff also alleges his suspension was ***with pay*** and without notice.  *See* Compl. at ¶ 17.

In evaluating whether this conduct violates Plaintiff's procedural due process rights, the court

considers the following three factors: (1) Plaintiff's private interest in not being suspended with

pay; (2) ASD's "interest in the expeditious removal of unsatisfactory employees and the avoidance

of administrative burdens" and (3) "the risk of erroneous termination." *Biliski v. Red Clay Consol.*

*Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 221 (3d Cir. 2009). "[A]" public employee is not absolutely

entitled to a pre-suspension hearing." *Yelland v. Abington Heights Sch. Dist.*, 2017 U.S. Dist.

LEXIS 18441 at *16 (M.D. Pa. Feb. 9, 2017). Indeed, "[w]here it would be impractical to provide pre-deprivation process, post-deprivation process satisfies the requirements of the Due Process clause." *Kairo-Scibek*, 880 F. Supp. 2d at 558 (quoting *Gilbert v. Homar*, 520 U.S. 924, 930 (1997)).

Here, Plaintiff was suspended with pay on January 7, 2021. Compl. at ¶ 17. That same day, Plaintiff was informed by Defendant Pidgeon that he was being suspended "based upon serious concerns about your involvement in the civil unrest that occurred at the United States Capitol Building" and that ASD was investigating Plaintiff's involvement in the unrest. *Id.* ¶ 32. The very next day, On January 8, 2021, Plaintiff was issued a *Garrity* notice and appeared via Zoom for a meeting with the District Solicitor and Defendant Pidgeon, where Plaintiff was questioned and explained his conduct on January 6, 2021. *Id.* ¶ 51-53.

Considering the Complaint alleges Plaintiff's suspension was with pay, that Plaintiff was given notice of the grounds for his suspension that same day, and afforded the opportunity to respond in a meeting with the District Solicitor the very next day, and that Plaintiff was given a *Loudermill* Notice and Hearing – all while still being paid – the Court finds the Complaint fails to state a pre-deprivation Procedural Due Process claim based on Plaintiff's suspension. *See Deltondo v. Sch. Dist. of Pittsburgh*, No. 2:22-350, 2023 U.S. Dist. LEXIS 15133 at *22 (W.D. Pa. Jan. 30, 2023) ("Numerous courts have held" suspension with pay does "not require prior notice and a *Loudermill* hearing" and "the property interest in not being suspended with pay" is "minimal"); *Cormier*, 2020 U.S. Dist. LEXIS 197283 at *15 ("a governmental employee who is suspended with pay is not entitled to a pre-suspension hearing providing the employee with notice and an opportunity to be heard."); *Smith v. Borough of Dunmore*, No. 3:05-cv-1343, 2011 U.S. Dist. LEXIS 43766 at *9 (M.D. Pa. Apr. 22, 2011) (holding plaintiff's interest in being suspended with

pay "a comparatively minor deprivation" to that of being "suspended *without* pay") (emphasis in original). Moreover, in addition to the foregoing considerations, allegations of pre-deprivation proceeding bias, by themselves, are insufficient to establish a procedural due process violation claim. *Greene v. Sch. Dist. of Phila.*, No. 2:08-cv-4163, 2009 U.S. Dist. LEXIS 149743 at *17 (E.D. Pa. May 28, 2009) ("biased pre-deprivation proceedings are not violations of due process so long as there is an opportunity for a post-deprivation hearing.")

### b.   Plaintiff States a Claim for Pre-Deprivation Due Process Violation Arising Out of His Suspension *Without* Pay

Plaintiff also contends he states a separate pre-depravation claim for "violations" occurring "in September 2021 when Defendants pretextually and in a predetermined manner (including stopping his pay) claimed that he had "failed to appear for work, even though it was obvious in early 2021 that Plaintiff could never return to the district because of the hostile work environment and complete collapse of the employment relationship – not to mention the uncorrected horrific defamation which still remains uncorrected." Plaintiff's Response to MTD at pg. 19 [ECF No. 15]. Plaintiff alleges his pay was stopped on September 1, 2021. Compl. at ¶ 179. However, prior to this pay stoppage, Plaintiff alleges he was served with a Reinstatement Letter on July 16, 2021 and that he rejected the conditions of the Reinstatement Letter and refused to return to work. *Id.* at ¶¶ 144, 153. Thereafter, Plaintiff alleges he received a letter from Defendant Pidgeon on August 9, 2021, demanding he return to work and advising that if he does not respond by August 13, 2021 or does not intend to return to work, his salary and benefits will be dismissed. *Id.* at ¶ 155-56; Ex. 24. Plaintiff alleges he responded to this letter on August 16, 2021 and reaffirmed his rejection of the Reinstatement Letter's terms and refused to return to work. *Id.* at ¶ 155-56; Ex. 24. Moreover,

Plaintiff alleges he was served with a *Loudermill* notice for his termination due to failure to show up for work on September 14, 2021, two weeks after his pay was stopped. *Id.* at ¶ 172.

