IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON MOOREHEAD,<br>   Plaintiff,<br><br>   v.<br><br>SCHOOL DISTRICT OF THE CITY OF<br>ALLENTOWN, *et al.*,<br>   Defendants. | :<br>:<br>:<br>:  Civil No. 5:22-cv-03959-JMG<br>:<br>:<br>:<br>: |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                               July 15, 2024

**I. OVERVIEW**

Plaintiff Jason Moorehead, formerly a middle school teacher for Defendant School District of the City of Allentown ("ASD"), alleges numerous § 1983 claims against his ex-employer, its school board, and, in their personal capacities, its school board members and some administrators. Mr. Moorehead claims he was suspended, defamed, constructively terminated, and officially terminated by Defendants because of his political support for Donald Trump in violation of his federal rights. Defendants' moved for summary judgment on all counts, but did not address Count IV in their briefing.[1]

Before the Court is Defendants' supplemental briefing in support of their motion for summary judgment. For the reasons that follow, Defendants' motion is further granted with respect to Count IV—Plaintiff's Fourth amendment claim alleging an unlawful search, as well as his Fifth and Fourteenth Amendment claims alleging a violation of his right against self-incrimination.

---

[1] Plaintiff incorrectly states that Defendants did not move for summary judgment on Count IV. Pl.'s Corrected Supp'l Br. on Count IV Opp'g Request for Summ. J. ("Pl.'s Supp'l Resp.") at 2 (ECF No. 102). Defendants did not brief Count IV, but their motion stated that they "move for summary judgment ("Motion"), or, alternatively, partial summary judgment, as to all claims asserted by Plaintiff." Defs.' Mot. for Summ. J. at 1 (ECF No. 65).

## II. BACKGROUND

A. <u>Factual Background</u>[2]

The FBI contacted Defendant ASD Deputy Superintendent Jennifer Ramos on January 7, 2021. Ms. Ramos did not immediately take the call. Instead, she contacted then-Solicitor John E. Freund and, with his representation, Ms. Ramos spoke with an FBI agent. J. Freund Dep. 7:1–4 (ECF 90-1). The FBI agent asked whether ASD had any information regarding Mr. Moorehead's activities on January 6th, and Solicitor Freund stated they did not. Solicitor Freund asked the FBI agent whether they had any information they could share, and the agent stated they did not. *See* Brief in Support of Supp'l Mot. for Summ. J. Pursuant to Fed. R. Civ. P. 56 ("Defs.' Supp'l Brief") at 3 (ECF No. 100). Sometime later, in either February or March of 2021, the FBI contacted Solicitor Freund again to notify him that it had no evidence that Mr. Moorehead had been inside the US Capitol Building on January 6th. *Id.* One additional call between Solicitor Freund and the FBI may have occurred, but the record is unclear what was discussed. In any case, Defendants state—and Plaintiff does not rebut—that there is <u>no evidence</u> the FBI and ASD shared any information regarding Plaintiff. *Id.* at 4. Furthermore, no state charges or federal indictments have been brought against Mr. Moorehead.

ASD issued a Garrity notice to Mr. Moorehead and interviewed him in the presence of his Union President on January 8, 2021. The interview sought information related to Plaintiff's possible involvement in the Capitol riot.

Later in its investigation, ASD forensically imaged three district-owned devices assigned to Plaintiff. These devices were a laptop, a Chrome Book, and an iPad (the "Devices"). The Devices were issued to Plaintiff pursuant to ASD's acceptable use policy, which states:

> The district's computer and network resources are the property of the district. Users shall have no expectation of privacy in anything they create, store, send, delete, receive or display on or over the district's computer information systems, including

---

[2] This memorandum opinion addresses Count IV and adopts the facts stated in our previous memorandum opinion that addressed all other counts. *See* ECF No. 73 at 2–8.

personal files or any use of the district's computer information systems. The district reserves the right to monitor, track, and log network access and use; or monitor fileserver space utilization by district users.

ASD Policy No. 815 at 2–3. The policy goes on to state that users are required to sign user agreements acknowledging their awareness of the policy's provisions before access is granted to ASD computer information systems. *Id.* at 3.

