IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JASON MOOREHEAD**<br>Plaintiff,<br><br>v.<br><br>**SCHOOL DISTRICT OF THE CITY OF ALLENTOWN, *et al*.**<br>Defendants. | :<br>:<br>:<br>:  Civil No. 5:22-cv-03959-JMG<br>:<br>:<br>:<br>: |

**MEMORANDUM OPINION**

**Gallagher, J.**                                                                                                            **March 31, 2025**

## I.  INTRODUCTION

Plaintiff Jason Moorehead brought a claim under 42 U.S.C. § 1983 against his former employer and its officers, the Court held an eleven-day trial, and a jury of his peers found his claims to be meritorious. The jury awarded him $125,000.00 in compensatory damages and $6,500.00 in punitive damages. Now, Plaintiff is before the Court seeking a new trial. Plaintiff does not seek to disturb the jury's finding of liability against the Defendants, but instead he would like the Court to hold a new trial as to damages—and he argues that he was entitled to a greater damages award.

Plaintiff argues he is entitled to a new trial on damages for three reasons: (1) the verdict is inconsistent, (2) the verdict is against the weight of the evidence, and (3) juror misconduct requires the Court to overturn the damages award. Guided by the principles that a court is required to "uphold the jury's verdict if at all possible," *Universal Computs. (Sys.) Ltd. v. Datamedia Corp.*, 653 F. Supp. 518, 527 (D.N.J. 1987), and that "a litigant is entitled to a fair trial but not a perfect

1

one," *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553 (1984), the Court will deny Plaintiff's Motion for a New Trial on Damages.

## II.      RELEVANT FACTUAL & PROCEDURAL BACKGROUND

Plaintiff Jason Moorehead filed suit in the Lehigh County Court of Common Pleas on August 23, 2022, and his case was removed to this Court on October 5, 2022. *See* ECF No. 1. The Court declines to provide a complete factual background of Plaintiff's claims and the evidence presented at trial and will instead focus on the facts that are relevant to this Motion.[1]

Plaintiff, a former middle school teacher, filed suit alleging unlawful retaliation in violation of his First Amendment right against his employer. Here's the gist of the matter: Plaintiff worked for the Allentown School District ("the District") for about nineteen years. *See Moorehead*, 2024 WL 3361611, at *1. Plaintiff is a political supporter of President Donald Trump, and on January 6, 2021, he travelled by bus to Washington, D.C., to attend the "Stop the Steal" rally. *See id.* While in D.C., he listened to speeches on the National Mall, including a speech given by President Trump. *See id.* Plaintiff was not a participant in the civil unrest that occurred at the United States Capitol Building, and he did not get "within one mile" of the Capitol on that day. *Id.* He made a series of four Facebook posts about his attendance at the rally and the events that were unfolding within the Capitol. *Id.* He returned to Allentown that night. *Id.*

The next day, the District told him not to show up for work due to his presence in Washington, D.C., on January 6th. *Id.* at *2. The District believed that Plaintiff was involved with the civil unrest that unfolded on that day inside the Capitol Building, and the District sent out a

---

[1] For a substantial overview of the facts of this case, see the Court's recitation in its memorandum opinion adjudicating Defendants' Motion for Summary Judgment at *Moorehead v. Sch. Dist. of City of Allentown*, Civ. No. 5:22-cv-03959-JMG, 2024 WL 3361611, at *1-4 (E.D. Pa. July 9, 2024).

district-wide email that stated that it was "aware of a staff member who was involved in the electoral college protest that took place at the United States Capitol Building on January 6, 2021." *Id.* Following this email, there was public outrage from members of the community, and Plaintiff alleged that he was harassed and had even received death threats. *Id.* Plaintiff was suspended with pay pending an investigation. *See id.*

The investigation lasted roughly seven months, and the District eventually offered Plaintiff a new position within the Allentown School District. Plaintiff alleged that the District constructively terminated him, and brought this suit a month later. This case progressed through discovery, pre-trial motions, and ultimately trial commenced with jury selection on August 2, 2024. The presentation of evidence began on August 5, 2024. At the beginning of the trial the Defendants were the District, the Board of School Directors of the School District of the City of Allentown ("the Board"), Thomas Parker, Nancy Wilt, Lisa Conover, Phoebe Harris, Anthony Pidgeon, and Jennifer Ramos. By the time the jury got the case, the claims against Defendants Pidgeon, Ramos, and the Board were voluntarily dismissed by stipulation of the parties. *See* ECF No. 161.

