UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Jason Moorehead<br>*Plaintiff*<br><br>V.<br><br>School District of the City of Allentown et al.<br><br>*Defendants* | Civil Action No.:<br>5:22-cv-03959-JMG |

PLAINTIFF JASON MOOREHEAD'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR COSTS AND FEES

**I.     Declaration of David Heim, Esquire on Costs and Fees**

Plaintiff submits the declaration of David Heim, Esquire an attorney who practices civil rights litigation in Pennsylvania. Attorney Heim confirms that reasonable rates for civil rights litigation work substantially exceed what Defendants want this Court to use for Plaintiff's counsel's legal fees. He states that from his experience a reasonable rate for Mr. Fluehr is $629 per hour and for Mr. Malofiy $978 per hour. (Francis Alexander LLC, of course, believes that listed rate in the CFA is reasonable and that quality multipliers should be used).

Plaintiff himself also submits his own declaration stating that he did not find a suitable Allentown attorney—especially given that an attorney assigned to him by PSEA backed out in the beginning stages of this matter—and was obliged to look for new counsel in the neighboring Philadelphia region with experience regarding high-profile First Amendment education cases.[1]

---

[1] Defendants' response initially complained that counsel's hourly rate was not evidenced by the Fee Agreement. Plaintiff therefore provided the pertinent portion of the Fee Agreement showing that the claimed rate was in fact identified. Defendants' sur-reply now asserts for the first time that they want to see the fee percentage as well. The fee percentage charged by counsel is entirely irrelevant, and that Defendants' case law citation on the fifth bullet point of their Sur-Reply to Pardovani is inapposite and deals with a discharged attorney seeking a "charging lien." The conclusion of that opinion indicates that the attorney in fact received a percentage of the jury

**II.     No Reduction is Permitted for Degree of Success under <u>Hensley</u>**

Defendants' sur-reply attempts to analyze "degree of success," walking through the claims initially lodged in the complaint. Doc. No. 207-2, at p.4-5. Defendants already argued this in their initial response, Def. Response, at p.14-15, 23, but now try to discuss the Fourth and Fifth Amendment claims for the first time.

The arguments advanced by Defendants are categorically incorrect on every level. **First**, all legal work done for this case by Plaintiff's counsel was *independently needed* to address the primary cause of action, the First Amendment claim. Defendants are posturing as if discrete litigation tasks were undertaken to address other causes of action, which is simply not the case. The case was, at its core, about the illegal suspension and pretextual termination of Jason Moorehead. It is immaterial that alternative legal claims were brought against multiple Defendants to address Defendants' conduct from other angles *because the work done was independently necessary to vindicate his First Amendment claim.*

**Second**, the Supreme Court has specifically rejected Defendants' attempt to limit fees in this scenario where Plaintiff succeeded on the primary claim. In <u>Hensley</u>, 461 US 424 (1983), the Supreme Court stated: "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith *may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee*." <u>Hensley</u>, 461 US at 435 (emphasis added) (citation omitted).

<u>Hensley</u> also noted: "Nor is it necessarily significant that a prevailing plaintiff did not

---

verdict and the awarded costs and fees, but for a slightly reduced amount. Defendants also never made any prior argument about a fee percentage, and only asserted it belatedly because the CFA contradicted their claim.

receive all the relief requested. For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." Id. at fn11.

The holding of Hensley confirms this:

> Where the plaintiff has ***failed to prevail on a claim that is distinct in all respects from his successful claims***, ***the hours spent on the unsuccessful claim should be excluded*** in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.

Id. at 440 (emphasis added).

The point being made is that if a plaintiff prevails on an issue central to the lawsuit—and it has the same factual nexus upon which all the claims were based—the Defendants cannot attempt to obtain a reduction in the fees expended, especially when they unreasonably caused these fees to be incurred. They can only obtain a reduction when the unsuccessful claims have no relation to the successful claim.

The factual nexus here was the suspension, and then pretextual termination, of Mr. Moorehead which Defendants needlessly stretched from January 2021 to July 2022. The only thing at issue in this case was Mr. Moorehead's activity on January 6; there were no other incidents (and he had a 17-year unblemished record). Here, all legal claims were brought to address the same course of conduct; they were all intimately related. The cost and burden of this prolonged litigation rests squarely on Defendants' shoulders.

**Third**, the alleged due process violations, and the Fourth and Fifth Amendment claims, were an intrinsic part of Defendants' overall course of First Amendment retaliation starting with the initial suspension, then the attempts to manufacture pretext, and then ultimately the pretextual termination. Plaintiff's initial suspension was alleged to be both a First Amendment

claim *and* a Due Process claim, as was Plaintiff's termination. Regarding the Fourth and Fifth Amendment claims, the Court will remember that Plaintiff sedulously alleged that while he was kept illegally suspended Defendants demanded to search his devices on a fishing expedition seeking pretextual dirt[2]—namely which political websites he might have visited—which Plaintiff properly used at trial as evidence of First Amendment animus and retaliation (recall that Parker admitted on the stand that the search of the devices was politically motivated, as did a Freund email[3]). Plaintiff is permitted to allege claims in the alternative to cover the same conduct; no reduction of hours is permitted in this circumstance where he succeeded on his primary claim for the same conduct.

