**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JASON MOOREHEAD**, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 5:22-cv-03959-JMG |
| | : | |
| **SCHOOL DISTRICT FOR THE CITY OF** | : | |
| **ALLENTOWN**, et al. | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

Gallagher, J.                                                          June 6, 2025

## I.    INTRODUCTION

Plaintiff Jason Moorehead ("Plaintiff") obtained a jury verdict determining that his employer, the School District for the City of Allentown ("the District") retaliated against him in violation of his constitutional rights under the First Amendment.  The law provides that plaintiffs who are successful in civil rights lawsuits brought under 42 U.S.C. § 1983 ("Section 1983") are entitled to reasonable attorneys' fees and costs. While the amount claimed by Plaintiff's counsel far exceeds what is reasonable here, Plaintiff will nevertheless be awarded fees and costs.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The Court will provide an abbreviated background of the facts and history of this case as they pertain to the instant Motion for Attorneys' Fees and Costs. Plaintiff was a middle school social studies teacher employed by the District. *See Moorehead v. Sch. Dist. of City of Allentown*, 2024 WL 3361611, at *1 (E.D. Pa. July 9, 2024). Plaintiff traveled to Washington, D.C., on January 6, 2021, to attend the "Stop the Steal" rally on the National Mall. *See id.* Plaintiff made a series of social media posts making his presence in Washington, D.C., known. *See id.* However,

he did not get "within one mile" of the United States Capitol Building, and he was not a participant in the turmoil that occurred there—this was a fact that was undisputed at trial. *See id.*

On January 7, 2021, the District told Plaintiff not to show up to work given his presence in Washington, D.C., the previous day. *See id.* at *2. The District sent out a community-wide email that stated that it was "aware of a staff member who was involved in the electoral college protest that took place at the United States Capitol Building on January 6, 2021." *Id.* Plaintiff was suspended with pay pending an investigation. *See id.* The investigation lasted about seven months and culminated with the determination that Plaintiff was not present at the United States Capitol Building on January 6, 2021. *See id.* Plaintiff alleged constructive termination and filed suit on August 23, 2022, in the Lehigh County Court of Common Pleas. *See* ECF No. 1. This case was removed to this Court on October 5, 2022. *See id.*

This matter proceeded to trial, which begun with jury selection, on August 2, 2024. On August 16, 2024, the jury returned its verdict. The jury found as follows: (1) the District, and several members of the Allentown School Board—Nancy Wilt, Lisa Conover, and Phoebe Harris—were found liable for violating Plaintiff's First Amendment rights; (2) Defendant Thomas Parker, the District's Superintendent, was found not to be liable; (3) the jury awarded $125,000 in economic damages to Plaintiff, and found the Defendant School District was liable for 100 percent of these damages; (4) the jury awarded zero dollars in damages for reputational harm or mental/emotional distress; (5) the jury awarded $6,000 in punitive damages against Defendant Conover; and (6) the jury awarded $500 in punitive damages against Defendant Wilt. *See* ECF No. 168. Judgement was entered by the Court in favor of Plaintiff against the District and Defendants Wilt, Conover, and Harris. *See* ECF No. 170.

On September 5, 2024, Plaintiff filed his Motion for Attorneys' Fees and Costs. *See* ECF No. 174. Defendants filed their Response in Opposition on October 3, 2024. *See* ECF No. 190. Plaintiff filed a Reply Brief on October 18, 2024. *See* ECF No. 201. Defendants filed a sur-reply brief on October 29, 2024. *See* ECF No. 210. In the interim, Plaintiff filed a Motion for New Trial on Damages on September 19, 2024. *See* ECF No. 181. The Court denied this Motion for New Trial on March 31, 2025, *see* ECF Nos. 226-27, and the next day it set oral argument on the Motion for Attorneys' Fees and Costs for May 6, 2025. *See* ECF No. 228. The Court permitted the parties to submit supplemental briefing in anticipation of the oral argument, which they submitted on April 29, 2025. *See* ECF Nos. 229-30. The Court heard oral argument on the instant Motion on May 6, 2025.

### III.    STANDARD OF REVIEW

Although the general rule is that "each party in a lawsuit ordinarily shall bear its own attorney's fees," *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), there are statutory exceptions to this rule in order "to ensure effective access to the judicial process for persons with civil rights grievances." *Id.* (citation omitted). Through 42 U.S.C. § 1988 ("Section 1988"), Congress provided a means for litigants who have prevailed on their claim that their constitutional rights were violated to recover reasonable fees and costs that were expended to right the wrong. *See* 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce a provision of [Section 1983] of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."). "Although the language of the statute is discretionary, courts ordinarily award prevailing plaintiffs attorney's fees 'unless special circumstances would render such an award unjust.'" *Migliori v. Lehigh Cnty. Bd. of Elections*, 668 F. Supp. 3d 337, 342 (E.D. Pa. 2023) (quoting *Hensley*, 461 U.S. at 429).

"The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). "To meet its burden, the fee petitioner must 'submit evidence supporting the hours worked and rates claimed.'" *Id.* (quoting *Hensley*, 461 U.S. at 433). The burden then shifts to the opposing party "to challenge, by affidavit or brief with sufficient specificity to give applicants notice, the reasonableness of the requested fee." *Id.* While the Court enjoys "a great deal of discretion to adjust the fee award in light of [the opposing party's] objections," it "cannot decrease a fee award based on factors not raised at all by the adverse party." *Id.* "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* (quoting *Hensley*, 461 U.S. at 433).

## IV.  ANALYSIS

### a.  The Court Rejects Defendants' Argument for Denial *In Toto*

First and foremost, Plaintiff, as the prevailing party in his litigation is entitled to recovery of fees and costs. *See Victory v. County*, 452 F. Supp. 3d 185, 199 (E.D. Pa. 2020) ("Prevailing parties are those who succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." (internal quotation marks omitted)). Defendants do not appear to challenge this, but rather argue that Plaintiff's claim for fees and costs should be denied *in toto* because it is "so outrageously excessive that it shocks the conscience of the court." *See* ECF No. 190 at 23 (citing *Young v. Smith*, 905 F.3d 229, 236 (3d Cir. 2018)). While the Court agrees that Plaintiff's claimed rate and hours are excessive, and it addresses this excessiveness *infra*, it does not find that such a severe sanction is warranted. In *Young*, the Third Circuit noted that Section 1988 requires a "high threshold" for denial *in toto*. *See id.* (rejecting fee petition in its entirely where petition was "not only grossly excessive and absurd, but also fraudulent."). All in

all, while Plaintiff's fee petition is excessive, it does not demonstrate such a high level of malfeasance.