Nevertheless, because Plaintiff alleges he was suspended without pay for his failure to report to work two weeks prior to receiving his termination notice and prior to a termination hearing, the Court finds at this early stage of litigation that Plaintiff states a plausible pre-deprivation Procedural Due process claim arising out of his unpaid suspension. Courts in this circuit consistently find that "absent extraordinary circumstances," a public employee with a property interest in their job is entitled to a hearing prior to an ***unpaid*** suspension or termination. *Schmidt v. Creedon*, 639 F.3d 587, 596 (3d Cir. 2011); *Vatner v. Bd. of Trs. of the Univ. of Med. & Dentistry of N.J.*, No. 12-3339, 2015 U.S. Dist. LEXIS 13135 at *34 (D. N.J. Feb. 3, 2015).

### 2. Plaintiff States a Post-Deprivation Due Process Claim

Plaintiff also argues he pleads a post-deprivation claim, contending "the Board Hearing process was a biased sham which violated due process." *See* Plaintiff's Response in Opposition to MTD at pg. 17 [ECF No. 19]. Plaintiff alleges the Board Hearing process was biased because the School Board participated in and ratified the retaliation against Plaintiff, Plaintiff had already sued Defendants, and the School Board harbored "political animus" towards Plaintiff. *Id.* at ¶ 450. Plaintiff avers that Defendant Board Members Harris and Conover colluded "to attack and retaliate against" Plaintiff by starting and sharing a Change.Org petition, allegedly about Plaintiff, which "oppose[d] anyone that attended the storming of the capital in Washington" and suggested Plaintiff supported "white supremacy." *Id.* at ¶¶ 77-87. Plaintiff alleges all Board Members were aware of this petition prior to a February 11, 2021 Board Meeting. *Id.* Plaintiff further avers the Board Hearing process was biased because the hearing officer was also the District Solicitor, Mr. Sultanik, and also because the hearing officer did not compel the board members to testify despite

Plaintiff's request, the Individual Board members did not attend the hearing process, the hearing officer did not consider evidence regarding Plaintiff's allegations that he had been constructively discharged "due to a hostile and unsafe environment," the hearing officer did not read Plaintiff's briefing, and the hearing officer told Plaintiff he was not entitled to an impartial and unbiased board hearing. *Id.* at ¶¶ 191-218. Plaintiff alleges the hearing officer, Mr. Sultanik, both presided over the board hearing, ruling on evidentiary objections, and issued a report and recommendation to the Board, which recommended Plaintiff be terminated. *Id.* at ¶ 243, 246; Ex. 54.

"The Third Circuit recognizes 'two kinds of procedural due process violations: those that arise from insufficient procedural safeguards and those that arise from decisionmaker bias." *Paparo v. Borough of Yeadon*, No. 22-841, 2022 U.S. Dist. LEXIS 183850 at *16 (E.D. Pa. Oct. 7, 2022). "An unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case." *Id.* (quoting *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016)). *Belasco v. Bd. of Public Educ.*, 510 Pa. 504, 510 (Pa. 1986) ("In the hearing before the School Board, the Board acts in a dual capacity, both as a prosecutor and judge. The circumstances of the Board serving in this twin function creates a potential for prejudice."). "To show insufficient procedural safeguards, a plaintiff 'does not need to prove a stacked deck to prevail; rather, all [he needs to establish is that the adjudicatory panel was infected with the appearance of non-objectivity.'" *Id.* (quoting *Purcell v. Reading School District*, 167 A.3d 216, 226 (Pa. Commw. Ct. 2017)). To adequately allege decisionmaker bias, a plaintiff must make a sufficient showing of decisionmaker bias and allege that the bias was not eliminated due to limitations placed on the decisionmaker's discretion or availability of review. Decisionmaker bias may be alleged by showing that the adjudicator demonstrated a predisposition on the issue. *Id.* (internal citation omitted).