ASD's review of the Devices followed extensive conversations with Plaintiff's counsel because they were in Mr. Moorehead's possession at the time. The correspondence regarding the Devices lasted weeks, at least, and consisted of about a dozen emails and various phone calls. Pl.'s Supp'l App. at SA0487–524. During the course of these discussions, ASD described their intended review of the Devices and why they were conducting that review. Namely, they intended to forensically image the hard drive to corroborate Plaintiff's answers during the January 8th interview because his attendance at the "Stop the Steal" rally and social media activity that day raised concerns that he may have committed actionable conduct on January 6th.

B.  Procedural Background

Plaintiff filed this civil rights lawsuit on August 23, 2022—about one month after he was terminated—in the Court of Common Pleas of Lehigh County. Defendants removed to this Court on October 5, 2022. Defendants filed a motion to dismiss one month later, and the Court granted that motion in part on April 17, 2023. Specifically, the Court dismissed Count III (requesting declaratory relief deeming Pennsylvania School Code Section 1122 as unconstitutional) as moot, Count IV (as it related to Plaintiff's stigma plus claim), and Count V (alleging various constitutional violations in connection with the FBI) in its entirety.[3] The Court also dismissed three defendants because Plaintiff

---

[3] Plaintiff's Amended Complaint (ECF No. 33) changed the roman numerals associated with each count alleged. The count numerals discussed in this section are from the original Complaint (ECF No. 1-1). In subsequent sections, when discussing the disposition of Defendants' motion for summary judgment, we use the Amended Complaint's count numerals.

failed to make individualized allegations against them and dismissed all official capacity suits as duplicative.

The parties engaged in extensive discovery that included disputes over privilege claims. Plaintiff filed a motion to compel on December 11, 2023. The Court ordered supplemental briefing and conducted *in camera* review of the contested documents. On April 8, 2024, the Court granted in part Plaintiff's motion to compel.

Defendant filed this motion for summary judgment on May 8, 2024. On July 9, 2024, we granted Defendants' motion in part. Summary judgment was entered in Defendants' favor on Count III (due process), but issues of fact remained on Counts I and II (First Amendment retaliation). The Court also directed supplemental briefing on Defendants' motion for summary judgment to address Count IV (unlawful search and right against self-incrimination). A trial date is set for August 2, 2024.[4]

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is properly granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are material if they "might affect the outcome of the suit under the governing law." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute as to those facts is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248). "We view all the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Id.* (internal quotation marks and citation omitted).

The party moving for summary judgment must first "identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

---

[4] Jury selection will begin the morning of August 2nd in Philadelphia and the trial will begin that afternoon, time-permitting. The remainder of trial will take place in Allentown.

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

## IV.  DISCUSSION

We directed supplemental briefing because Count IV presents legal issues that must be decided before sending this count to a jury. Otherwise, we would risk prejudice, confusion, and undue expense for all parties by requiring them to try matters before a jury for which—owing to legal issues that a court must decide—no constitutional violation occurred. In light of the supplemental briefing, relevant case law, and the record in this case, summary judgment is granted in Defendants' favor as to Count IV.

### A.   Fifth and Fourteenth Amendment Rights Against Self-Incrimination

The Fifth and Fourteenth Amendment rights[5] against self-incrimination are trial rights. Meaning, "it is the use of coerced statements during a criminal trial . . . that violates the Constitution" *Renda v. King*, 347 F.3d 550, 559 (3d Cir. 2003) (*quoting Giuffre v. Bissell*, 31 F.3d 1241, 1256 (3d Cir. 1994)). To assert a viable § 1983 claim based on the violation of one's right against self-incrimination, the compelled incriminating statement at issue must be used in a criminal case. *See Chavez v. Martinez*, 538 U.S. 760, 766 (2003). Although the Court in *Chavez* declined to affirmatively

---

[5] The Fifth Amendment's right against self-incrimination concerns federal venues and the Fourteenth Amendment offers the same protection via incorporation in state venues. *See Malloy v. Hogan*, 378 U.S. 1, 6 (1964). Because these rights differ only as to the venue in which a compelled incriminating statement is used, our analysis applies to each with equal force.

define what constitutes a "criminal case," it did reject the plaintiff's argument that the term "should encompass the entire criminal investigatory process, including police interrogations." *Id.*

Because Mr. Moorehead has not been tried, charged, nor even indicted for any crime, he has no standing to allege violations of his right against self-incrimination. *See id.* (Holding that plaintiff's right against self-incrimination was not violated where he was never charged with a crime).