The jury's verdict was announced on August 16, 2024. The jury found as follows: (1) Defendant Wilt, Conover, Harris, and the Defendant School District were found liable for violating Plaintiff's rights; (2) Defendant Parker was found not liable for violating Plaintiff's rights; (3) the jury awarded $125,000 in economic damages to Plaintiff, and found the Defendant School District was liable for 100 percent of these damages; (4) the jury awarded zero dollars in reputation harm damages and mental and emotional distress damages; (5) the jury awarded $6,000 in punitive damages against Defendant Conover; and (6) the jury awarded $500 in punitive damages against Defendant Wilt. *See* ECF No. 168. Plaintiff filed this Motion for New Trial (ECF No. 181) on September 19, 2024.

### III. STANDARD OF REVIEW

A motion for new trial is governed by Rule 59 of the Federal Rules of Civil Procedure: "The court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows: after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Because Plaintiff moves for a new trial on damages on three separate grounds, and each of these grounds has a separate legal standard, the Court will provide the relevant law as a part of its analysis of Plaintiff's arguments.

### IV. DISCUSSION & ANALYSIS

#### a. **Plaintiff Argues the Verdict was Inconsistent**

First, Plaintiff argues that the verdict is inconsistent. To succeed on this argument, Plaintiff faces a high burden. "[A] trial court is 'under a constitutional mandate to search for a view of the cause that makes the jury's answers consistent.'" *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 764 (3d Cir. 1990) (quoting *United States v. 0.78 Acres of Land, More or Less*, 81 F.R.D. 618, 621 (E.D. Pa. 1979)). The Court's role is "not to weigh the reasonableness" of the parties' views as to whether the verdict is consistent, *see id.* at 765, but rather is under a constitutional obligation to accept the jury's verdict "when there is *any view* of the case which reconciles the [jury's] answers." *Id.* at 764 (emphasis included).

Plaintiff argues that the jury's verdict was inconsistent because the jury found that Defendants Wilt, Conover, and Harris and the Defendant School District (1) were liable to Plaintiff for violating his rights and (2) caused him injury. However, the jury allocated 100% of compensatory damages to the Defendant School District. In other words, no compensatory damages were assigned to the individual Defendants. Thus, the core of the inconsistency, according

to Plaintiff, is the assignment of liability without corresponding compensatory damages against the individual Defendants.

The Court rejects Plaintiff's argument because a reconcilable view of the jury's verdict exists.[2] Plaintiff was employed by the Defendant School District. The individual Defendants could take no adverse employment action against Defendant on their own—they were individual members of the Board, and the Board had to act as a body to function. Thus, it is consistent that the economic damages award would be assessed against Plaintiff's employer which had the power to take the adverse employment action. However, a jury could determine that individual members of the Board could be held responsible for their individual conduct by assessing punitive damages against them. Because a consistent view of the verdict exists, Plaintiff's Motion for a New Trial because of inconsistency is denied.

### b. Plaintiff Argues the Damages Award was Against the Weight of the Evidence

Next, Plaintiff argues that the Court should order a new trial on damages because the jury's damages award was against the weight of the evidence. This type of argument is disfavored, and again Plaintiff's argument faces an uphill battle. *See Motter v. Everest & Jennings, Inc.*, 883 F.2d 1223, 1230 (3d Cir. 1989) ("In reviewing the propriety of a jury verdict, our obligation is to uphold the jury's award if there exists a reasonable basis to do so.")