### III.   Defendants Misconstrue Settlement and Its Relevance to this Motion

Defendants contend that settlement offers they made are relevant, citing Lohman v. Duryea Borough, 574 F.3d 163, 169 (3d Cir. 2009).[4] Defendants' focus on settlement is misplaced.

**First**, Defendants refused to settle regarding Plaintiff's central issue: an apology and correction. They focus only on the monetary aspect and ignore that the primary demand by Plaintiff was that Defendants ***correct the record and issue a statement acknowledging that Plaintiff was not at the Capitol Building***. The Court was also presented with voluminous evidence that board member defendant Lisa Conover whipped the community up into spreading vile and hateful lies about Plaintiff which are now permanently in the public record. Punitive

---

[2] "By requiring Mr. Moorehead to turn over his devices, the District is further abusing and violating his constitutional rights on a fishing expedition to manufacture a pretextual basis to dismiss him." Doc. No. 70-3, at p.520.

[3] Stating that the search of the devices was to determine if he was visiting "extremist websites." Doc. No. 70-3, at p.529.

[4] Defendants also cite Smith v. Borough of Dunmore, but the plaintiff in that case was awarded only nominal damages and lost on five out of six claims which were entirely "distinct in all respects" from remaining claim he (barely) succeeded on.

damages were awarded against Conover for her conduct. A corrective statement was crucial for Mr. Moorehead—which the verdict and award of punitive damages gave Moorehead—but Defendants always refused for no good reason.

Why? At all points an apology or corrective statement *was a non-starter for Defendants for ideological reasons*—despite the fact that no one seriously disputed that Mr. Moorehead was always 1 mile away from the Capitol Building.[5] It was Defendants' political bias and ideology which caused the violation of his First Amendment rights in the first place. The Defendants who lied about him, attacked him, and fired him unconstitutionally were content to use insurance and taxpayer money to fund a settlement, but the thought of them actually having to sign off on an apology to a conservative teacher was a bridge too far.

This animosity was the same reason Plaintiff was forced to unreasonably endure a 1.5 year pretextual disciplinary process, and then a years-long lawsuit where Defendants unreasonably did not concede liability. In short, political ideologues targeted a longtime teacher because he had opposing viewpoints, refused to apologize or correct the record, and now want their refusal to apologize construed in their favor.

**Second**, no offer was made until time of trial, and Defendants' referenced settlement offer was made in the middle of trial. In other words, even if the Court was to take the offer into account—which it should not—it could only apply to fees incurred *after* the offer was made (which affects a limited number of hours). Defendants are acting like they made this offer at the beginning of the case and want all hours expended reduced.

**Third**, Defendants were engaging in gamesmanship with the amount of insurance available, and to this day have refused to provide certain policies which they promised to provide

---

[5] The Supreme Court has noted that a non-monetary benefit can be just as important as a monetary recovery. Hensley, 461 US at fn11.

to Plaintiff. In other words, Defendants were making offers and then expecting Plaintiff to respond without having all the information they promised to provide. Plaintiff Reply, at p.6-7.

IV.    **Paralegal Fees**

Defendants' arguments regarding paralegal fees are baseless. Mr. Malofiy was disclosed as a paralegal to counsel and the Court. Defendants' response speciously claimed, without citation to any authority, that Mr. Malofiy working as a paralegal was inappropriate. Def. Response, at p.8-10, 12. Plaintiff pointed out in his reply that an attorney not currently admitted in a certain court is permitted by the Rules to work on cases as a paralegal. Defendants' sur-reply now argues for the first time that Mr. Malofiy is "prohibited" and "ineligible" to be awarded section 1988 fees, but cites no authority on point.[6] Doc. No. 207-2, at p.3-4. Defendants also newly claim that Mr. Malofiy is not capable of being a paralegal on this case, because he is an attorney in good standing in State and other Federal Courts. Id. Again, no authority is provided for this (erroneous) new argument. What is more, Defendants misleadingly cite to Pa. RDE 217 claiming that Mr. Malofiy could not work as a paralegal on this case, ignoring Pa. RDE 217(j) (which their response did quote) which specifically authorizes paralegal activities by Mr. Malofiy.

V.    **Defendants' Arguments about Ripeness are False**

Defendants also advance the new argument that Plaintiff's First Amendment claims were ripe prior to the Board Termination Hearings and nothing regarding the Board Termination Hearings are appropriately compensated because the hearings were referenced in the post-

---

[6] The new case cited by Defendants, Harris v. Page, does not apply here. In that case a disbarred attorney requested fees not as a paralegal, but as an "independent contractor and/or consultant" who was not being paid by the plaintiff's counsel's law firm (he was looking for payment from the Court). The Harris court pointed out that this arrangement was not compensable, but in fact affirmed that, as here, paralegal hours "may be considered billable when the work product of an attorney relies on those services provided by clerks and paralegals."

termination due process claim. Doc. No. 207-2, at p.5. This new argument is frivolous. Plaintiff successfully proved at trial that he was unconstitutionally ***terminated by the Board after the Board Termination Hearings; he was even awarded economic damages***. It is peculiar for Defendants to contend that the employment termination hearings did not form a major basis of his successful First Amendment retaliation termination claim, when they were one of the primary bases. The reality is that after the initial First Amendment violations in January 2021, Defendants continued to commit violation after violation of Plaintiff's First Amendment rights, up until his termination in July 2022.