After an eleven-day trial and approximately two years of litigation, a jury determined that Defendants retaliated against Plaintiff in violation of his rights secured to him by the First Amendment to the United States Constitution. Fee-shifting statutes serve a crucial purpose in our justice system. *See Fox v. Vice*, 563 U.S. 826, 833 (2011) ("Fee-shifting in such a case at once reimburses a plaintiff for what it cost him to vindicate civil rights and holds to account a violator of federal law." (cleaned up)). "When a plaintiff succeeds in remedying a civil rights violation, we have stated, he serves as a private attorney general, vindicating a policy that Congress considered of the highest priority. He therefore should ordinarily recover an attorney's fee from the defendant—the party whose misconduct created the need for legal action." *Id.* Given the fact that "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust," *Hensley*, 461 U.S. at 429, the Court does not believe that this is an appropriate circumstance that warrants denial of fees *in toto*.

### b. The Court Declines to Reduce the Fee Award Because of the Verdict's Comparison to Settlement Offers or Demands

Moreover, Defendants argue that Plaintiff's fee award should be reduced because his success was limited in comparison to his settlement demand and Defendants' offers. The Supreme Court has held that fees may be reduced when "a plaintiff has achieved only partial or limited success." *Hensley*, 461 U.S. at 436. Defendants argue that the jury's award of $131,500 is minimal compared to Plaintiff's pretrial demands and Defendants' multiple settlement offers. *See* ECF No. 190 at 8-9. To provide brief context, in January 2021, Plaintiff put forth a demand of $1,000,000 dollars, then this increased to $4,000,000 in April 2021. As the case proceeded to trial, Plaintiff increased his settlement demand to $5,000,000. Also, Defendants also made several offers:

$2,500,000 on August 5, 2024, and $750,000 prior to jury instructions just to drop the claim for punitive damages. *See id.* Defendants argue that the jury's verdict, inclusive of the punitive damages award, is "a mere 2.6% of the $5 million demanded by [Plaintiff] prior to trial." *See id.* at 8. Defendants argue that the fees award should be reduced to reflect what they argue is "limited success."

The Third Circuit has determined that "settlement negotiations *may* be relevant in measuring success, and, if so, are clearly only one factor to be considered in the award of fees." *Lohman v. Duryea Borough*, 574 F.3d 163, 169 (3d Cir. 2009) (emphasis included). However, "[a] court is also free to reject such evidence as not bearing on success when, for instance, negotiations occur at an early stage before discovery, or are otherwise not a fair measure of what a party is truly seeking in damages." *Id.*; *see also Palladino v. City of Bethlehem*, Civ. A. No. 14-2168, 2015 WL 5771816, at *6 (E.D. Pa. Oct. 2, 2015) ("[A] party's posturing during negotiations is only one indicator to be considered by the Court." (citing *Lohman*, 574 F.3d at 167-69; *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 542 (S.D.N.Y. 2008))). "'[T]here is no precise rule or formula' for determining how a fee should be adjusted to reflect limited success. These determinations are appropriately committed to the discretion of the district court." *Lohman*, 574 F.3d at 167-68 (quoting *Hensley*, 461 U.S. at 436); *see also Buss v. Quigg*, 91 F. App'x 759, 761-62 (3d Cir. 2004) (affirming trial court's refusal to adjust fee award for limited success under an abuse of discretion standard).

The Court, in exercise of its discretion, declines to reduce the fee award despite the previous settlement offers *appreciably* exceeding the jury's award. At the core of the Court's reasoning as to this argument is the fact that Plaintiff's claim was vindicated by the jury's verdict. Plaintiff's retaliation claim against five of the Defendants went before the jury, and the jury found

6

four of the five Defendants liable. *See* ECF No. 168. Moreover, a large portion of the fees were already incurred by the time Defendants' settlement offers were conveyed. *See* ECF No. 190 at 8-9 ("On August 4, 2024, the defendants wrote to the Court asking for a settlement conference and represented that $1 million had been offered and rejected by the plaintiff."); *see also* ECF No. 190-4 (representing to the Court that settlement talks occurred the day of jury selection).

While it is true that the Supreme Court has counseled that a plaintiff who seeks compensatory damages but is only awarded nominal damages should not recover fees, that is not the case here. *See Farrar v. Hobby*, 506 U.S. 103, 115 (1992) ("In some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all. A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party."). Plaintiff was awarded $125,000 in compensatory damages. *See* ECF No. 168.

Also, Plaintiff maintains that a key reason why he resisted Defendants' settlement offers is because Defendants refused to "correct the record and issue a statement acknowledging that Plaintiff was not at the Capitol Building." ECF No. 230 at 4. This factor weighs against taking the settlement offers into account here. *See, e.g.*, *Ismail v. IHI Power Services Corp.*, Civ. A. No. 20-4801, 2023 WL 3689608, at *2 n.4 (E.D. Pa. May 25, 2023) (declining to take "pretrial settlement negotiations into account in determining an appropriate fee award" where Defendants refused non-monetary term of settlement agreement before trial).

Hindsight is always 20/20. Perhaps with the benefit of hindsight, Plaintiff wishes he could turn back the clock and accept the Defendant's eve-of-trial offer.[1] But he did not. Instead, he chose to bring his claims before a jury of his peers, and the panel determined that Defendants

---

[1] It is worth noting that the Court recently denied Plaintiff's Motion for a New Trial on Damages where he argued that the jury's award was outrageously small. *See Moorehead v. Sch. Dist. of City of Allentown*, 2025 WL 973476, at *3-4 (E.D. Pa. Mar. 31, 2025).

retaliated against Plaintiff in violation of his First Amendment rights. The jury even found that two of the individual defendants did so maliciously or wantonly. *See* ECF No. 168. Plaintiff argues that he was determined to vindicate his rights, and Section 1988 recognizes awarding fees in furtherance of this important goal. *See City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) ("Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms."). Accordingly, The Court does not believe it is appropriate here to penalize Plaintiff for proceeding to successfully vindicate his constitutional rights before a jury of his peers. The Court declines to alter the fees award on account of the previous settlement demands and offers.