At this early stage, Plaintiff's allegations sufficiently plead decisionmaker bias. Defendants' reliance on *Behm v. Wilmington Area School District*, 996 A.2d 60 (Pa. Commw. Ct. 2010) is misplaced. In *Behm*, the district solicitor gathered evidence used by the district in the hearing and then "acted as the School Board's legal advisor at the hearing and ruled on the admissibility of this same evidence for consideration by the School Board." *Id.* at 63-64. The Court held the plaintiffs' due process rights were not violated because there was no allegation the solicitor "was otherwise involved in the School Board's actual decision making" and on the grounds that the solicitor could not have acted as both a prosecutor and adjudicator because, in that case, the hearing was "non-disciplinary" and therefore "no one is acting in a prosecutorial capacity." *Id.* at 65-66. Here, Plaintiff alleges the Solicitor, Mr. Sultanik, was involved in the Board's actual decision making because he issued a report to the Board recommending Plaintiff be terminated, and this hearing was disciplinary in nature. At this stage, Plaintiff pleads enough allegations of bias to survive a motion to dismiss. *Kaidanov v. Pa. State Univ.*, No. 14-3191, 2014 U.S. Dist. LEXIS 176556 at *19-20 (E.D. Pa. Dec. 23, 2014) (holding complaint's allegations that university employer's Employee Relations manager "was biased, and therefore not an impartial decision-maker" in support of "claim for violation of post-termination due process...may not survive a summary judgment motion" but "alleged just enough to get beyond a motion to dismiss.").

In any event, Plaintiff's numerous allegations of bias, considered together, state a claim for violation of Plaintiff's procedural due process rights.

ii. **Plaintiff's "Plus" Due Process Claims: Plaintiff States a Claim for "Reputation-Plus" Due Process Violation; but not "Stigma-Plus" Due Process Violation.**

In addition to the foregoing, a plaintiff may also bring a due process claim when the employee's "firing or demotion is coupled with a defamatory official statement" *or* "when an adverse employment action…is combined with 'a stigma or other disability that forecloses the plaintiff's freedom to take advantage of other employment opportunities.'" *Evangelou v. D.C.*, 901 F. Supp. 2d 159, 171 (D. D.C. 2012) (quoting *O'Donnell v. Barry*, 148 F.3d 1126, 1140, (D.C. Cir. 1998)). Here, Plaintiff pursues a due process claim under both theories. Compl. at pgs. 97-111. Plaintiff pleads these theories as two separate "Stigma-Plus" and "Reputation-Plus" due process claims. *Id.* However, courts in this circuit appear to refer to both theories jointly as a "stigma-plus" claim. *Kern v. Schuykill Intermediate Unit 29*, No. 3:CV-08-1601, No. 18-1236, 2010 U.S. Dist. LEXIS 3216 at *17-18 (M.D. Pa. Jan. 15, 2010); *Thompson v. Del. Dep't of Servs. for Children*, 2019 U.S. Dist. LEXIS 151170 at *12 (D. Del. Sept. 5, 2019); *Otto v. Williams*, 704 Fed. Appx. 50, 53 (3d Cir. 2017). *See also Ersek v. Township of Springfield*, 102 F.3d 79, 83 n.5 (3d Cir. 1996) (referring to "reputation-plus" and "stigma-plus" claims interchangeably); *McGinnis v. District of Columbia*, 65 F. Supp. 3d 203, 220 (D. C.C. 2014) ("The stigma and reputation-plus theories appear to be two sides of the same coin."). For ease of reference, the Court refers to Plaintiff's "Plus" claims as plead: a "Reputation-Plus" claim, and a "Stigma-Plus" claim.