      B.      <u>Fourth Amendment Right Against Unreasonable Search</u>

The Fourth Amendment is not a trial right, unlike the Fifth Amendment. "It prohibits 'unreasonable searches and seizures' whether or not the evidence is sought to be used in a criminal trial, and a violation of the Amendment is 'fully accomplished' at the time of an unreasonable governmental intrusion." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 264 (1990) (*quoting United States v. Calandra*, 414 U.S. 338, 354 (1974)).

Before providing our analysis, we must acknowledge how the facts of this case differ from much of the relevant case law concerning Fourth Amendment privacy rights of public employees in their computer activity. Oftentimes, when a public employee's computer activity is reviewed, the property to be reviewed is not in the employee's possession. *See, e.g., Slavoski v. Pawlowski*, 462 F. App'x 215, 218 (3d Cir. 2012); *Walker v. Coffey*, 905 F.3d 138, 144 (3d Cir. 2018) (granting qualified immunity for lack of clearly established law regarding electronic communications in the workplace); *United States v. Evers*, No. 3:19-CR-250, 2021 WL 4846241, at *7 (M.D. Pa. Oct. 18, 2021). In this case, the Devices were in Mr. Moorehead's possession; a detail that resulted in extensive pre-review information sharing by ASD about how and why it intended to search the Devices. ASD shared this information during negotiations with Plaintiff's counsel, who refused to hand over the Devices without this information. These facts raise a host of issues which, to our knowledge, have not been decided in the Third Circuit. Some of these issues include whether Plaintiff consented to this search

or waived his rights by turning over the Devices with the knowledge of ASD's intentions. [6] Also, to what extent these facts affect Plaintiff's reasonable expectation of privacy in the Devices. Nonetheless, we need not address these issues because Defendants are entitled to summary judgment on other grounds. But if they weren't, these unsettled issues would weigh heavily in favor of qualified immunity.

The Fourth Amendment of the United States Constitution guards "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Constitution's text makes clear that "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Kentucky v. King*, 563 U.S. 452, 459 (2011) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). And "reasonableness generally requires the obtaining of a judicial warrant." *See Riley v. California*, 573 U.S. 373, 382 (2014) (*citing Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995)). "With limited exceptions, a search or seizure requires either a warrant or probable cause." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 147 (3d Cir. 2005) (*citing Camara v. Mun. Court*, 387 U.S. 523, 528–29 (1967)).[7]

The Supreme Court has explained that the "special needs" of public employers justify one such exception. Public employers may "conduct a warrantless search of an employee's files or communications if the search is conducted for a 'noninvestigatory, work-related purpos[e]' or for the 'investigatio[n] of work-related misconduct.'" *Walker v. Coffey*, 905 F.3d 138, 148 (3d Cir. 2018)

---

[6] Although Plaintiff's counsel stated they would return the Devices under protest and without waiving any rights, at another point he conceded that "the District ultimately has a right to its property." Pl.'s Supp'l App. at SA0519.

[7] We assume *argendo* that Mr. Moorehead possessed a reasonable expectation of privacy in the district-owned devices at issue because we hold that, even if that was the case, an exception to the warrant requirement applies. However, the facts of this case—particularly the Acceptable Use Policy—raises serious doubts as to whether any such expectation of privacy existed.