"[N]ew trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Williamson v. Consolidated Rail*

---

[2] The Court acknowledges Defendants' argument that Plaintiff waived this argument because he "did not challenge the verdict's inconsistency before the jury was discharged." *Del. & Hudson Ry. Co., Inc. v. Knoedler Mfrs., Inc.*, 805 F. App'x 149, 153-54 (3d Cir. 2020) (citing *Frank C. Pollara Grp., LLC v. Ocean View Inv. Holding, LLC*, 784 F.3d 177, 191 (3d Cir. 2015)). The Court will not address this waiver argument because it rejects Plaintiff's inconsistency argument on its merits.

*Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991); *see also Motter*, 883 F.2d at 1230 ("For the court to disturb a jury verdict, 'the damages assessed by the jury must be so unreasonable as to offend the conscience of the Court.'" (quoting *Murray v. Fairbanks Morse*, 610 F.2d 149, 152 (3d Cir. 1979))). "[T]he court *may not* vacate or reduce the award merely because it would have granted a lesser amount of damages," or as would be applicable here, even if it might have given Plaintiff more. *Motter*, 883 F.2d at 1230 (emphasis included).

Plaintiff argues that the jury's award of economic damages, without any damages awarded for Plaintiff's claimed reputational or emotional harm, is so against the weight of the evidence that it warrants a new trial on damages. Also, Plaintiff argues that the economic damages award, itself, is so low that is shocks the conscience. The Court disagrees—the jury's verdict neither shocks the conscience nor amounts to a miscarriage of justice. *See New Market Inv. Corp. v. Fireman's Fund Ins. Co.*, 774 F. Supp. 909, 917 (E.D. Pa. 1991) ("It is not this Court's prerogative to substitute its own judgment as to the amount of damages for that of the jury.").

At trial, Plaintiff put forth evidence of alleged reputational damages and emotional harm. He presented the evidence of Robert Fisher who testified as to Plaintiff's claimed reputational harm. *See* ECF No. 219 at 194:20-195:8 (estimating that a program to repair Plaintiff's reputation would cost $ "200 to $225,000."). Plaintiff also cites evidence he put forth from a security expert and a psychologist that he argues is further evidence that the jury was wrong in failing to award compensatory damages in these categories. However, Defendants argue that they rebutted the extent of Plaintiff's reputational damages. Defendants argue that Plaintiff's reputation among the Allentown community was already negative, due to Plaintiff's social media posts from January 6th in Washington, prior to the Defendants taking any retaliatory actions or before they had put out any statement. *See*, *e.g.*, ECF No. 220 at 18:16-28:8 (listing messages school districts received

6

regarding Mr. Moorehead *prior* to any statement issued by Defendants). The jury's determination that Plaintiff was not entitled to reputational damages was within the bounds of reasonability. *See New Market Inv. Corp.*, 774 F. Supp. at 917 ("The jury made their findings on the basis of their judgment as to the credibility and weight they felt the evidence deserved. Such determinations are well within the province of the jury and provide no basis for a new trial.").

Further, as to Plaintiff's claimed emotional damages, Plaintiff points to his own testimony and the testimony of a psychiatrist, Dr. Kenneth Weiss. Dr. Weiss testified at trial that he was retained to perform a psychiatric assessment of Plaintiff. *See* ECF No. 218 at 131:7-12. Dr. Weiss testified that Plaintiff suffered "changes, negative changes in his thinking, feeling and behavior" that resulted from Defendants' actions, and that the ordeal caused Plaintiff "significant distress." *See id.* at 151:17-20. However, Dr. Weiss also testified that Plaintiff did not have a diagnosable medical condition. *See id.* at 163:21-25. Plaintiff argues that given this testimony the jury should have awarded damages for emotional or mental distress. However, the jury's refusal to credit this line of testimony does not provide a sufficient basis for a new trial. *See Berguido v. Eastern Air Lines, Inc.*, 35 F.R.D. 200, 203 (E.D. Pa. 1964) ("The credibility of witnesses is for the jury to decide, and it is free to accept or reject all or any part of the testimony produced, even if the testimony is uncontradicted." (internal citations omitted)). The Court will not usurp the jury's determination that damages for emotional injury should not be awarded in this case.