Moreover, if Plaintiff had not completed the board hearing process, Defendants would have claimed he waived his claims and also damages for economic harm.

## VI. Billing Not Vague

Defendants' section claiming that the billing sheets are vague is cumulative of their prior arguments in their response. Doc. No. 207-2, at p.7-8. Defendants' response lumped weeks and months of itemized line items together and then conclusorily claimed the total number of hours was unreasonable with no explanation. This section of the sur-reply again claims with virtually no specificity that the listed items are too vague.

The only example analyzed is an example Defendants' response previously (and cumulatively) analyzed. It falsely claims that counsel spent too much time preparing the initial demand letter. Plaintiff's counsel spent the entire week before taking the case extensively researching the law, gathering facts, strategizing, meeting with the client, researching the District and personnel (of which there were about 20 individuals to focus on, including the board members, administrative personnel, and attorneys), to ultimately draft the relevant letter. Plaintiff Reply Brief. at p.12.

## VII. Defendants' Sur-Reply Falsely Characterizes Plaintiff's Reply

Defendants' sur-reply erroneously states that Plaintiff's reply "reduces his fee demand from $3.2 million to $1.8 million." Doc. No. 207-2, at p.3. This is a deliberate mischaracterization of Plaintiff's reply brief. The reply made it clear that ***hypothetically*** implementing cuts requested by Defendants still results in a costs and fees award well in excess of the artificially low, puny number suggested by Defendants. Defendants further state that Plaintiff now "admit that it [the petition] was inflated by at least $1.4 million." This is ***not*** what the reply did. Defendants are of course permitted to disagree with Plaintiff's positions, but not mischaracterize them. Defendants, in the fifth bullet point of the sur-reply, also cite to Young[7] and Clemens[8] without pincites to support this argument. Those cases are inapposite with the facts of this case (which is why no pincites were included).

## VIII. Conclusion

Plaintiff Jason Moorehead respectfully requests that this Court grant his motion for costs and fees. A cost and fee award is not only an important factor which encourages attorneys to take difficult civil rights cases for the public good, but it is especially warranted here where the Defendants' conduct in refusing to correct course, manufacturing pretext, and then unreasonably contesting liability for years manifestly increased the time, effort, and money needed to vindicate

---

[7] Young concerned a lawyer who had been admonished through the case for "repeated outrageous conduct," including conduct which required vacating a prior jury verdict. She then sought fees for litigation necessitated "by her own vexatious conduct," and included unethical and fraudulent entries. She also declined an invitation to resubmit the fee petition. Given this manifest, years-long course of misconduct, her inherently defective petition was disallowed. Young has no resemblance to this case. In fact, it was manifestly unreasonable here for Defendants to attempt to manufacture pretext to terminate Moorehead over 1.5 years, and then unreasonably contest liability causing enormous extra fees to be incurred.

[8] In Clemens, the Court noted "the trial consisted of only four days of substantive testimony, and involved a total of only five witnesses for both sides." Yet the plaintiff billed for four attorneys and claimed 562 hours of trial preparation (70 days). In addition, the plaintiff's attorney was repeatedly admonished for being unprepared during trial. Again, like Young, there is no resemblance to this case.

Mr. Moorehead's rights. School Districts and School Boards educate our kids and are supposed to lead by example; the Defendants in this case set a very poor example both by misleading the school community about Mr. Moorehead in a horrible manner, and then refusing to correct a wrong they all knew the Defendants had committed.

*Respectfully submitted,*
FRANCIS ALEXANDER, LLC
*/s/ AJ Fluehr*
Alfred Joseph (AJ) Fluehr, Esquire
Attorney ID No.: 316503
31 S. Chester Road
Swarthmore, PA 19081
T:  (215) 341-1063
F:  (215) 500-1005
*Law Firm / Lawyers for Plaintiff*
*/d/ April 29, 2025*

# Certificate of Service

I hereby state that a true and correct copy of the foregoing Plaintiff's Supplemental Brief in Support of Motion for Leave to File Sur-Rely on Costs and Fees is being filed with the Court of record and thereafter being served to counsel of record via ECF:

John E. Freund III, Esquire
Brian Taylor, Esquire
King, Spry, Herman, Freund & Faul LLC
One West Broad Street| Suite 700
Bethlehem, PA  18018
T: (610) 332-0390
F: (610) 332-0314

*****

*Respectfully submitted,*
Francis Alexander, LLC

*/s/ AJ Fluehr*

Alfred Joseph (AJ) Fluehr, Esquire
Attorney ID No.: 316503
31 S. Chester Road
Swarthmore, PA 19081
T:  (215) 341-1063
F:  (215) 500-1005
*Law Firm / Lawyers for Plaintiff*

*/d/ April 29, 2025*