### c. The Court Declines to Reduce the Award Because of "Limited Success"

The Court also rejects Defendants' arguments that the fees should be reduced because of limited success. The Supreme Court has instructed that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees." *Hensley*, 461 U.S. at 440. "Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Id.*

At the summary judgment stage, the Court granted the Defendants' Motion for Summary Judgment as to Plaintiff's due process claim. *See* ECF No. 74. Multiple Defendants in this matter were voluntarily dismissed from the litigation during trial. Then, the jury determined that all but one Defendant, Thomas Parker, was liable to Plaintiff on his retaliation claim. *See* ECF No. 168.

The Court, in its discretion, declines to reduce the Plaintiff's fee recovery on the basis of limited success. *See Rapp v. City of Easton*, 77 F. App'x 88, 91 (3d Cir. 2003) ("[T]he law does not mandate a reduction of the award if some of the claims are unsuccessful . . ." (citing *W. Va. Univ. Hospitals, Inc. v. Casey*, 898 F.2d 357, 361 (3d Cir. 1990)). The Court finds that the issues between the successful and unsuccessful, or dismissed, claims are "intertwined." *See Tenafly Eruv Ass'n, Inc. v Borough of Tenafly*, 195 F. App'x 93, 98 (3d Cir. 2006) (awarding fees for the "work performed on all claims" where "each of appellants' claims was based on a common core of facts, and the arguments were intertwined."). In this matter, work performed on some of the claims "would likely have had value for the others." *Id.* at 98. Because Plaintiff's case "cannot be viewed as a series of discrete claims," but instead "alternative legal grounds for the [same] desired outcome," the Court finds that it would be "difficult to divide the hours expended on a claim-by-claim basis." *Id.* The claims all revolved around the same factual core, and the discovery conducted could not be cleanly allocated between distinct claims. The same witnesses would likely have to have been deposed for each of the claims alleged. Simply put, there is nothing "limited" in the jury's vindication of plaintiff's claim that his government employer wrongly retaliated against him based on the exercise of his First Amendment rights. The Court declines to credit Defendants' argument to the contrary.

### d. Reasonable Rate

"The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable. To meet its burden, the fee petitioner must 'submit evidence supporting the hours worked and rates claimed.'" *Rode*, 892 F.2d at 1183 (quoting *Hensley*, 461 U.S. at 433)). "Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community." *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). "[T]he court

should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* "The starting point in determining a reasonable hourly rate is the attorneys' usual billing rate, but this is not dispositive." *Public Interest Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995).

Within this District, several colleagues have approvingly pointed to rates set forth by Community Legal Services of Philadelphia ("CLS").[2] *See Barrett v. W. Chester Univ. of Pa. of State System of Higher Education*, No. 03-CV-4978, 2006 WL 859714, at *4 (E.D. Pa. Mar. 31, 2006) ("We note that in reducing an attorney's normal rate, the Third Circuit and several courts in this District, have turned to the CLS schedule for guidance." (citing cases)); *see also*, *e.g.*, *Doe v. Schorn*, Civ. A. No. 23-3252, 2024 WL 1258654, at *6 (E.D. Pa. Mar. 25, 2024) (considering CLS rate as factor in its reasonability analysis); *Pa. State Lodge Fraternal Order of Police v. Twp. of Springfield*, Civ. A. No. 23-332, 2024 WL 1219960, at *2 (E.D. Pa. Mar. 21, 2024) ("Courts in this Circuit also consider whether the requested hourly rate is in line with the [CLS] fee schedule."); *Rahman v. Leone*, Civ. A. No. 23-4110, 2024 WL 3927215, at *1 (E.D. Pa. Aug. 23, 2024). The Third Circuit has also approvingly cited the CLS rate schedule. *See Maldonado v. Houstoun*, 256 F.3d 181, 184, 188 (3d Cir. 2001) (noting the CLS rates "have been widely accepted as fairly reflecting the prevailing market rates in Philadelphia" and holding "the rates set forth in the CLS schedule are reasonable for the services performed"). This schedule serves as a baseline of what rates are reasonable in the Eastern District of Pennsylvania.[3]

---

[2] *See Attorney's Fees*, CMTY. LEGAL SERVS. (Jan. 19, 2023) https://clsphila.org/about-community-legal-services/attorney-fees/. The Schedule accessed by the Court was updated on January 19, 2023 (hereinafter "*CLS Fees*").

[3] The Court acknowledges that the CLS rates are based on the rates of the Philadelphia legal market, not the Lehigh Valley market. *See CLS Fees* ("These rates . . . are based on Philadelphia

### i. Attorney Fluehr

First, Plaintiff claims fees for Attorney Fluehr at a rate of $1000 per hour. Defendants argue

---

law firm market survey data."). It is true that attorney rates are lower in the Lehigh Valley. *See* Decl. of Steven E. Hoffman at ¶¶ 12, 14. Plaintiff's case originated out of the Lehigh Valley, and Allentown served as the venue of this litigation. Plaintiff's attorneys are from the Philadelphia suburbs. However, the Defendants' own declarant averred that the CLS rates are used "District-wide." *See id.* at ¶¶ 15-16. Defendants appear to, somewhat, concede this point as well. *See* ECF No. 190 at 15 ("[C]ourts in this Circuit also consider whether the requested hourly rate aligns with the Community Legal Services ("CLS") fee schedule."). Moreover, the Court's Northern Tier colleagues have utilized and relied on the CLS rates. *See, e.g., MP ex rel. VC v. Parkland Sch. Dist.*, No. 20-cv-04447, 2021 WL 5177012, at *7 (E.D. Pa. Nov. 5, 2021) (Leeson, J.) (using CLS fee schedule to set reasonable rates for attorneys in an IDEA case involving a school district in the Lehigh Valley).