Plaintiff's Complaint sufficiently pleads a Reputation-Plus claim pursuant to the theory that Defendants defamed Plaintiff in connection with or accompanied by a deprivation of some additional right or interest. Plaintiff alleges Defendants made defamatory statements about him on January 7, 2021 via the press release, on January 8, 2021 to the Morning Call, and on February 11, 2021. Compl. at ¶ 473. Defendants contend Plaintiff does not adequately plead that Defendants

created a defamatory impression regarding him. As is especially the case in this action, Plaintiff's allegations give rise to numerous factual issues not appropriate for resolution at this early stage in litigation. *See Ciemniecki v. Parker McCay P.A.*, No. 09-6450, 2012 U.S. Dist. LEXIS 552 at *15 (D. N.J. Jan. 4, 2012) ("In cases where the statement is capable of both defamatory and non-defamatory meanings, the question of whether the content is defamatory properly rests with the trier of fact."). Although at least some of the allegedly defamatory statements made by Defendants do not expressly identify Plaintiff by name, a statement need not identify a plaintiff by name to be defamatory. *See Johnston v. Borders*, 36 F. 4th 1254, 1276 (11th Cir. 2022) (holding allegedly defamatory statement forming basis of stigma/reputation plus claim need not necessarily designate plaintiff by name if those who read or hear statement "reasonably understand the plaintiff to be the person intended," noting "[e]xtrinsic facts may make it clear that a statement refers to a particular individual although the language used appears to defame nobody.").

Plaintiff alleges these defamatory statements were accompanied by numerous deprivations, including his suspension and termination, by Defendants. Compl. at ¶ 474. Because Plaintiff alleges he was suspended and constructively terminated by Defendants for exercising his First Amendment rights, and that in the process of his suspension, investigation, and constructive termination Defendants issued defamatory statements falsely suggesting Plaintiff participated in unrest at the Capitol, Plaintiff has done enough, at this early stage, to plead a Stigma-Plus Due Process claim. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 238 (3d Cir. 2006) ("A public employee who is defamed in the course of being terminated or constructively discharged satisfies the 'stigma plus' test.").

Plaintiff, however, fails to state his "Stigma-Plus" claim for violation of due process under the separate and additional theory that the adverse actions taken against Plaintiff were "combined

with a stigma or other disability that forecloses the plaintiff's freedom to take advantage of other employment opportunities." *Evangelou*, 901 F. Supp. 2d at 171 (quoting *O'Donnell*, 148 F.3d at 1140). To state a claim pursuant to this theory of a stigma-plus due process violation, a plaintiff must plead more than "stigma alone," and rather must show "a right or status previously recognized by state law has been distinctly altered or extinguished." *Id.* (internal quotations and citation omitted). Claims asserted under this theory "involve[] a situation, for example, when the state 'invokes a regulation to bar the plaintiff from all other public employment in state universities.'" *Fox v. Cheltenham Twp. Auth.*, No. 12-716, 2012 U.S. Dist. LEXIS 83903 at *14 (E.D. Pa. June 18, 2012) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972)). Here, Plaintiff's allegations that Defendants' conduct "destroyed" his "reputation and career" are conclusory and unsupported by specific factual allegations. Compl. at ¶ 456. Plaintiff does not allege he has unsuccessfully applied for other teaching jobs or plead any other specific facts indicating he has been effectively barred from other employment opportunities. Accordingly, the Court grants Defendants' Motion to Dismiss as it pertains to this theory of a "stigma-plus" due process violation. *See Lea v. District of Columbia*, No. 22-1396, 2022 U.S. Dist. LEXIS 140118 at *17 (D. D.C. Aug. 8, 2022) ("a stigma-plus claim cannot survive a motion to dismiss on the theory that a government action led to mere difficulty finding a job.").

> ### i. Count V: Plaintiff Fails to State a Claim for Coerced Statements and Unreasonable Search and Seizure Under Fourth, Fifth, and Fourteenth Amendments

Count V of the Complaint alleges Defendants violated Plaintiff's Fourth, Fifth, and Fourteenth Amendment Rights because when Defendants conducted the January 8, 2021 interview of Plaintiff "they actually secretly acted on behalf of the FBI" and the *Garrity* notice given to Plaintiff prior to the meeting was "misleading" because it "did not disclose he was actually already

under criminal investigation by the FBI, and that he was being interviewed by the FBI." Compl. at ¶¶ 482-491. Plaintiff's Complaint attaches the *Garrity* Notice issued to Plaintiff in advance of the January 8, 2021 interview, which states "Any statements made by you during these interviews cannot be used against you in any subsequent criminal proceeding, nor can the fruits of any of your statements be used against you in any subsequent criminal proceeding." *Id.* at Ex. 3.

Plaintiff also alleges that Defendants conducted an "unreasonable search and seizure" of Plaintiff's property by seizing Plaintiff's work devices "while secretly acting as an arm of the FBI, without disclosing [the devices] were being searched by law enforcement for incriminating reasons." *Id.* at ¶¶ 492-505.