(internal quotation marks omitted) (*citing City of Ontario v. Quon*, 560 U.S. 746, 761 (2010)).[8] Under this exception "a government employer's warrantless search is reasonable if it is 'justified at its inception' and if 'the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of' the circumstances giving rise to the search." *Quon*, 560 U.S. at 761 (*citing O'Connor v. Ortega*, 480 U.S. 709, 725–726 (1987) (plurality opinion)). This exception recognizes the difference in privacy rights an employee enjoys in his work-related materials as to outsiders compared his public employer. *See Walker*, 905 F.3d at 148.

Based on the record and the parties' briefing, ASD's forensic imaging of the Devices was justified at its inception and not excessively intrusive under the circumstances.

ASD shared its reasoning for this request in the course of its negotiation with Plaintiff's attorney over the Devices' return. "On January 8, Mr. Moorehead was interviewed in the presence of this union president." Pl.'s Supp'l App. at SA0523. In the course of that interview, ASD asked Mr. Moorehead about his activities on January 6, 2021, if he had associated with anyone on the FBI watchlist for their activities that day, and whether he frequented any extremist websites. Following that interview, "it was determined that a review of Mr. Moorehead's district owned computers should be reviewed to corroborate and dispute the information he provided during his interview." *Id.* Plaintiff argues that these questions are beyond the scope of his work responsibilities, but that is beside the point. Under Section 1122 of the Pennsylvania School Code governing the conduct of teachers, a teacher may be terminated for immoral conduct. 24 P.S. §11-1122. *See* Defs.' Supp'l Brief at 5 (stating that participating in the Capitol Building riot could be grounds for dismissal). Immoral conduct is "conduct which offends the morals of the Commonwealth and is a bad example to the

---

[8] The Third Circuit has not definitively stated that *Walker*'s approach should always apply on facts such as these. There is at least one other approach that district court judges in our circuit have employed, see, e.g., *Dombrowski v. Governor Mifflin Sch. Dist.*, No. CIV.A. 11-1278, 2012 WL 2501017, at *6 (E.D. Pa. June 29, 2012), but *Walker* postdates *Dombrowski*.

youth whose ideals a professional educator or a charter school staff member has a duty to foster and elevate." PROFESSIONAL STANDARDS AND PRACTICES COMMISSION, EDUCATOR MISCONDUCT: CONDUCT THAT CAN TRIGGER PROFESSIONAL DISCIPLINE (last visited July 15, 2024)[9]. Participating in a riot could certainly be classified as immoral conduct; and frequenting extremist websites could potentially lead to the same conclusion.

As to scope, the Court holds that Defendant's search of the Devices was not unnecessarily intrusive in light of the nature of the alleged misconduct. The forensic imaging of electronic devices is a significant investigatory step, but we must analyze it in light of the alleged underlying misconduct. As mentioned earlier, ASD was concerned that Plaintiff may have participated in a violence riot and thereby committed several serious crimes. And given what they knew about some of the groups involved in that riot, they were also concerned that Plaintiff may have associated himself with extremist groups.

We must also note that Plaintiff does not seem to take issue with the scope of the search conducted. As previously discussed, he was aware that ASD intended to forensically image his Devices when he returned them. His arguments focus instead on claims that ASD conducted the search as an "arm of the FBI." Pl.'s Supp'l Resp. at 4. We need not address the unsupported conspiracy claims in Plaintiff's argument because appeals to motive and intent are misplaced in a Fourth Amendment analysis. *See Brigham City*, 547 U.S. at 404 ("An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action.' The officer's subjective motivation is irrelevant." ((internal citations omitted) *quoting Scott v. United States*, 436 U.S. 128, 138 (1978)).

---

[9] Available at https://www.pspc.education.pa.gov/Promoting-Ethical-Practices-Resources/Ethics-Toolkit/The-Commission-Professional-Discipline-and-the-code/Pages/Educator-Misconduct.aspx#:~:text=Section%201122%20of%20the%20Public,of%20school%20laws%2C%20physical%20or.

## V.     CONCLUSION

For the foregoing reasons, the Court further grants Defendants' motion for summary judgment. Summary judgment is granted as to Count IV (unreasonable search and right against self-incrimination). The Parties will proceed to trial where Plaintiff's First Amendment retaliation claims will be decided by a jury.

A separate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Judge