Finally, Plaintiff argues that he was entitled to more economic damages than the $125,000 the jury awarded him. The Court finds that a reasonable basis for the jury's economic damages award exists. The sum equates to just about a year's worth of Plaintiff's base salary, inclusive of benefits. *See* ECF No. 155 at 94:24-25; 103:12-15. The economic damages award is not legally unreasonable, especially considering the evidence presented to the jury that Plaintiff did not even

7

attempt to mitigate his damages. *See* ECF No. 155 at 145:7-12 (Plaintiff did not apply to any other school district to find teaching work); *id.* at 145:13-16 (Plaintiff did not speak to anyone regarding potential teaching work); *id.* at 145:17-22 (Plaintiff did not work with any career counselors to find teaching work). These citations to the record are not intended to encompass the totality of the evidence that tends to support the jury's damages award, nor is the Court privy to what evidence the jury actually considered in its deliberations. However, as the cited testimony demonstrates, there is sufficient evidence to conclude that the jury had a reasonable basis for its verdict.

This jury awarded Plaintiff $125,000—approximately the value of one year of Plaintiff's base salary, inclusive of the value of benefits—for his economic damages. Perhaps another jury would have awarded him more or would have credited the evidence put forth as to the other claimed categories of damages. Perhaps yet another jury would have returned a defense verdict. Either way, this is not the standard. The jury's compensatory damages award of $125,000 does not shock this Court's conscience, nor does the Court consider the verdict to be so outrageously low that it constitutes a miscarriage of justice. Accordingly, the Court denies Plaintiff's Motion for New Trial on Damages on the grounds that the verdict is against the weight of the evidence.

    **c. Plaintiff Argues that Undisclosed Juror Bias Requires the Court to Grant his Motion**

        **i. Facts**

Finally, Plaintiff argues that he is entitled to a new trial because Juror No. 8 (prospective Juror No. 24) failed to disclose a relevant bias during *voir dire*, and because of this non-disclosure he is entitled to a new trial.[3] Plaintiff alleges that Juror No. 8 harbored and concealed an animus

---

[3] Plaintiff argues that Juror No. 6's social media activity also warrants a new trial. He also submitted to the Court posts from her Facebook account that were critical of President Trump and his supporters. However, Juror No. 6 was dismissed from the jury before deliberations began. *See* ECF No. 212 at 157:9-25. The Court will not overturn this verdict based on the alleged undisclosed

8

for President Donald Trump, his supporters, and participants in the events of January 6, 2021, events at the United States Capitol. *See* ECF No. 181 at 8. Plaintiff alleges that after the trial was complete, he uncovered public social media posts on what purports to be Juror No. 8's Facebook page. Plaintiff submitted to the Court a copy—consisting of about fifty pages—of Juror No. 8's profile which contains posts critical of President Trump, his supporters and Republicans generally, and participants in the events of January 6, 2021, at the United States Capitol Building. *See* ECF No. 181-3, Exhibit 3. The Court will not recount each post on the account—many of which are wholly irrelevant personal posts about family—but it is necessary to provide some color. On August 26, 2024, Juror No. 8 shared a post from the account "Hilaryious Trump Memes" that read: "Jan 6 was one of the worst days in our nation's history. And now Trump is throwing a J6 awards event. When Treason becomes celebrated…… you know you are on the wrong side." *Id.*, Ex. 3 at 9. The next day he shared another from the same account:

> WHENEVER I SEE THE JAN. 6TH VIDEO, I FEEL SO MUCH RAW CONTEMPT FOR THE FACT THAT THE RINGLEADER OF THE INSURRECTION IS WITHIN A FEW POINTS OF BECOMING PRESIDENT AGAIN WHEN SHOULD'VE BEEN FORCED TO FLEE THE COUNTRY UNDER AN ASSUMED NAME THAT VERY DAY. DISGUSTINGLY UNPATRIOTIC.

*See id.*, Ex. 3 at 8-9.