The Third Circuit, in *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.* ("*Interfaith*"), 426 F.3d 694, 705 (3d Cir. 2005), held that "in most cases, the relevant rate is the prevailing rate in the forum of the litigation" and with specific exceptions, "district courts in the Third Circuit should award attorney fees based on the 'forum rate' rule." *Id.* That was a case that was litigated in the District of New Jersey, with lawyers from Washington, D.C., who sought to be compensated consistent with D.C.'s market rates. *See id.* 703-04. That is obviously different from the situation here where the attorneys are from different areas within the same judicial district.

In *Interfaith*, the panel relied heavily on a Task Force report that recommended adoption of the "forum rate" rate rule, that is where "an 'out-of-town lawyer would receive not the hourly rate prescribed by his district but rather the hourly rate prevailing in the forum in which the litigation is lodged.'" *Id.* at 704 (quoting *Report of the Third Circuit Task Force on Court Awarded Attorney Fees* ("*Fees Task Force*"), 108 F.R.D. 237, 261 (1985)). The report recommended that "[t]he setting of standardized hourly rates should be accomplished on a *district-by-district* basis to reflect regional differences." *Fees Task Force*, 108 F.R.D. at 261 (emphasis added). And, even if the Court were to recognize this intra-district distinction, the Court would still likely rely on the CLS schedule given the fact that Plaintiff submitted a declaration averring that he attempted to find lawyers in the Allentown area, but he was unable to find one who would take his case without a retainer, was "sympathetic to [his] situation," or was "willing to defend [his] rights zealously." *See* ECF No. 230-2 at ¶ 7; *see also Interfaith*, 426 F.3d at 706 (providing that one exception to the "forum rate" rule was when a plaintiff could "show[ ] that local counsel were unwilling to handle the case." (internal quotation marks omitted)).

Given this, the Court is comfortable using the CLS schedule as a baseline here despite the intra-district differentiation in market rates. Nevertheless, the Court also believes it to be within its discretion to consider the Northern Tier's venue, and thus the rates of its legal market, to be one of the several factors it considers in setting the attorney's reasonable hourly rate.

this rate is excessive and unreasonable. The Court agrees and will adjust Attorney Fluehr's rate to $395 per hour.

The Court arrives at this rate by considering several factors. First, is Attorney Fluehr's billing rate. *See Windall*, 51 F.3d at 1185 ("The starting point in determining a reasonable hourly rate is the attorneys' usual billing rate, but this is not dispositive."). Here, the Plaintiff's attorneys provided the contingency fee agreement from this case. *See* ECF No. 201-1. The agreement states that while his fee is usually $1000 per hour, for this matter "the fee is being discounted to $500/hour." *Id.* In his briefing, Plaintiff has not provided adequate support as to why his litigation adversary should pay at a higher rate than he would have paid other than making a penal argument. *See* ECF No. 201 at 9 n.3. This type of disparity has been frowned upon by the Third Circuit in the context of having one's adversary have to pay for tasks that would not have been billed to one's client. *See Windall*, 51 F.3d at 1188 ("Hours that would not generally be billed to one's own client are not properly billed to an adversary."); *see also Middlebrooks v. Teva Pharm. USA, Inc.*, Civ. A. No. 17-412, 2019 WL 936645, at *12 (E.D. Pa. Feb. 26, 2019) ("Returning to Microeconomics 101 in setting a reasonable market price, we may look to what a willing client would pay a willing lawyer.").

Next, the Court examines the rates set forth in the CLS schedule. Attorney Fluehr has been practicing since October 2013. *See* ECF No. 174 at ¶ 4. By the time of trial, he had been practicing law just shy of eleven years, and this places him within the category of "Attorneys 6-10 year's experience" who receive rates of $320-415 per hour. The Court believes assessing Attorney Fluehr's rate within this range is appropriate and sets a rate of $395 per hour. This amount considers Attorney Fluehr's experience, the degree of specialization necessary for this case, the complexity of this case, and the prevailing market rates.

### ii. Attorney Malofiy

Next, Plaintiff claims fees for Attorney Malofiy at a rate of $1000 per hour. Defendants argue that this rate is excessive, unreasonable, and should be denied outright. *See* ECF No. 190 at 8. Fixing a reasonable hourly rate for Attorney Malofiy is complicated by the fact that he is disbarred and prohibited from acting as an attorney in this District. *See* Decl. of Francis Malofiy, ECF No. 174-2 at ¶ 4. He has represented to the Court and maintained that his role in this litigation was limited to that of a paralegal. *Id.* at ¶ 10; *see also Missouri v. Jenkins*, 491 U.S. at 274, 287-89 (1989) (holding that fees billed by paralegals and law clerks are recoverable in Section 1988 fee petitions). It is not consistent to act as a paralegal but receive an attorney's rate.[4] Accordingly, Attorney Malofiy's rate will be adjusted to $250 per hour.

As a disbarred attorney, Attorney Malofiy's role in this litigation was necessarily limited. *See in re Mitchell*, 901 F.2d 1179, 1186 (3d Cir. 1990) ("We will . . . permit  a suspended attorney to work as a law clerk, with respect to matters in this court with no contact with clients or the court, under the close supervision of an attorney who is admitted to practice before us."). Attorney Malofiy did not, because he could not, participate in the presentation of evidence to the jury. Accordingly, the Court will assign Attorney Malofiy an hourly rate consistent with a paralegal in this District. Because he has over ten years of legal experience, *see* ECF No. 174-2 at ¶ 4, the Court deems a rate of $250 per hour to be reasonable; this rate is consistent with the range set by CLS schedule rate for Senior and Supervisory Paralegals. *See CLS Fees*.

---

[4] The Court declines to make a distinction between Attorney Malofiy's hours before and after this case came to state court. This case was heard in federal court in a district in which Mr. Malofiy's license to practice has been suspended. It is appropriate for him to be paid as a rate consistent with paralegals in this District.