Plaintiff alleges he "was never informed by his employer or the FBI of his constitutional right against self-incrimination, an egregious violation of the Fifth Amendment, nor that he should have criminal defense counsel present even though he was effectively being interviewed as a suspect by the FBI." *Id.* at ¶ 484. Plaintiff alleges "*Garrity* protects Plaintiff, a public employee, under the Fifth and Fourteenth Amendment against coerced statements." *Id.* at ¶ 486.

The *Garrity* rule protects public employees "from having to choose between cooperating with an internal investigation and making potentially incriminating statements. Immunity under *Garrity* prevents any statements made in the course of the internal investigation from being used against the [employee] in subsequent criminal proceedings." *United States v. Callahan*, No. 1:10-cr-353, 2011 U.S. Dist. LEXIS 109580 (N.D. Ga. Sept. 26, 2011). "Speculation is insufficient to invoke the protections of the Fifth Amendment: 'It is well established that the privilege protects against real dangers, not remote or speculative possibilities.'" *Frierson v. City of Terrell*, No. 3:02-cv-2340-H, 2003 U.S. Dist. LEXIS 15132 at *6-7 (N.D. Tex. Aug. 15, 2003) (quoting *Zicarelli v. New Jersey State Commission of Investigation*, 406 U.S. 472, 478 (1972)).

Plaintiff's Complaint is devoid of any non-conclusory allegations that Defendants conducted the January 8, 2021 interview of Plaintiff or searched Plaintiff's work devices while acting on behalf of the FBI. Although Plaintiff's Complaint at one point alleges that "testimony at the Board Hearing established that high-level" ASD officials "kept a special, secret 299-page binder relating to an FBI inquiry to Mr. Moorehead," it is unclear how ASD possessing a binder "relating to an FBI inquiry" constitutes a factual allegation that Defendants interviewed Plaintiff or searched his work devices "as an arm of the FBI." *Id.* at ¶¶ 166, then 499. At no point does Plaintiff even allege what the contents of this testimony "establish[ing]" the existence of a binder is. *Id.* at ¶ 166. Rather, Plaintiff cites vaguely to the Board Hearing Transcript that, if anything, contains explicit testimony averring that the FBI was ***not*** involved in the January 8, 2021 questioning of Plaintiff. *Id.* at ¶ 166; Ex. 43 (180:7-181-3). Plaintiff's Complaint similarly avers the conclusory allegation that Defendants "started working with the FBI to criminally investigate Plaintiff the morning of January 7, 2021" and cites vaguely to the Board Hearing Transcript without indicating what testimony established that Defendants "started working with the FBI to criminally investigate Plaintiff the morning of January 7, 2021" is. *Id.* at ¶ 169; Ex. 49. Moreover, Plaintiff does not allege he made any coerced statements during the January 8, 2021 interview that were subsequently used in criminal proceedings.

Similar to Plaintiff's allegations surrounding the January 8, 2021 interview, Plaintiff's Complaint alleges in conclusory fashion that "the FBI was behind this request and was the entity searching his devices." *Id.* at ¶ 124. Plaintiff avers no facts supporting this conclusion, and cites, without specification, to Exhibits 17-18 of Plaintiff's Complaint. *Id.* Exhibits 17 and 18 of Plaintiff's Complaint consist of e-mail correspondence between Plaintiff's counsel and then-

District Solicitor John Freund, and a letter written by Plaintiff's counsel to the School Board. *Id.* at Ex. 17-18. Neither of these exhibits make any reference to the FBI. *Id.*

Accordingly, the Court finds Plaintiff fails to state a claim for violations of the Fourth, Fifth, and Fourteenth Amendments for Coerced Statements and Unreasonable Search and Seizure on Behalf of the FBI. Count V of Plaintiff's Complaint is dismissed. Plaintiff's conclusory allegations that Defendants' secretly asked Plaintiff questions on behalf of the FBI and collected his work devices on behalf of the FBI are unsupported by well pleaded facts. Claims based on "pure speculation" are not entitled to survive dismissal at this stage. *Jankowski v. Lellock*, 649 Fed. Appx. 184, 188 (3d. Cir. 2016). Moreover, absent clear pleading in the Complaint of specific testimony or facts that support Plaintiff's allegations, the Court is not required to hunt through hundreds of pages of exhibits and testimony to cobble together a plausible claim on behalf of Plaintiff. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Because the Court dismisses Count V on the basis that Plaintiff fails to plead sufficient facts to state a claim, dismissal is without prejudice.