    At *voir dire* the *venire* was given a jointly-approved synopsis of the case:

> Ladies and gentlemen, the plaintiff in this case, Jason Moorehead, was a schoolteacher in the Allentown School District. He contends that on January 6, 2021, he traveled to Washington, D.C. He watched then-President Trump give a

---

political views of a juror who did not even participate in deliberations. It strains credulity to suggest that the other jurors, who did not deliberate with Juror No. 6, were somehow tainted by her views just because they were in her presence for most of the two-week trial. Put simply, the verdict in this case is not Juror No. 6's verdict. The Court finds it unnecessary to proceed with any analysis beyond these points as it pertains to this challenge regarding Juror No. 6's social media activity, however, if the Court were to continue it would track the analysis of Juror 8's activity *infra*, and any further analysis would not disturb the Court's ultimate denial of this Motion.

> speech, and then he returned home to Allentown without ever attending the protests at the Capitol building that turned violent. He alleges that shortly after his return to Allentown, the defendants . . . retaliated against him for this exercise of his First Amendment rights to engage in free speech, assembly, and political affiliation by, among things, publicly and falsely accusing him of participating in the violence at the Capitol building, provoking public condemnation of him, suspending him from his job, and ultimately firing him.

15:20-16:9. The *venire* was further informed that "Plaintiff contends that the defendants' investigation confirmed he was not at the Capitol building." *Id.* at 16:10-11.

After giving this brief synopsis, the *venire* was asked several questions about whether they could be fair and impartial. *See id.* at 18:23-25 ("Is there anything about the case which would interfere with your ability to serve as a fair and impartial juror?"); *id.* at 21:25-22:4 ("I will instruct you that you must not let any bias, sympathy, or prejudice that you may feel towards one side or the other influence your decision in any way. Would you have any difficulty following this legal instruction?"). Juror No. 8, then prospective Juror No. 24, did not answer affirmatively to either of these questions. He did, however, answer affirmatively to the questions "Have you or a close family member been an employee of a public school district or a member of a school board?" *Id.* at 23:6-8. He later stated that nothing about his experience working in a school would impact his ability to be fair and unbiased. *Id.* at 166:23-25.

### ii. Legal Standard

This genre of claim is governed by the standard set forth in the Supreme Court case of *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 549 (1984). That case was a personal injury action where a plaintiff sustained damages "when his feet came in contact with the blades of a riding lawn mower." 464 U.S. at 549. He sued the manufacturer of the lawnmower. *Id.* Appellate issues arose about a juror's alleged failure to respond to a *voir dire* question. During *voir dire* the plaintiff's attorney asked perspective jurors "[h]ow many of you have yourself or any

10

members of your immediate family sustained any severe injury, not necessarily as severe as [the plaintiff], but sustained any injuries whether it was an accident at home, or on the farm or at work that resulted in any disability or prolonged pain and suffering, that is you or any members of your immediate family." *Id.* at 550. One juror—identified by the Supreme Court as Juror Payton—did not respond to this question during *voir dire*. *Id.* The jury found in favor of lawnmower manufacturer. *Id.*

After the trial, the plaintiff's attorney filed a motion with the court claiming that they became aware that Juror Payton's son "may have been injured at one time," and that this information was not disclosed during *voir dire*. *Id.* It was alleged that Juror Payton's son injured his leg in the explosion of a truck tire. *See id.* at 551. The Supreme Court held that "to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *Id.* at 556. The Court rejected the approach "wip[ing] the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on *voir dire* examination." *Id.* at 555.

Courts applying *McDonough* have distilled the inquiry into a two-part test. *See Szustowicz v. City of Phila.*, Civ. A. No. 08-cv-04745, 2016 WL 5460933, at *14. First, the moving party must show that "the juror intentionally and deliberately withheld material information; a mistaken answer is not sufficient to trigger a new trial." *Id*; *see also Perez v. Manhattan Jeep Eagle*, No. 92 CIV. 9521, 1997 WL 403458, at *5 (S.D.N.Y. July 17, 1997) ("Only a dishonest answer satisfies the first prong of *McDonough*."). Second, the moving party must "show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip.*, 464 U.S.