### iii. Attorney Rosen

The Court declines to award Attorney Rosen any fees for his participation in this litigation. First, Attorney Rosen, though barred in Pennsylvania and an employee at Plaintiff's attorneys' law firm, *see* ECF No. 174-2 at ¶ 16, did not enter his appearance in this case and did not partake in the presentation of evidence to the jury. Moreover, his participation was limited to being "present to observe the proceedings, and thereby provid[ing] advice and trial expertise." *Id.* The Court finds that it would be unreasonable to award fees for Attorney Rosen's observation of the trial. This case differs from *Rahman*, 2024 WL 3927215, at *2, where the court awarded fees for an experienced attorney who did not "formally enter[ ] his appearance," but provided advice to the fellow attorneys in his firm. The difference there was that the attorney only claimed a mere 5.6 hours of consultation time. *See id.* Here, Attorney Rosen claims seventy-nine hours at $1000 per hour for observing the trial and providing advice. The Court is concerned about what precedent would be set by requiring litigation adversaries to have to foot the bill for attorneys whose role is limited to observing and advising during trials without any formal appearance.

### iv. Mr. Brian Rucker

Mr. Rucker served as a paralegal in this case. *See* ECF No. 174-2 at ¶ 17. He is being billed at $200 per hour. *Id.* This is within the range of the CLS Schedule. *See CLS Fees*. While the Court has no information as to how long Mr. Rucker has been a paralegal, this hourly rate is toward the low end of the CLS range. Accordingly, the Court finds this hourly rate reasonable.

### v. Mr. Eric Grabowski

Mr. Grabowski served as a video editor in this case who assisted Plaintiff's counsel with editing and preparing video deposition designations. *See* ECF No. 174-2 at ¶ 18. Plaintiff seeks an hourly rate of $200 per hour. *See id.* The Court finds this rate unreasonable. Mr. Grabowski is not

a legal professional, and thus his billed rate should be below the minimum in the range of the CLS Schedule. Accordingly, the Court finds that an hourly rate of $100 per hour is appropriate here. At least in part, the cost of a video editor should be taken into account in the firm's overhead costs. While the Court finds that some reimbursement for Mr. Grabowski is appropriate given the many video depositions that were involved in this trial, it finds the rate sought by Plaintiff is unreasonable and reduces it by half.

### vi.  Mr. Tyler Malofiy

Plaintiff seeks reimbursement for Mr. Tyler Malofiy at a rate of $100 per hour. *See* ECF No. 174-2 at ¶ 19. Mr. Malofiy was a summer intern and he assisted in "formatting exhibits, compiling the exhibit binders, maintaining a list of used and admitted exhibits, redacting exhibits, doing research, providing the final exhibit list for the jury's deliberations, and otherwise assisting the attorneys." *Id.* Mr. Malofiy was an undergraduate intern at the time of his service in this case. It is therefore appropriate that his hourly rate be below that prescribed for a law student. *See CLS Fees*. Because his rate is below that range, the Court finds it reasonable and appropriate.

### e.  Reasonable Hours Expended

Next, the Court must determine what hours have been reasonably expended. In doing this, a court has discretion to exclude hours that are "excessive, redundant, or otherwise necessary" from ultimate calculation of a reasonable fee. *See Rode*, 892 F.2d at 1183. A court may also exclude "hours spent litigating claims on which the party did not succeed and that were distinct in all respects from claims on which the party did succeed" and hours that were "inadequately documented." *Id.*[5]

---

[5] To the extent Defendants seek to exclude the hours spent by Plaintiff's counsel for their work on Plaintiff's termination hearing, *see* ECF No. 190 at 10 (characterizing work on the termination hearing as "non-compensable"), this argument is rejected. The work preceding the litigation stage of this case was part and parcel of the inception of this case. It was controlled by the same

Here, Plaintiff's counsel submits reconstructed time records. *See* ECF No. 174-1 at ¶¶ 8-9, 174-2 at ¶ 9. Courts in this Circuit "have never strictly required that fee petitions be supported by contemporaneous records, but they have long been the preferred practice." *Clemens v. N.Y. Central Mut. Fire Ins. Co.*, 903 F.3d 396, 400-01 (3d Cir. 2018). Reconstructed time records "may warrant 'more exacting scrutiny than we would bring to contemporaneous and detailed records.'" *Id.* at 401 (quoting *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 952 (1st Cir. 1984)).

### i. Attorney Fluehr

"District courts are required to exclude from compensation hours which are not reasonably expended." *Becker*, 15 F. Supp. 2d at 633. This includes hours that are "excessive, redundant, or otherwise unnecessary." *Id.* (quoting *Hensley*, 461 U.S. at 433). The Court agrees with Defendants that several of Attorney Fluehr's time entries are excessive, unreasonable, and the Court will exclude these entries from the fee calculation. The Court may reduce hours that are not reasonably expended from fee calculation. *See*, *e.g.*, *Heigler v. Gatter*, 463 F. Supp. 802, 803-04 (E.D. Pa. 1978) ("[T]he court should scrutinize reconstructed time records with extra care to assure that there is no noticeable, albeit inadvertent, inflation of hours."); *see also Becker*, 15 F. Supp. 2d at 634 ("Having determined that the hours requested are unreasonable, the Court is left to determine how

---

representation agreement. *See* ECF No. 201-1 at 3-5. Further, it concerned the same allegations and claims that gave rise to Plaintiff filing this case.

The factual development and preparation for the hearing was directly relevant to the claims involved in this litigation. *See Keenan v. City of Phila.*, 983 F.2d 459, 474 (3d Cir. 1992) ("[F]or the time spend pursuing option administrative proceedings properly to be included in the calculation of a reasonable attorney's fee, the work must be useful and of a type ordinarily necessary to secure the final result obtained from the litigation." (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986))). Information from the termination hearing played a role during trial. *See*, *e.g.*, ECF No. 216 at 96:18-101:3 . Because "the time spent on the [administrative] matter was inextricably linked to the issues before the district court," the Court declines to exclude the hours spend working on the termination hearing. *Id.*

the hours should be reduced, a determination requiring a certain amount of 'judgment calling' and evading mathematical certitude." (internal citation omitted)). The Court has the authority and discretion to reduce the amount of hours for items it deems excessive. *See*, *e.g.*, *Reg'l Emp'rs' Assurance Leagues Voluntary Employees' Beneficiary Ass'n Tr. v. Castellano*, 164 F. Supp. 3d 705, 715-17 (E.D. Pa. 2016). The Court will reduce Attorney Fluehr's claimed hours as follows:

| Activity | Claimed Hours → Adjusted Hours |
|---|---|
| 1/15/2021 – 1/21/2021<br>Drafting Demand Letter, Researching Case, Drafting Letter, Sending Letter | 30 → 10[6] |
| 1/25/2021 – 1/26/2021<br>Reviewing John Freund letter, drafting response, Drafting Response to 1/25 Freund letter | 10 → 7[7] |
| 9/7/2021 – 9/9/2021<br>Strategy, Research, Drafting and Filing Writ of Summons | 25 → 12.5[8] |
| 12/7/2021<br>Compiling and Sending to Sultanik Promise Neighborhoods Documents Implicating Conover and Harris | 10 → 2[9] |

---

[6] This one-page letter was submitted with the Notice of Removal at ECF No. 1-1 at 139-40. The letter contains minimum legal analysis, and the Court will reduce this entry by two-thirds.