### j.   The Court Construes Count VI of Plaintiff's Complaint Seeking Name-Clearing Hearing as a Prayer for Relief in Connection With Plaintiff's Stigma-Plus Claim

Defendants move for dismissal of Count VI, contending a "name-clearing hearing" is not a standalone cause of action, but rather a claim for a specific form of relief. *See* Defendants' MTD at pg. 34 [10-1]. Defendants also contend Plaintiff should be barred from requesting a name-clearing hearing because Plaintiff "has been provided multiple and sufficient opportunities to clear his name." *Id.* at pg. 35.

The court agrees that Count VI of Plaintiff's Complaint, for declaratory and equitable relief in the form of a name-clearing hearing does not state a standalone cause of action. However, because Plaintiff validly states a "stigma-plus" due process claim, the Court will construe Count VI of Plaintiff's Complaint as a properly plead prayer for relief as it relates to Plaintiff's "stigma-plus" claim. *Brown v. Montgomery County*, No. 08-4259, 2011 U.S. Dist. LEXIS 35811 at *8 (E.D. Pa. Mar. 31, 2011) ("the principal remedy for a stigma-plus claim is a name-clearing hearing.").

Moreover, although Defendants contend Plaintiff had multiple opportunities to clear his name during and before the Board Hearing Process, because Plaintiff successfully states a procedural due process claim arising out of the alleged bias of the process and decisionmakers, Plaintiff's requested remedy of a name-clearing hearing is not forfeited. *See Slazar v. City of Albuquerque*, No. 10-0645, 2014 U.S. Dist. LEXIS 160250 at *124 (D. N.M. Oct. 27, 2014) ("A name-clearing hearing may be inadequate if the plaintiff is not given notice of the charges against him and if the hearing is before a biased adjudicator."); *Paparo*, 2022 U.S. Dist. LEXIS 183850 *15-18 (allowing plaintiff's stigma-plus claim to proceed past motion to dismiss stage where plaintiff alleged he was not afforded an adequate name-clearing hearing because his termination hearing was "inherently biased").

### k.   Plaintiff's Complaint States Claims for Punitive Damages Only as to Claims Brought Against Individual Defendants in their Individual Capacities

Defendants allege Plaintiff's claims for punitive damages should be stricken as a matter of law because punitive damages are not recoverable under section 1983 or against a municipality or local officials in their official capacities. Defendants' MTD at pg. 35 [ECF No. 10-1]. Plaintiff does not contest that punitive damages are not recoverable against a municipality, but contends punitive damages may be recovered against individual defendants in their individual capacities.

Plaintiff's Response in Opposition to MTD at pg. 24 [ECF No. 15]. Plaintiff is correct that "[a]n individual defendant may be held liable in his individual capacity for punitive damages if the actions are motivated by 'evil motive or intent, or where it involves reckless or callous indifference to the federally protected rights of others.'" *Mitros v. Borough of Glenolden*, 170 F. Supp. 2d 504, 508 (E.D. Pa. 2001) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).

Taking Plaintiff's allegations as true, as the Court must at this stage, "they are sufficient to infer recklessness or callous indifference to" Plaintiff's rights, and "therefore the request for punitive damages on § 1983 claims" against Individual Defendants in their "individual capacity will not be stricken." *Turner v. Wester*, No. 5:20-cv-199, 2021 U.S. Dist. LEXIS 76547 at *11-12 (N.D. Fla. Apr. 21, 2021).

### l.   Motion to Strike: Federal Rules of Civil Procedure 8(a)(2) and 8(d)(1) and 12(f)

Lastly, Defendants move this Court to strike numerous paragraphs of the Complaint pursuant to Federal Rules of Civil Procedure 8(a)(2), 8(d)(1), and 12(f), arguing "[t]he paragraphs themselves are not succinct statements containing alleged facts but contain speeches, page-long quotations, legal citations and argument infused with impertinent references such as "Soviet-esque star chambers" and scandalous inference such as "hidden orchestration" between the District and law enforcement."  Defendants' MTD at pg. 38 [ECF No. 10-1].

Pursuant to Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Moreover, Federal Rule of Civil Procedure 8 requires a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief" and "each allegation must be simple, concise, and direct." Fed. R. Civ. P 8(a);(d)(1). Plaintiff's Complaint is anything but

concise, direct, or short. Plaintiff's Complaint consists of 514 paragraphs and 123 pages of allegations, and attaches another 483 pages of exhibits.