11

at 556; *see also Coney v. NPR, Inc.*, Civ. A. No. 03-1324, 2007 WL 2571452, at *3 (E.D. Pa. Aug. 31, 2007) (noting that "the Third Circuit has been consistent in strictly applying the two-part test" from *McDonough* when confronting issues relating to post-trial issues involving a juror's response to a *voir dire* question).

### iii.  Factually Similar Cases

The Court also identified two, persuasive cases from other districts that are factually similar. First, in *Lewis v. Am. Sugar Refining, Inc.*, the Defendants challenged the verdict based on an alleged, undisclosed "anti-corporate bias" of one of the jurors. 325 F. Supp. 3d 321, 333 (S.D.N.Y. 2018). The defendants argued that they were entitled to a new trial because they discovered, after the trial, that a juror's social media posts that were critical of "the role and power of corporations in the United States." *Id.* They argued these posts and statements demonstrated that the juror could not be a fair, impartial juror. *Id.*  During *voir dire*, the juror disclosed that he was a union representative, and he also answered that he could "treat corporations with the same level of fairness as individuals." *Id.* at 334.

Judge Kelly, who presided in *Lewis*, determined that the social media comments did not mean that the juror was untruthful as to "his ability to be fair towards corporate parties." *See id.* at 334-35 ("The court does not find this juror's social media posts to evidence that he lied during *voir dire*."). Ultimately, the *Lewis* court trusted that the juror was able to follow his oath and that he answered truthfully and did not credit the alleged evidence to the contrary. *See id.* Judge Kelly wrote: "The ability to be objective and fair does not require the absence of personal views outside the case . . . . Jurors may and can have personal views on certain issues, but in evaluating the potential for juror bias and impartiality during voir dire, *the relevant inquiry is whether a juror can*

12

*set those views aside and assess the case only on the evidence presented.*" *Lewis*, 325 F. Supp. 3d at 335 (emphasis added).

Next, the Court turns to *Tourangeau v. Nappi Distributors*, No. 2:20-cv-00012-JAW, 2023 WL 4597031, at *33 (D. Me. July 18, 2023). This was also an employment case, but there the plaintiff brought claims "alleging unequal pay practices and related retaliation, sex and pregnancy discrimination, and sexual harassment." *Id.* at *1. The allegedly problematic juror in *Tourangeau* was Juror No. 161. *See id.* at *27. The plaintiff argued, in part, that Juror No. 161's false responses during *voir dire* entitled her to a new trial. *See id.* On the juror questionnaire the court asked the following two questions:

> The law protects against discrimination of individuals with certain medical conditions, including a woman's pregnancy. Do you have any strong feelings or philosophic beliefs about such laws that might interfere with your ability to be fair and impartial in a case in which the laws might apply?
>
> Do you have any strong personal feelings or philosophical beliefs about an individual's ability to bring a lawsuit to recover money damages that might interfere with your ability to be a neutral impartial decision-maker in a case in which a person is seeking money damages.

*Id.* at 28. Juror No. 161 indicated that he had no such feelings. *Id.* at *27.

The plaintiff argued to the court, during the course of trial, that Juror No. 161 had been dishonest on his questionnaire, and her purported evidence was Juror No. 161's belonging to a group on Facebook. *See id.* at *28. The group "contain[ed] a statement about 'how we can come together for change and resistance against the liberal/democratic/socialist agenda." *Id.* The plaintiff argued that the page "appear[ed] distinctly opposed to the rights of women and all other minority groups." *Id.* The court denied the motion during trial, as the court did not see the failure to respond to these answers affirmatively as indicative as to Juror No. 161's "own ability to be fair and

13

impartial," and rejected the argument that belonging to this Facebook page meant that Juror No. 161 could not be fair and impartial in his jury service. *See id.* at *29. The judge concluded:

> [P]arties are not entitled to jurors—whether progressive or conservative—who belong to a particular political party or who share their world view. People come to jury service from all walks of life, with different levels of education, a variety of job skills, and a broad range of life experiences. No one is a blank slate. Jury duty requires that jurors be willing to impartially evaluate the evidence, find the facts, and apply the law as instructed whether they agree with it or not. [Plaintiff] has made no showing that Juror 161's personal or political views made him less than a fair and impartial juror.