[7] The Freund letter is located at ECF No. 1-1 at 144-46, and the response thereto is located at *id.* at 148-49. The claimed time entry is excessive and will be reduced by 30%.

[8] The claimed time for drafting and researching the writ of summons, a document that is only a couple of pages, is excessive, and the Court finds it appropriate to reduce this time by half.

[9] The claimed time for "compiling and sending" documents to the hearing officer is excessive and will be reduced to two hours.

| | |
|---|---|
| 7/29/2022 – 8/24/2022<br>Drafting and Researching Complaint, Drafting Complaint and Compiling Exhibits, Filing Complaint, Addressing Court instructions on complaint exhibits and re-filing complaint | 79 → 40[10] |
| 5/5/2023-5/23/2023<br>Drafting Amended Complaint; compiling exhibits; filing; Drafting corrected amended complaint; filing; emails on defense request for extension to answer complaint | 18.25 → 12.25[11] |
| 7/9/2024<br>Reviewing Summary Judgment Opinion | 8 → 6[12] |
| 7/23/2024 – 7/24/2024; 7/29/2024; 7/30/2024-7/31/2024<br>Exhibit Binders | 22 → 0[13] |
| 8/3/2024<br>Moving Office to Allentown | 8 → 0[14] |
| 8/4/2024 – 8/16/2024<br>Trial and Trial Prep | 227 → 210[15] |

[10] The claimed hours to draft the Complaint, *see* ECF No. 1-1, are excessive. While the Complaint was lengthy and demonstrates that counsel undertook legal research and analysis, the Court finds it appropriate to reduce this number of hours claimed by about half.

[11] Given the Amended Complaint's reliance on materials contained in the original complaint, it is appropriate to reduce the hours claimed by about one-third. *See Castellanos*, 164 F. Supp. 3d at 716 (reducing time entry when document relied on information that was "previously relied upon" in prior filing.").

[12] The Court finds that spending an entire workday reviewing the Court's twenty-two-page opinion is excessive, and accordingly it reduces this entry by 25%.

[13] These entries are somewhat vague, but it appears these time entries are for compiling and preparing exhibit binders. The Court does not find this work to be compensable, and it will strike this time entry. *See Castellanos*, 164 F. Supp. 3d at 719 ("[C]lerical tasks should not be billed at an hourly rate.").

[14] The Court does not find this work to be compensable, and it will strike this time entry. *See Castellanos*, 164 F. Supp. 3d at 719 ("[A]dministrative tasks, which are not the type normally billed to a paying client, may not be recovered by a party through a fee petition." (quoting *Alexander v. NCO Fin. Sys., Inc.*, Civ. No. 11-401, 2011 WL 2415156, at *6 (E.D. Pa. June 16, 2011))).

[15] The Court finds the submitted time entry for trial and trial prep to be excessive and reduces it modestly.

| 8/16/2024 – 9/5/2024 Research, Preparation, Compiling, Accounting for Costs and Fees Motion | 40 → 6[16] |
|---|---|
| | 1551.6 → 1380.1 |
| | 171.5 Hour Reduction |

The Court finds 1380.1 compensable hours to be reasonable for Attorney Fluehr in this matter.

### ii. Attorney Malofiy

Attorney Malofiy, billing as a paralegal, block-billed his time. Block billing is disfavored because it "makes it more difficult for courts to review hours expended because we do not know how many hours a lawyer spent on a discrete task." *Simring v. Rutgers*, 634 F. App'x 853, 859 (3d Cir. 2015). Attorney Malofiy's time entries are often vague and do not even state on which specific date he worked on the assignment. Rather, his billing is based on Attorney Fluehr's entries, and he bills by category of activity. The Court will reduce his claimed time by 20% to account for this billing practice. *See Arlington Industries, Inc. v. Bridgeport Fittings, Inc.*, Civ. A. No. 3:02-CV-0134, 2016 WL 3522964, at *11 (M.D. Pa. June 28, 2016) (reducing block-billed hours by 33% because lawyer engaged in repeated block-billing); *see also Heigler*, 463 F. Supp. at 803-04 (noting that while "across the board adjustments" are disfavored it was appropriate to cure the attorney's "failure to keep contemporaneous records," and applying a 20% reduction); *Frompovicz v. Niagara Bottling, LLC*, Civ. A. No. 18-0054, 2021 WL 601100, at *5 (reducing submitted time by 20% where "documentation of hours [was] inadequate"). This 20% reduction is made after deducting 34 hours from the time entry for the preparation of the cost and fees motion for the reasons discussed *supra* n.16. This amounts to a total of 900.4 compensable hours for Attorney Malofiy.

---

[16] Even considering the time spent reconstructing the time sheets and the time spent gathering receipts and supporting documents for costs, it is simply not reasonable, or frankly credible, that a five-page motion for costs and fees, accompanied with five pages of declarations took a combination of 80 hours to complete. The Court finds an 85% reduction appropriate.

### iii.  Mr. Rucker

Plaintiff did not submit a detailed time sheet for Mr. Rucker's work on this matter, but rather a general one. He submitted the number of hours worked, during trial, but there are no details as to what the time was spent on. *See* ECF No. 174-2 at 12. Instead, in Attorney Malofiy's declaration, he averred that Mr. Rucker "worked as a paralegal handling matters relating to exhibits, research, supporting briefs, and securing accommodations and office space." *See id.* at ¶ 17. "If documentation of hours is inadequate, the district court may reduce the award accordingly." *Frompovicz*, 2021 WL 601100, at *5 (quoting *Smith v. Int'l Services, Inc.*, 1997 WL 667872, at *4 (E.D. Pa. Oct. 9, 1997)). Consistent with this, the Court will reduce Mr. Rucker's claimed hours by one third. This reduction is because of the lack of time entries for the Court to analyze for Mr. Rucker's billing. As for the information the Court does have from Attorney Malofiy's declaration, the descriptions are vague and at least one of the tasks (securing accommodations and office space) is administrative and not compensable. Accordingly, the Court finds that 126.6 compensable hours is reasonable for Mr. Rucker.