"The standard for striking under Rule 12(f) is strict and…only allegations that are so unrelated to plaintiffs' claims as to be unworthy of any consideration should be stricken." *Johnson v. Anhorn*, 334 F. Supp. 2d 802, 809 (E.D. Pa. 2004) (quoting *Becker v. Chi. Title Ins. Co*., No. Civ. A. 03-2292, 2004 U.S. Dist. LEXIS 1988, at *18 (E.D.Pa. Feb. 4, 2004)). Indeed, as case law cited by Defendants themselves notes, "[s]triking a pleading or a portion of a pleading 'is a drastic remedy to be resorted to only when required for the purposes of justice." *LiCausi*, 2020 U.S. Dist. LEXIS 17479 at *6 (quoting *Lee v. Dubose Nat'l Energy Servs., Inc.*, No. 18-cv-2504, 2019 U.S. Dist. LEXIS 71309 at *4 (E.D. pa. Apr. 29, 2019)). However, courts have "considerable discretion" in ruling on a Rule 12(f) motion to strike. *Deltondo*, 2023 U.S. Dist. LEXIS 14781 at *4.

Though the Court agrees with Defendants that Plaintiff's Complaint need not be nearly as long as it is, and is replete with minimally relevant accusations and legal conclusions, out of an abundance of caution, to avoid striking allegations arguably relevant[4] to Plaintiff's claims, and

---

[4] Much of the paragraphs Defendants seek to strike are arguably relevant to Plaintiff's claims of procedural bias, First Amendment retaliation based on his political beliefs, and contention that all Defendants had knowledge of these alleged constitutional violations when Plaintiff was suspended and terminated. The Court finds the concern of striking potentially relevant allegations, at this early stage, outweighs any concerns of prejudice. *See Levy v. Jaguar Land Rover North Am., LLC*, No. 19-13497, 2020 U.S. Dist. LEXIS 18711 at *5 (D. N.J. Feb. 4, 2020) ("To succeed on a motion to strike, the moving party must show that the allegations in the complaint '***have no possible relation to the controversy*** and may cause prejudice to one of the parties, or that the allegations confuse the issues.'") (quoting *Garlanger v. Verbeke*, 223 F. Supp. 596, 609 (D. N.J. 2009)) (emphasis added); *Ratvasky v. Citizens Nat'l Bank*, No. 05-cv-1056, 2005 U.S. Dist. LEXIS 40474 at *5 (W.D. Pa. Dec. 5, 2005) (denying Rule 12(f) motion to strike for "immaterial, impertinent, or scandalous" paragraphs of complaint because "the pleadings are [not] read to the jury…[t]herefore, there is no real concern for prejudice here."); *Lifetouch Nat'l Sch. Studios Inc. v. Roles*, No. 3:15-cv-234, 2016 U.S. Dist. LEXIS 79771 at *8 (W.D. Pa. June 20,

considering the "highly disfavored" nature of a motion to strike, the Court will strike only the following paragraphs from Plaintiff's Complaint that consist purely of legal conclusions and plead no relevant facts: ¶¶ 63; 132; 136; 265; 266; 280; 281; 282; 283; 327; 337; 338; 353; 354; 364; 365; 367; 368; 372; 373; 382; 385; 386; 389; 394; 396; 399; 400; 406; 429; 438; 440; 444; 447; 448; 452; 454; 470.  *See Eisai Co. v. Teva Pharms. USA, Inc.*, 629 F. Supp. 2d 416, 424 (D. N.J. 2009) ("Motions to strike are highly disfavored."); *See also Nance v. Emages, Inc.*, No. 20-C-6316, 2022 U.S. Dist. LEXIS 104927 at *5-6 (N.D. Ill. June 13, 2022) (striking legal argument from complaint, holding "[t]he occasional legal conclusion among a numbered statement of alleged facts is often not worth the trouble of striking, but here, plaintiff has essentially included a legal brief in his complaint.").

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion to Dismiss/Strike Plaintiff's Complaint is **GRANTED IN PART** and **DENIED IN PART**. An appropriate order follows.


BY THE COURT:


*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

---

2016) (declining to strike potentially relevant allegations in complaint finding "answering these paragraphs will not cause prejudice to Defendant.").