*Id.* at *33.

### iv. Analysis

The Court is guided by the Supreme Court's standard in *McDonough* in determining that Plaintiff is not entitled to a new trial because of Juror No. 8's alleged, undisclosed political views. In examining the questions that the Court posed to the *venire*, which included Juror No. 8, the Court did not ask questions about whether they had *any* views regarding the events of January 6th, nor whether they had *any* views, positive or negative, regarding Republicans, President Trump, or his supporters. Had that been the case, seating a jury might have been impossible. The Court, instead, focused on whether the potential jurors could be "fair and impartial" despite any prior views that they may hold.

First, the Court is not persuaded that Juror No. 8 "intentionally and deliberately withheld material information." The questions posed to Juror No. 8, and the entire *venire*, was not whether he had political views that could be considered adverse to either of the parties, but rather whether he had any views that he was unable to put aside in deciding this case. There is nothing in this record that indicates that he lied under oath when he stated that he could be fair and impartial or that he was able to put aside his political views in adjudicating this case. Most obviously, the verdict itself cuts against Plaintiff's argument. A unanimous jury—a jury that included Juror No.

8—found for Plaintiff against all but one of the Defendants. Plaintiff does not seek to disturb the jury's determination of liability.[4] A unanimous jury—a jury that included Juror No. 8—awarded Plaintiff over of a hundred thousand dollars in compensatory damages. This verdict demonstrates the seriousness with which the jury approached their civic duty.

The mere fact that a juror holds a certain view or belief, without more, is not enough to find that a new trial is warranted, especially given the fact that his answers under oath during *voir dire* indicated that he held no view that he felt would prevent him from adjudicating this case fairly and impartially. *See Lewis*, 325 F. Supp. at 335 ("The ability to be objective and fair does not require the absence of personal views outside of the case . . . the relevant inquiry is whether a juror can set those views aside to assess the case based on only the evidence presented.").

Second, Plaintiff has not established that even if Juror No. 8 had disclosed his political views that it would have been a valid basis for a challenge for cause.[5] During the *voir dire* process, the Court questioned potential jurors who had indicated that, after hearing the brief summary of the case, they had a bias or prejudice that could prevent them from being fair or impartial in

---

[4] The Court notes that Plaintiff's Motion for New Trial on Damages seeks to leave the jury's finding of liability intact. This is because Plaintiff claims that "[l]iability in this case was a foregone conclusion." ECF No. 181 at 1. But this is incorrect. The jury carefully parsed liability in this case and even determined that Defendant Thomas Parker was not liable to Plaintiff. *See* ECF No. 168. Also, the parties voluntarily dismissed other individual defendants during trial. *See* ECF No. 161.

[5] As to Plaintiff's contention that he "would [ ] have used a peremptory strike on [Juror No. 8] had these biases been disclosed., *see* ECF No. 200 at 4, that is not the standard. *See McDonough Power Equip.*, 464 U.S. at 556 ("We hold that to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause."). While the Supreme Court acknowledged that "hints of bias not sufficient to warrant challenge for cause may assist parties in exercising their peremptory challenges," *id.* at 554, the Court ultimately did not hold that a litigant could receive a new trial on this basis. *See id.* at 556; *see also United States v. Browne*, 525 F. App'x 213, 215-16 (3d Cir. 2013) ("[I]f the information about Juror [ ] came out after trial, [litigants] would not be entitled to relief based on an argument they would have used a peremptory strike on her had they known." (citing *McDonough Power Equip.*, 464 U.S. at 556)).