### iv.  Mr. Malofiy

The Court will reduce the number of hours for Mr. Malofiy for the same reasons as Mr. Rucker. The declaration, *see* ECF No. 174-2 at ¶ 19, detailing the tasks Mr. Malofiy worked on is vague, and again some of the tasks are administrative and not compensable. Because the documentation of Mr. Malofiy's hours is inadequate, *see Frompovicz*, 2021 WL 601100, at *5, the Court will reduce his claimed hours by 15%. This recognizes the vagueness and inadequacy of the billing records, but also reflects the assistance he provided the primary timekeepers during a two-week trial. Accordingly, the Court finds that 67.2 compensable hours for Mr. Malofiy is reasonable.

### f. Fee Calculation

The Court overrules the remainder of the Defendants' objections. While Defendants argued that the reasonable hour amounts should be cut far beyond what the Court has decided is reasonable, the Court acknowledges that this was a lengthy, hard-fought, and fairly complex litigation where Plaintiff was represented by, primarily, only two timekeepers.[17] Accordingly, in multiplying the reasonable rate by the reasonable hours expended, it arrives at the calculations shown in the chart below:

| Claimed Participant | Calculation | Total |
|---|---|---|
| Attorney Fluehr | $395 x 1380.1 hours | **$545,139.50** |
| Attorney Malofiy | $250 x 900.4 hours | **$225,100.00** |
| Mr. Rucker | $200 x 126.6 hours | **$25,320.00** |
| Mr. Grabowski | $100 x 126 hours[18] | **$12,600.00** |
| Mr. Malofiy | $100 x 67.2 hours | **$6,720.00** |
| | | **$814,879.50** |

As detailed in sections *supra*, the Court rejects all arguments that this lodestar should be modified. Accordingly, Plaintiff is awarded **$814,879.50** in attorneys' fees.

### g. Plaintiff is Entitled to Recover Reasonable Costs

Plaintiff seeks $265,795.74 in costs. *See* ECF No. 174-2 at 13. Defendants object to several of Plaintiff's claimed costs and seek their exclusion from the total costs assessed. "Successful civil rights litigants are entitled to reimbursement of 'costs' connected with litigating their claim as long as the costs are reasonably and necessarily incurred. Compensation is appropriate if the incurred

---

[17] While this fact did not play a role in the Court's analysis, it is worth noting for the record that both Attorney Fluehr and Attorney Malofiy averred in their declarations that the reconstructed time sheets undercount the time spent working on this litigation. *See* ECF No. 174-1 at ¶ 9; 174-2 at ¶ 12. The Court can only analyze what is before it.

[18] The Court, in its discretion, finds that the hours put forth by Mr. Grabowski are reasonable consistent with his role in this litigation and declines to reduce or otherwise modify them.

costs are not unreasonable, unnecessary, or inadequately documented." *Becker v. ARCO Chem. Co.*, 15 F. Supp. 2d 621, 635 (E.D. Pa. 1998) (citations omitted). The Court will address the Defendants' objections in turn.

### i. Claimed Costs for Expert Reports

Plaintiff claims $80,268 in costs for expert reports. Defendants argue this claim for reimbursement is legally barred. The Court agrees with Defendants. Section 1988 does not permit the recovery of expert fees in actions to enforce provisions of Section 1983. *See* 42 U.S.C. § 1983; *see also W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 102 (1991) (concluding that "§ 1988 conveys no authority to shift expert fees.").[19] However, certain expert witness fees may be recoverable in other circumstances. *See Casey*, 499 U.S. at 102 ("When experts appear at trial, they are of course eligible for the fee provided by [28 U.S.C.] § 1920 and § 1821."). The Court will strike the claimed expert report fees because they are not recoverable here pursuant to *Casey*. *See also Pelzer v. City of Phila.*, 771 F. Supp. 2d 465, 474 (E.D. Pa. 2011) (eliminating expert fees from attorney's bill of costs where "[p]laintiff has not demonstrated her case was extraordinary, or her experts' testimony and reports played a critical role in the jury's verdict.").[20]

### ii. Claimed Costs for Travel & Misc.

Plaintiff has claimed $25,784.39 for the category of "Travel & Misc." This cost is broken up into four sub-categories: (1) $56.54 for Fegley's, a local restaurant; (2) $40.00 for parking[21];

---

[19] Plaintiff does not cite any cases to the contrary, but instead makes a policy and equity argument. *See* ECF No. 201 at 16 ("It would be fair and equitable to include these costs which Defendants unreasonably forced Plaintiff to incur."). The Supreme Court's opinion in *Casey*, 499 U.S. at 102, forecloses this argument, and this Court is duty bound to follow it.

[20] Plaintiff has not delineated other costs for experts consistent with those permitted under 28 U.S.C. § 1821 in its section claiming Expert Reports, so the Court has no basis to award them.

[21] The documentation submitted shows that this is not actually a parking expense, but payment for a parking violation. *See* ECF No. 174-2 at 46. As such, this is not a reimbursable cost.

(3) \$8,977.12 in travel for Plaintiff's family to attend the trial[22]; and (4) \$16,660.73 for various purchases on Plaintiff's counsel's American Express card. The Court will award Plaintiff \$2,000.00 in Travel & Misc. costs. It strikes all but \$2,000.00 in the claimed costs in travel for two of Plaintiff's family members who travelled to Allentown as potential witnesses.

The largest portion of the claimed "Travel & Misc." expense is Plaintiff's counsel's American Express bill. The Court strikes the claimed cost in its entirety. First, the bill, *see* ECF No. 172-2 at 48-49, generally lists purchases at numerous locations across the country and provides little context to support these charges and demonstrate why they are reasonable and necessary.[23] Moreover, counsel's submission of its American Express bill, alone, cannot be said to be adequate documentation of these expenses from which Plaintiff expects total reimbursement. *See Becker*, 15 F. Supp. 2d at 637 (requiring claimed costs and expenses to have adequate documentation). It is obvious that Plaintiff's counsel did not comb through the bill to subtract inapplicable or irrelevant charges, but instead submitted reimbursement for the entire invoice.[24]

Moreover, many of the charges on the bill are for meals and food expenses. The Court finds that it would be unreasonable to require Defendants to reimburse Plaintiff for meals incurred

---

[22] These are broken up in the Plaintiff's Motion for Fees and Costs as \$4,476.66 in costs to Alaska Airline and \$4,550.46 in Cost Reimbursement for Plaintiff's family members.

[23] For example, the bill shows \$723.97 in charges to Delta Air Lines, *see* ECF No. 174-2 at 48, \$144.38 a at the Home Depot, *see id.* at 49, and miscellaneous charges to establishments such as Rita's Water Ice in Drexel Hill, Pennsylvania. *See id.* at 48. How these charges are justified in this litigation are unclear.

[24] Most strikingly, Plaintiff, under the claimed category of "Travel & Misc." claims reimbursement for fourteen charges to The Americus Hotel in Allentown. Five of these charges are repetitive of claimed costs under the "Trial Cost" category. On the second page of the American Express bill, *see* ECF No. 174-2 at 49, line item 4, 7, 8, 10, and 11, are duplicative of the hotel costs claimed for Plaintiff, Mr. Rosen, Mr. Fisher, and Cameron Moorehead, respectively. This amounts to \$3,513.52 in duplicative charges.

during trial. *See, e.g.*, *Knox v. PPG Indust., Inc.*, 2:15-CV-01434, 2019 WL 13178868, at *4 (W.D. Pa. July 30, 2019) (declining to reimburse costs for meals) (citing cases); *Zenith Ins. Co. v. Glasbern, Inc.*, Civ. A. No. 10-5433, 2013 WL 4823148, at *4 (E.D. Pa. Sept. 10, 2013) ("[W]e do not think it is reasonable to charge [the defendants] for the cost of the meals of [the plaintiff's] counsel."); *Blagrave v. Nutrition Mgmt. Servs. Co.*, Civ. A. No. 05-6790, 2009 WL 440299, at *8 (E.D. Pa. Feb. 20, 2009) ("There is simply no reason that a client or the defendant should be forced to reimburse attorneys for the costs of an ordinary, workday lunch when the attorneys would have had to purchase those lunches in any event.").[25]

The Court agrees with Plaintiff that it is reasonable for him to recover the money expended for two of his family members, who were potential witnesses, to travel to Allentown. *See* ECF No. 201 at 16-17, 20. Plaintiff will be allowed to recover the $2,000.00 for these travel expenses. *See id.* at 20.

### iii.  Claimed Trial Costs

Finally, Plaintiff claims $70,072.97 in trial-related costs. The Court will permit Plaintiff to recover most of this. Other courts in this District have awarded reasonable costs for lodging during trial. *See Rush v. Scott Specialty Gases, Inc.*, 934 F. Supp. 152, 157 (E.D. Pa. 1996) ("[W]e find that it is not unreasonable or unnecessary for Plaintiff's counsel to have stayed at a local hotel for several nights of the trial."); *see also Marthers v. Gonzales*, Civ. A. No. 05-3778, 2008 WL 3539961, at *5 (E.D. Pa. Aug. 13, 2008) (awarding hotel expenses for plaintiff's attorneys); *Cf Pelzer v. City of Phila.*, 771 F. Supp. 2d 465, 473 n.7 (E.D. Pa. 2011) (eliminating hotel expense from bill of costs where attorneys were residents of the city in which the trial took place).

---

[25] Even beyond this, for several of the meals claimed, it would be patently unreasonable, and frankly *outrageous*, for Plaintiff to expect reimbursement. Take, for example, the $829.66 and $493.65 charges at Sports & Social, *see* ECF No. 174-2 at 48, and the $670.60 charge at the Pennsylvania Rye Company. *See id.* at 49.

The Court will allow reimbursement of lodging expenses here with a few exceptions. First, the Court strikes the $618.84 hotel room charge for Attorney Rosen. Given that the Court already struck his attorney's fees, it is also appropriate to strike the corresponding costs. Next, the Court strikes all hotel food and beverage charges for the reasons already discussed *supra*. This amounts to a reduction of $2,706.06.[26] Finally, the Court will strike the $700 hotel charge for valet parking on the bill of Room 301, *see* ECF No. 174-2 at 60, considering there are more reasonable, economic alternatives available in the immediate vicinity of the hotel. After these reductions, Plaintiff will recover $66,048.12 in trial costs.

### iv.  Costs Conclusion

As for the remainder of Plaintiff's claimed costs, Defendants either did not object to their inclusion or the objection is overruled. Accordingly, Plaintiff is awarded **$157,717.98** in costs.

## V.    CONCLUSION

This has been a contentious case from its inception through the very end. As the Court adjudicated this Motion for Fees and Costs, one side claimed millions of dollars in costs and fees, while the other argued that Plaintiff should recover *nothing*.

A tiny percentage of cases proceed to trial. This was one of those select few. After about two years of fairly complex litigation, a jury found that Plaintiff's First Amendment rights were violated by Defendants, and Section 1988 entitles him to recover the reasonable fees and costs he expended to successfully vindicate his rights. For the foregoing reasons, Plaintiff's Motion for Attorney's Fees and Costs is **GRANTED IN PART**. Accordingly, Plaintiff is awarded

---

[26] This number is the sum of the following subtractions (1) $13.20 from Room 301, (2) $67.90 from Room 302, and (3) $2624.91 from Room 305. The Court did not deduct the food/beverage charges from Room 209 because 28 U.S.C. § 1821 (d) explicitly allows witnesses with reasonable subsistence allowance.

**$814,879.50** in fees and **$157,717.98** in costs. This amounts to a total of **$972,597.48**. An appropriate order follows.

BY THE COURT:

_/s/ John M. Gallagher_
JOHN M. GALLAGHER
United States District Court Judge