15

adjudicating the case. But the Court did not automatically dismiss these jurors for cause. Instead, the Court probed further as to whether these jurors could set aside these beliefs or biases and fairly decide the case. *See, e.g.*, ECF No. 179 at 51:23-65:17 (colloquy with Potential Juror No. 5). Had Juror No. 8 disclosed that he had a particular view of the events of January 6,[6] this without more, would not have led the Court to his dismissal for cause. Instead, he would have been questioned further as to whether he could be fair and impartial despite these feelings. If he indicated he could, as he did during the *voir dire* questioning that took place, it would not have provided a "valid basis for a challenge for cause." *McDonough Power Equip.*, 464 U.S. at 556; *see also United States v. Polan*, 970 F.2d 1280, 1284 (3d Cir. 1992) ("A juror is impartial if he or she can lay aside any previously formed 'impression or opinion as to the merits of the case' and can 'render a verdict based on the evidence presented in court.'" (quoting *Irvin v. Dowd*, 366 U.S. 717, 723 (1961))).

Plaintiff provided the Court with several Facebook posts, purported to be those of Juror No. 8. Those posts suggest that Juror No. 8 holds a certain political view. That view may be different from those of Plaintiff. However, these posts do not lead the Court to conclude that Juror No. 8 broke his oath, lied to the court, and allowed his beliefs to interfere with his duties as a juror. *See Lewis*, 325 F. Supp. 3d at 334-35 (rejecting Defendants' argument that the court should infer from a juror's social media activity "that he lied to the court regarding his ability to be fair."). Juror No. 8 indicated under oath that he held no view, belief, or bias that would affect his ability to be fair and impartial in adjudicating Plaintiff's claims. The Court finds no basis to conclude otherwise.

---

[6] Moreover, the Court gives some credit to a point raised in Defendants' opposition brief: Plaintiff was not a part of the mob that engaged in civil unrest at the Capitol—this was a fact that was not even in dispute at trial—and, thus, he was not in the class of individuals with whom Juror No. 8's posts were about. Plaintiff himself testified at trial that he viewed the events that occurred at the Capitol Building negatively. *See* ECF No. 154 at 227:22-24 ("I think the events that happened in the aftermath of the Capitol building was horrific and put a stain on this country.").

## V.     CONCLUSION

In closing, the Court finds it appropriate and necessary to echo the concerns raised by Judge Kelly in the *Lewis* case: "There are serious policy concerns regarding the appropriateness of counsel delving into jurors' social media accounts, after the conclusion of a trial, to potentially uncover juror statements made out of court and unrelated to the proceedings, and use any discovered statements as evidence of purported juror bias or inability to be fair." *Lewis*, 325 F. Supp. 3d at 335 n.3. The Court is greatly concerned that scouring a juror's social media presence, even after the verdict has already been rendered, "may decrease willingness to serve on juries or dampen private citizens' ability to engage in civil discourse." *Id.*

Jurors are the heart of America's justice system. *See Miller-El v. Dretke*, 545 U.S. 231, 272-73 (2005) (Breyer, J., concurring) ("The institution of the jury raises the people to the bench of judicial authority and invests them with the direction of society." (quoting A. de Tocqueville, Democracy in America 287 (H. Reeve transl., rev. ed. 1900))). We ask jurors to put their lives on pause, quite often for weeks at a time, while they perform their duty for little in return except, we hope, a sense of patriotism and civic virtue.

Jurors are not born walking into the courthouse on the morning of jury selection. They are not "empty vessels," nor would we want them to be. Each juror enters his or her service with different views, beliefs, and experiences that strengthens the body of the jury as a whole. Likewise, a litigant is not entitled to a jury composed of Republicans, nor a jury composed of Democrats, Independents or Libertarians. *See, e.g.*, *United States v. Scarfo*, 850 F.2d 1015, 1021 (3d Cir. 1988) ("The jury is designed to represent a broad, cross-section of the community, selected from among the [litigant's] peers."). The key question with any *voir dire* is whether jurors can put aside any

belief or view they may hold outside the jury box and do justice according to law. The Court has no basis to conclude, and accordingly does not find, that anything other than that happened here.

Plaintiff had his day in court, received a fair trial, and, in fact, was victorious. For the foregoing reasons, Plaintiff's Motion for a New Trial on Damages is **DENIED**. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge